**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| SETH DANIELS, Plaintiff, | ) | |
| v. | ) | CIVIL NO: 05-00459-ML-LDA<br>Judge Lisi |
| AMERICAN POWER CONVERSION CORPORATION Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

The Plaintiff, through his undersigned Counsel, hereby files a Motion To Compel Defendant to answer discovery and produce documents in response to Plaintiff's discovery requests.

## I. INTRODUCTION

Defendant, American Power Conversion Corp. ("APC") seeks to limit the discovery of evidence to which Plaintiff is entitled in an attempt to withhold relevant and potential damaging evidence from Plaintiff. Defendant's objections to producing the relevant evidence are unsupported by both the facts of the case and the law of this Circuit. Plaintiff propounded interrogatories and document requests upon Defendant and after numerous attempts to reach agreement regarding the scope of the discovery, there remain several areas of disagreement. A brief discussion of the facts of the case illustrates the relevancy of the discovery and the

unsupported objections taken by the Defendant.

## II. FACTS

Plaintiff Seth Daniels was terminated on March 12, 2004, after working for APC for only six months. Complaint, ¶ 6 [Dkt.]. APC's explanation for the termination was that Daniels received kickbacks in the form of travel points from the Marriott Hotel after he organized training sessions for APC employees. Ex. 1, APC 474. APC argues that Daniels stole travel points from APC employees (Ex. 5, APC 512, 514) and that, "[t]hese points belonged to the APC employees who stayed at the Marriott at Daniels' direction." Ex. 4, APC 501. APC further alleges that Daniels "devised a scheme to divert the Marriott Rewards Points that should have been credited to the FSEs staying at the Marriott to his own personal account." Ex. 4, APC 501. It further stated that APC "allows employees who travel on Company business to collect travel points for their own personal travel. Thus, if Daniels had followed Company practice, each individual renting a room at the Marriott would have collected travel points." *Id.*, Ex. 1, APC 475, n. 5.

APC also accused Daniels of creating a direct billing relationship whereby employees who stayed at the Marriott did not pay for their hotel stay directly, but rather, APC was directly charged for such expenses. *Id.* at 475. APC alleges that the direct billing was established in an effort to hide the fact that the trainees were staying at the Marriott. Ex. 1, APC 475. APC alleges that the hotel stays at the Marriott resulted in a loss of money for APC. *Id.* Ex. 1. APC 473.

Contrary to APC's stated position, Daniels receipt of travel points did not deprive any individual from obtaining travel points for their stay at the Marriott Hotel. APC's termination of

Daniels was a pretext for discrimination and retaliation for his prior complaints of discrimination and harassment. Prior to his termination, Daniels was harassed and discriminated against on several occasions and his complaints regarding the harassment and discrimination were ignored. Ex. 8, Daniels Dep. at 377, 394-95.

Specifically, Daniels alleges that he was harassed and treated differently than white employees. While white employees were allowed to directly bill their travel related expenses, Finance Manager Brian Kelly and Travel Manager Christine Bollman refused such accommodations for Daniels. Ex. 8, Daniels Dep. at 177-86. Additionally, when Daniels' company issued laptop was stolen from his rental car, he was harassed by APC managers regarding the incident. Complaint, ¶ 13 [Dkt. #1]. Daniels was also harassed by Finance Manager Brian Kelly with regard to the information he provided on his W-4 form. Ex. 8, Daniels Dep. at 220-22, 251, 335. Additionally, Daniels was harassed by APC managers regarding reimbursement for his expenses related to his travel for APC. *Id.*, Daniels Dep. at 252, 267. Daniels complained to numerous managers regarding the harassment and discrimination at APC, but his complaints were ignored. *Id.*, Daniels, Dep. at 377, 394-395.

In its defense, APC argues that it terminated white employees who engaged in similar conduct as Daniels. Ex. 2, APC Letter of April 6, 2005 to the EEOC, APC 452. APC argued to the EEOC that the termination of two high level executives, a Country General Manager for several countries in Latin America, and the Regional General Manager for the Latin American region, over whom then Director of Human Resources for North America and Latin America Brian Gough had Human Resources responsibility, were terminated for a "grey-marketing scheme" and self-dealing. Ex. 2, APC 452. APC also represented to the EEOC that the

termination of employees in the sales organization in 2001 was relevant to the issue of whether or not its termination of Daniels was discriminatory. Ex. 2, APC 452. APC stated that these sales employees manipulated "the phone system to inflate the number of calls they received or placed which, in turn, inflated their commission bonuses." Ex. 3, APC Letter of June 24, 2005 to the EEOC, APC 498.

Despite the claims raised by Daniels and the defenses specifically alleged by APC, APC refuses to produce much of the evidence directly related to these specific claims and defenses of the case.

## II. ARGUMENT

Defendant's refusal to produce requested discovery violates the Federal Rules of Civil Procedure, Supreme Court, and First Circuit precedent, all of which guarantee the broad scope of discovery. APC bears the burden to demonstrate why it should not have to produce the requested discovery. *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). Rule 26(b)(1) defines the scope and limits of discovery:

> (b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. Pro. 26(b)(1). The First Circuit has held that the "plain language of this Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent." *Klonoski v.*

*Mahlab,* 156 F.3d 255, 267 (1st Cir. 1998). The matters "relevant" to the subject matter of the pending action, as described in Rule 26 (b)(1), include:

> [A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case… [D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits."

*Klonoski,* 156 F. 3d at 267 (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

The purpose of broad-ranging discovery is to "narrow and clarify the basic issues between the parties," and to ascertain "the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947)). The result is that "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain *the fullest possible knowledge of the issues and facts before trial.*" *Id.* (quoting *Hickman*, 329 U.S. at 500-01) (emphasis in *Klonoski*).

The First Circuit has held that the "discovery rules are to be accorded a broad and liberal treatment," because "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Klonoski* at 267-68 (quoting *Hickman,* 329 U.S. at 507). "To that end, either party may compel the other to disgorge whatever facts he has in his possession," *Id.* at 268 (quoting *Hickman,* 329 U.S. at 507) (emphasis in *Klonoski*), and all basic issues and facts must be disclosed "*to the fullest practicable extent*," *Id.* (quoting *United States v. Procter & Gamble Co*., 356 U.S. 677, 682 (1958) (emphasis in *Klonoski*)).

> [R]elevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information

> sought may be relevant to the subject matter of the action. Thus, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.

*Gagne v. Reddy,* 104 F.R.D. 454, 456 (D. Mass.1984) (citations omitted) (emphasis in *Gagne*).

Therefore, a "great deal of latitude" is provided for discovery, *Harris v. Nelson*, 394 U.S. 286, 297 (1969), and appellate courts generally will not uphold discovery rulings "which [have] failed to adhere to the liberal spirit of the [Federal] Rules [of Civil Procedure]." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); s*ee also Williams v. City of Dothan, Ala*., 745 F.2d 1406, 1415-16 (11th Cir. 1984); *Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944-45 (2d Cir.1983). This is particularly so in employment discrimination cases, because, as the First Circuit has recognized, "discrimination is often subtle and pervasive," and therefore "plaintiffs must be able to rely on circumstantial evidence to prove discriminatory intent." *Cummings v. Standard Register Co*., 265 F.3d 56, 63-64 (1st Cir. 2001).

Plaintiffs who raise allegations of employment discrimination are entitled to a broad range of documents relating to the employer's employment practices, since such information is relevant and necessary to the evaluation and proof of the plaintiff's claims. As the Supreme Court stated in *Wards Cove Packing Co., Inc. v. Atonio,* "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims." 490 U.S. 642, 657 (1989). "Relevancy for discovery purposes is much broader than for admissibility purposes at trial. If the information sought appears reasonably calculated to lead to the discovery of admissible evidence, it is within the limits set forth in Fed. R. Civ.P. 26(b)(1)." *Jackson v. Harvard University*, 111 F.R.D. 472 (D. Mass. 1986). "In Title VII litigation, in which plaintiffs are . . . required to demonstrate pretext, courts have customarily allowed a wide discovery of

personnel files." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991).

Defendant's refusal to produce documents relevant and potentially relevant to Plaintiff's claims contravenes the liberal discovery rules and has severely limited Plaintiff's ability to evaluate his claims and prove his case. Plaintiff cannot "narrow and clarify the basic issues between the parties," or ascertain "the facts, or information as to the existence or whereabouts of facts, relative to those issues" without the information Defendant is refusing to produce and to which Plaintiff is entitled. *Klonoski,* 156 F. 3d at 267 (quoting *Hickman*, 329 U.S. at 500-01).

### A. Defendant Refuses To Produce Documents Responsive to Plaintiff's Document Requests Which Are Not Privileged and Which Are Reasonably Calculated To Lead to the Discovery of Admissible Evidence

Defendant refuses to produce documents which are reasonably calculated to lead to the discovery of admissible evidence and which are not privileged. The document requests, responses, and reasons for the motion to compel are addressed below.

#### 1. Requests for Production of Documents[1]

Request No. 4: All documents relating to any complaints of race discrimination and/or harassment and/or retaliation at the Defendant's Providence Rhode Island office, including, but not limited to, all internal complaints, documents, or memoranda, EEO complaints, EEOC Charges, and investigative files and lawsuits alleging race discrimination and/or against the Defendant from 1995 to the present.

Response No. 4: Defendant objects to Request No. 4 the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Request No. 4 seeks documents regarding alleged incident that are remote in time from the alleged incidents regarding Plaintiff, it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery. Further, because Request No. 4 seeks documents

[1] Plaintiff's Requests for Production of Documents Nos. 1-11, and Plaintiff's Interrogatories Nos. 1-20, referred to herein, are included in Exhibit No. 16. APC's responses to Plaintiff's Interrogatories 1-20 are included in Exhibit No. 17. APC's responses to Plaintiff's Document Requests Nos. 1-11 are included in Exhibit 24. Plaintiff's exceptions to APC's objections and responses related to Plaintiff's Interrogatories Nos. 2-19 can be found at Exhibit 18. Plaintiff's exceptions to APC's objections and responses related to Plaintiff's Document Requests 1-11are included in Exhibit 19. APC's supplemental responses to Plaintiff's Interrogatories Nos. 2-19 can be found in Exhibit 20. APC's supplemental responses to Plaintiff's Document Requests Nos. 1-11 can be found in Exhibit 21. Plaintiff's document request No. 12, and Defendant's response thereto, can be found in Exhibit 23. Plaintiff's Document Requests Nos. 13-18, and Defendant's response thereto, can be found in Exhibit 22.

regarding all alleged employee complaints, and does not attempt to limit the scope of discovery to those employees who might arguably be similarly situated to Plaintiff, it is overly broad, unduly burdensome and exceeds the permissible scope of discovery.

Exception: Defendant's objections are without merit. The documents are reasonably calculated to lead to the discovery of admissible evidence. To the extent that there are complaints of race discrimination, retaliation and or harassment by the same individuals involved in Daniels' termination, the fact that such incidents occurred prior to Mr. Daniels' employment, does not render it irrelevant. However, in the spirit of compromise, Plaintiff will revise his request to include only those complaints that were made by employees who work in the Providence Rhode Island Office or those employees who were trained in Rhode Island.

Supplemental Response No. 4: Defendant maintains its objections to this Request, particularly given that Plaintiff failed to sufficiently tailor his request. In the spirit of compromise, APC will produce any documents related to complaints of race-based discrimination, harassment or retaliation that involved the same individuals that supervised Daniels and participated in the decision to terminate his employment. We will further agree to produce documents relating to any such claim that was first asserted on or after January 1, 1999, through the end of Plaintiff's employment.

**Basis for Motion to Compel:** APC has not produced any documents related to complaints of discrimination and/or harassment and refuses to do so. Ex. 6, Letter of December 1, 2006 from Kostakos to Kisch. Its basis for withholding such information is that Plaintiff has not proven that there are such complaints and that for those individuals who Plaintiff has learned made such complaints, APC argues that Plaintiff has not proven that the individuals are proper comparators. APC's objections would require that Plaintiff prove his case before even receiving the evidence. APC is aware that it is in sole possession of this evidence. Further, APC's objection to producing documents relating to complaints made after Daniels' termination is contrary to the law. Discovery is not limited to the time frame of the contested employment action. *Jackson v. Harvard*, 111 F.R.D. 475 (D. Mass. 1986). It is generally recognized that an individual who has been terminated is entitled to discovery beyond the date of his termination. *See, e.g.*, *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) (allowing

discovery into the period two years after termination); *Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D. Pa. 1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Obiajulu v. City of Rochester,* 166 F.R.D. 293, 296 (W.D.N.Y.1996) (discovery allowed up until the time the case was heard).

HR Director Brian Gough, who made the decision to terminate Daniels, testified that he was aware of at least two individuals, Mr. Olson and Junior Thomas, who filed complaints of discrimination. Ex. 9, Gough Dep. at 66-82. Both complaints were filed after 1999 and related to their employment for APC in Rhode Island. *Id.* Additionally, Gough testified that he was aware of approximately 20 additional complaints of discrimination. *Id.* Plaintiff is entitled to the discovery of this information and APC's refusal to produce the documents related to these complaints is not warranted. Further, Plaintiff did not limit his complaints of harassment to those relating only to race based harassment. Certainly, if a white woman felt harassed by Kelly and HR Director Gough took action to address the complaints, such evidence would demonstrate the disparate treatment between Daniels and the white comparator. Additionally, HR representative Christine Hendrix, who works under Brian Gough, testified that complaints of discrimination, harassment, and/or retaliation were made by or about the following individuals: John Bonzani, Seth Daniels, Mike Cox, Brian Kelly, Ron Templeton, Rom Saleki. Ex. 10, Christine Hendrix Dep. at 94-151. Manager Doug Radamacher testified that both Kevin Brown and Kathleen Green complained of discrimination and/or harassment. Ex. 11, Radamacher Dep. at 32-36. Yet, APC refuses to produce this requested discovery. Ex. 6.

APC cannot credibly argue that the complaints of discrimination made by employees working under the supervision of John Bonzani and Paul Kavanaugh are not discoverable. Both Bonzani and

Kavanaugh supervised Daniels. Ex. 1, APC 471. Kavanaugh terminated Daniels. Ex. 1, APC 474. Additionally, all complaints made by employees over whom HR Director Gough had Human Resources responsibility is discoverable because Gough made the decision to terminate Daniels. Ex. 9, Gough Dep. at 175,196. Additionally, Mr. Daniels complained of discrimination and harassment to Bonzani, Kavanaugh, and Gough. To the extent that white individuals complained of discrimination, harassment and/or retaliation and an investigation regarding such complaints was conducted, such information would be relevant to establishing that Mr. Daniels was treated differently than white employees.

Additionally, to the extent that minority employees complained of discrimination, harassment and/or retaliation, and their supervisors and/or the Human Resources Department did not investigate such complaints, such evidence would be relevant to Daniels' claims of discrimination and/or retaliation and to establish the corporate atmosphere of discrimination at APC. The First Circuit has recognized that it is proper for a trial court to allow anecdotal testimony of employees who had suffered discrimination (other than the plaintiff), even though these employees worked in a different area than the plaintiff, during a different time period, and for different supervisors. *Cummings v. Standard Register Co.*, 265 F.3d 56, 63-64 (1st Cir. 2001). The First Circuit further held that this type of evidence is relevant to establish the corporate "atmosphere" or "state of mind" of the company. *Id.* If information regarding other employees' experiences with discrimination at APC is sufficiently relevant to be admissible, especially in the form of testimony at trial, then it is at the very least discoverable and APC's objections to the production of such evidence is counter to the law of this Circuit.

<u>Request No. 5:</u> Any and all documents relating to Plaintiff's employment by Defendant and/or his termination from employment by Defendant.

Response No. 5: Defendant objects to Request No. 5 on the grounds that phrase "relating to" is undefined and, as used therein, is vague, ambiguous, and susceptible to multiple meanings. Read literally, this Request seeks all documents that are in any way related to any aspect of Plaintiff's employment with Defendant and, therefore, is over broad, unduly burdensome, and exceeds the permissible scope of discovery. Defendant also objects to this Request because it seeks information that is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant will produce a copy of Plaintiff's personnel file, as such file is maintained by Defendant, as well as additional documents (including email correspondence) that are responsive to this request.

Exception: With regard to Plaintiff's request for all documents relating to Plaintiff's employment and/or termination, Plaintiff clarifies the request as follows: In addition to those documents already produced by Defendant, all documents that in any way refer to and/or memorialize Plaintiff's hire and/or termination by Defendant should be produced. All documents that were considered by Defendant at any point during Plaintiff's employment, which in any way contributed to Defendant's decision to terminate Plaintiff should be produced. Further, to the extent that any documents were considered by Defendant which supports Plaintiff's contentions that he should not have been terminated, including documents that refer, relate, or suggest that Plaintiff was treated differently than other employees, such documents should be produced. Also, please confirm that all documents sent to and/or received from the New Jersey Department of Labor regarding unemployment benefits for Daniels subsequent to his termination from APC have been produced.

Supplemental Response No. 5: APC has fully responded to this Request, and has produced all responsive, non-privileged documents in its possession, custody or control that in any way refer to and/or memorialize Plaintiff's hire and/or termination by APC, including documents, if any, that are detailed in your exception to APC's response to this Request provided, however, that no documents exist to support Plaintiff's contentions that he should not have been terminated, or that suggest he was treated differently than other employees. APC maintains that Plaintiff was terminated for legitimate reasons, and was not treated differently or discriminated against by APC or its employees. Finally, after reviewing its files and records, APC confirms that it does not have any documents in its possession, custody or control that were sent to, or received from, the New Jersey Department of Labor regarding unemployment benefits for Plaintiff, other than the documents already produced in response to Plaintiff's discovery requests.

**Basis for Motion to Compel:** APC refuses to produce several documents which directly relate to the issue of whether or not Daniels was treated differently than white employees. For example, Daniels testified that he was aware that Bonzani and Kavanaugh both received reward points for charges made on their credit cards. Ex. 8, Daniels Dep. at 349, 368, 370. Daniels also

testified that he was aware that Bonzani and Kavanaugh paid for APC travel expenses for other individuals and/or for conference rooms on their personal credit cards. *Id.* at 370-71, 378-79. Thus, to the extent that Kavanaugh and Bonzani received reward points for APC travel of other individuals, such a fact would be relevant to whether or not Daniels was treated differently than white employees. A review of the expense and reimbursement files of Bonzani and Kavanaugh may provide the evidence of whether or not travel related expenses for individuals other than for themselves were charged on their credit cards. At the very least, such information is reasonably calculated to lead to the discovery of admissible evidence. Additionally, Brian Kelly's testimony regarding the expense and reimbursement files demonstrates that the files are easily produced because they are organized by employee and are maintained in one of two places. Ex. 12, Kelly Dep. at 162-66.

Plaintiff also requested that APC produce documents which reflect that APC employees did not always stay in APC preferred hotels. Such documents would include the expense and reimbursement files for employees who sought reimbursement from APC for their employment related travel. Because APC argues that it was improper for Daniels to direct employees to stay at the Marriott, due to the fact that the Marriott was not on the APC list of preferred hotels, the fact that APC employees regularly stayed at non preferred hotels is not only relevant, but reasonably calculated to lead to the discovery of admissible evidence. Additionally, several individuals testified regarding a large sales meeting at which numerous employees stayed at the Marriott Hotel. This evidence goes to the heart of the issue in this case. APC refused to produce the documents that would evidence such hotel stays.

APC's basis for refusing to produce the documents relating to the sales meeting is that the

employees are not comparators. Plaintiff disagrees that the employees are not comparators. The First Circuit has held that evidence may be used regarding the way a corporate defendant treated other employees, even employees who worked in "different time periods, [under] different supervisors, and [in] different areas of the company" than the plaintiff. *Cummings,* 265 F.3d 63-64. Even if the sales employees who stayed at the Marriott are not direct comparators, the individual who directed and approved the hotel bookings at the Marriott would be a direct comparator to Daniels.

But in any event, Plaintiff does not intend to rely on the evidence solely on the basis that it is comparator information. Rather, the fact that rooms were rented at the Marriott hotel for a large sales meeting demonstrates that the reason APC terminated Daniels was in fact pretext. If the travel manager and HR manager had knowledge of the use of the Marriott for the sales meeting and took no action to prevent the bookings and took no action to discipline the organizer for booking the rooms at the hotel instead of an APC preferred hotel, such facts demonstrate pretext in Daniels' case.

HR representative Hendrix also testified regarding a tech employee who worked under Supervisor Michael Cox who Kelly initially refused to reimburse $8,000 worth of expenses. Kelly eventually approved the reimbursement. Ex. 10, Hendrix Dep. at 151-54. APC refuses to produce the documents related to this individual on the basis that he is not a proper comparator. Again, without any information regarding the individual, Plaintiff cannot be expected to prove that which he has not yet even been able to discover.

Request No. 6. The personnel files or any other file, including but not limited to, Human Resource's files, supervisor's files, departmental files, discipline files or other files, by whatever name, containing employment information relating to Seth Daniels, and all those employees identified in response to Interrogatory Nos. 5, 8, 14 and 15.

Response No. 6: Defendant objects to Request No. 6 on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. To the extent Request No. 6 seeks documents relating to Plaintiff,

Defendant refers Plaintiff to the documents produced in response to Request No. 5. To the extent Request No. 6 seeks documents regarding individuals referred to in Interrogatory Nos. 5,8,14 and 15 other than Plaintiff; Defendant incorporates its responses and objections to such Interrogatories herein by reference. Defendant further objects to Request No. 6 on the grounds that is unduly burdensome and unnecessarily invades the reasonable privacy interests of current and former employees of Defendant.

Exception: Defendant's objections are without merit and also are not proper objections. Defendant cannot object based upon privacy reasons. However, in an effort to reach resolution on the dispute regarding the personnel files of other employees, Plaintiff will agree to a protective order that recognizes the confidentiality of such documents. Additionally, Plaintiff was required to take a personality test prior to his employment with APC. No such test was included in the production. This test is directly responsive to request No. 6 and should have been produced. To the extent that such tests were also required of the other individuals for whom personnel files were requested, such documents must also be produced. To the extent that such documents were omitted from the production from the files, please explain why they were not initially produced.

Supplemental Response No. 6: APC maintains its objections, though it will produce non-privileged documents responsive to this Request with respect to individuals identified in response to Interrogatory No. 5. Further, while APC maintains its objections to Interrogatory No. 8, APC stated that it was unaware of any employee (other than Plaintiff) who received travel points from an airline or hotel for organizing the sue of such airline or hotel by APC employees. APC further maintains its objection to Interrogatory No. 14. As noted in other submissions related to this matter, Plaintiff personally profited from diverting APC employees from the Johnson and Wales Inn in Rhode Island to the Providence Marriott hotel. He devised a direct billing relationship with the Marriott, in direct violation of APC's practices, whereby the Marriott sent the bills to him at his office at APC in East Providence. The Marriott allowed Plaintiff to accrue over 100,000 Marriott Rewards points for his personal account based upon the stays of other APC employees for APC training activities. On March 12, 2004, Christine Bollman received an electronic mail from the Marriott's Director of Sales and Marketing explaining that Plaintiff had rented a large number of rooms at the Marriott in January and February 2004 for APC events, and that he was awarded over 100,000 points to his personal Marriott Rewards account as a result. Further, the correspondence from the Marriott's Director of Sales and Marketing confirmed that, to the extent Plaintiff received rewards points for the stay of APC employees, the employees themselves were unable also to receive rewards points for their stay at the Marriott. APC is otherwise currently not aware of the identities of any individual responsive to this request. Finally, with respect to Interrogatory 15, APC refers Plaintiff to its letter of November 10, 2006 to you, and the response provided to your exception to APC's answer to that interrogatory.

**Basis for Motion to Compel:** Daniels' immediate supervisor, John Bonzani, testified that he created a draft evaluation for Daniels prior to his termination. Ex. 13, Bonzani Dep. at 134-35. The

draft evaluation is responsive to this request and should be produced. APC has not provided a basis for withholding the document.

As stated above, APC alleges that the fact that it terminated high level executives who were involved in a "grey marketing scheme" evidences that it did not treat Daniels any different than white employees. In this request, Plaintiff requested all files related to the individuals involved in the "Grey marketing Scheme."[2] APC agreed to produce "relevant portions of personnel files for the individuals involved in the 'grey marketing scheme.'" Ex. 6. Plaintiff is entitled to all the files related to these individuals. APC has not asserted or articulated a legitimate basis for withholding and or omitting information from production. Additionally, this request asks for the files relating to the individuals identified in Interrogatory No. 5 who were terminated from the sales department for allegedly inflating the number of calls to receive greater commissions. Again, APC relied upon this information when arguing to the EEOC that it treated Daniels similarly to white employees. These documents are reasonably calculated to lead to the discovery of admissible evidence and APC has not articulated a legitimate reason for withholding the documents.

This request also asked for the files related to the individuals who were identified in Interrogatory No. 15. Interrogatory No. 15 requests that APC identify the individuals who reported that company equipment was lost or stolen. APC has responded that it is not aware of any individuals whose equipment was lost or stolen. This response is not credible. Several managers testified regarding a number of individuals whose equipment had been lost or stolen. Plaintiff provided this information to APC and included the following information from the depositions:

---

[2] This request asked for the files of the individuals identified in Interrogatory No. 5. Interrogatory No. 5 specifically requested that APC identify the individuals it identified in its letter to the EEOC which referred to the "Grey Marketing Scheme." See Ex. 16.

1. See Christine Bollman Dep. at 197-201; Individual in Florida whose laptop was lost or stolen from a rental car;
2. See John Bonzani Dep. at 96-97- Anthony Corrideo (phonetic spelling)
3. See Bonzani Dep. at 96; Dominic (LNU); and
4. See Hendrix Dep. at 180; Tech employee who lost his luggage containing company equipment

Ex. 7, Nov. 21, 2006 letter from Kisch to Kostakos.

Finally, Plaintiff requested APC's files relating to the individuals who were identified in response to Interrogatory No. 14. Interrogatory No. 14 requests APC to identify the individuals from whom Plaintiff allegedly misdirected Marriott travel points while employed by APC. APC has refused to respond to the Interrogatory as set forth below and has not provided any documents related to these individuals. APC should be in possession of information identifying those individuals who attended the training sessions organized by Daniels. Certainly, the names of those individuals are reasonably calculated to lead to the discovery of admissible evidence. No legitimate basis has been articulated by APC for withholding the names of the individuals.

Request No. 7: Any and all documents relating to discipline of employees including but not limited to any compilation, databases, and or lists of discipline compiled by Defendant.

Response No. 7: Defendant objects to Request No. 7 on the grounds that the phrase "relating to discipline," as used therein, is vague and ambiguous. Defendant also objects to this request because it seeks information that is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Read literally, Request No. 7 seeks the production of any and all documents related to any and all disciplinary actions taken by defendant, for any and all reasons, at any time since Defendant was founded. This vague, unfocused Request is therefore unduly burdensome and exceeds the permissible scope of discovery.

Exception: Defendant's objections are without merit. However, in the spirit of compromise, Plaintiff will agree that its requests for documents relating to discipline of employees is unlimited in time, only to the extent that there are any lists, compilations, and/or databases maintained by APC of such discipline and/or termination. With regard to additional documents relating to discipline, Plaintiff clarifies his request to only those documents that refer to discipline and/or termination and will limit his request in time to those documents dating back to 1995.

Supplemental Response No. 7: APC maintains its objections to this Request. As previously

noted, this Request calls for APC to produce documents related to all disciplinary actions taken by APC for any reason and that occurred across all divisions of the company. Your attempt to limit this request in time to those documents dating back to 1995 falls well short of the sort of limitation required to enable APC to provide any sort of logical, rational, or coherent response. This vague, unfocused Request remains unduly burdensome and exceeds the permissible scope of discovery. In any event, APC does not maintain any master lists or databases, or any comprehensive compilation of documents, related specifically to discipline or termination.

**Basis for Motion to Compel:** It is unclear whether APC intends to provide documents responsive to this request. While it did agree to produce documents for certain individuals who worked under Paul Kavanaugh, in its letter of December 1, 2006, it did not state whether any documents would be produced. Ex. 6. Plaintiff respectfully asserts that he is entitled to all discipline related documents for all individuals who worked under Bonzani, Kavanaugh and/or over whom Brian Gough had Human Resources responsibility. Plaintiffs identified eight individuals with discipline issues who were discovered through the manager depositions. These individuals included the following:

1. Andy Cross (Ex. 10, Hendrix Dep. at 75-78);
2. Cathy Green (*Id.* at. 82-85);
3. The white male field service employee who worked in Pennsylvania and who had alcohol problems (*Id.* at 33-34);
4. The white male employee supervised by David McDaniel who worked in Florida and who was put on a performance plan (*Id.* at 43-44);
5. The white male employee in the engineering department, under Brian Gough, with attendance and productivity problems (*Id.* at 47);
6. The manufacturing employee managed by J. Guimond who was investigated on suspicions of spending too much time on the internet (*Id.* at 73-75);
7. Julie Kelly (*Id.* at 196-97); and
8. Jim Biller (Ex. 13, Bonzani Dep. at 139, 202-03).

Ex. 7. To the extent that additional individuals were disciplined who were under the supervision of Bonzani and/or Kavanaugh and/or under the responsibility of HR Director Gough, APC has not articulated a legitimate basis for withholding such documents.

Request No. 8: All documents reflecting and/or referring or relating to the Marriot Hotel in

Providence and/or the Johnson & Whales hotel.

Response No. 8: Defendant objects to Request No. 8 on the grounds that it is vague, ambiguous, unduly burdensome, and lacks any temporal limitation. Defendant also objects to this request because it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant will produce documents responsive to this request. Defendant also refers Plaintiff to the documents produced in response to Request No. 5.

Exception: Defendant's objections are without merit. Please confirm that all documents responsive to this request have been produced.

Supplemental Response No. 8: APC maintains its objections to this Request. In this instance, Plaintiff propounded a vague, overly broad discovery request that is subject to multiple interpretations. In response, APC properly asserted objections, and made a good faith effort to respond based on APC's reasonable interpretation of the Request. Your exceptions suggest that, since there is some reasonable interpretation to this broadly worded request, APC is without the right to respond in this fashion. We disagree. Subject to its objections, APC states that no documents responsive to this request exist in APC's files other than those already produced by Plaintiff.

**Basis for Motion to Compel:** As described in response to Request No. 5, APC has failed to produce documents related to the individuals who attended a large sales meeting and who stayed at the Marriott during the meeting. APC's statement that no other documents responsive to this request exist in APC's files is not credible. The expense and reimbursement files for the individuals who attended the sales meeting would reflect the expenses for the hotel stays at the Marriott. It is undisputed that numerous employees stayed at the Marriott during the sales meeting. Plaintiff provided APC's counsel with citations to the deposition transcripts of APC managers who testified about the sales meeting. See Ex. 7.[3] APC has not articulated a legitimate basis for refusing to produce the responsive and relevant documents.

---

[3] Brian Kelly, Doug Radamacher, and John Bonzani all testified about a large sales meeting or conference that took place in Providence. Mr. Kelly and Mr. Radamacher testified that APC employees stayed at the Marriot during that conference. See Ex. 12, Kelly Dep. at 127;

<u>Request No. 10:</u> All documents, including but not limited to all bills, received by the Finance Department related to training sessions held during the months of January and February 2004.

<u>Response No. 10:</u> Defendant objects to Request No. 10 on the grounds that it is unduly burdensome and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant refers Plaintiff to the documents produced in response to Request Nos. 3 and 8.

<u>Exception:</u> Defendant's objections are without merit. Please confirm that all documents responsive to this request have been produced.

<u>Supplemental Response No. 10:</u> Subject to its objections, APC produced all responsive, non-privileged documents in its possession, custody, or control.

**<u>Basis for Motion to Compel:</u>** APC has not produced the expense and reimbursement files for the individuals who attended the training sessions from whom Daniels allegedly stole reward points. As described in response to Request No. 8, the files of those individuals who stayed at the Marriott Hotel is reasonably calculated to lead to the discovery of admissible evidence. The expense files will reveal the names of the individuals from whom Daniels allegedly stole travel points. It will reveal that in fact, Daniels did not prevent individuals from paying for their own hotel rooms and thus collecting travel points (to the extent that the individual was a Marriott Reward participant and thus eligible for points). No legitimate objection can be made to warrant the withholding of this most basic information.

<u>Request No. 12:</u> Produce all documents relating to the reimbursement of hotel expenses for all APC employees who stayed at a hotel in Rhode Island dating back to 1999.

<u>Response to No. 12:</u> Defendant objects to Request No. 12 on the ground that it is unduly burdensome. The Company has employed tens of thousands of individuals since January 1, 1999. Because the Company's corporate headquarters are located in Rhode Island, and it maintains additional facilities at other locations in Rhode Island, innumerable Company employees have visited Rhode Island in the over seven-year period encompassed by Request No. 12. Accordingly, it would be unduly burdensome for the Company to locate and produce

---

Radamacher Dep. at 50, and Bonzani Dep. at 61-64. Ex. 7.

documents relating to each and every time a Company employee requested and/or received reimbursement for a staying at a hotel in Rhode Island since January 1, 1999. Further, to the extent this interrogatory seeks information that pre-dates or post-dates Plaintiff's employment with the Company and does not concern requests for reimbursement made by Plaintiff, it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing specific objections, and the general objections set forth above, Defendant refers Plaintiff to the documents Defendant produced in response to Plaintiff's Request for Production of Documents, including without limitation the documents related to (a) the Marriott Hotel in Providence, and (b) Plaintiff's own requests for reimbursement.

**Basis for Motion to Compel:** APC's objections are not proper. This request is reasonably calculated to lead to the discovery of admissible evidence. As further explained above, the scope of discovery is not limited to the date of Plaintiff's termination and the evidence sought in this request is directly central to the claims in the case. See Basis for Motion to Compel in response to Request No. 5.

Request No. 13. Produce all documents related to the termination of white employee executives who according to APC participated in a "gray marketing" scheme whereby the executives allowed a distributor of the Company's products to purchase large quantities of APC products at the price reserved for a particular Latin American country.

Response to No. 13: Defendant objects to Request No. 13 on the ground that it seeks information that is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent it seeks documents that constitute attorney work product and/or are subject to the attorney-client privilege. Subject to and without waiving the foregoing specific objections, and the general objections set forth above, Defendant will produce documents sufficient to identify the executive(s) whom the Company terminated or asked to resign because of their involvement in the "gray marketing" scheme referred to in Request No. 13.

**Basis for Motion to Compel:** APC's response that it will only provide documents sufficient to identify the executives who participated in the "gray marketing" scheme is not a sufficient response to this request. As fully explained in Plaintiff's basis for its motion to compel in response to Request No. 6, Plaintiff is entitled to all documents related to the terminations of

the white employee executives, not just those identifying the indivdiuals.

Request No. 14. Produce all documents related to the termination of white males and females in their twenties in the sales organization who allegedly manipulated the phone system to inflate the number of calls they received or placed which inflated their commission bonuses.

Response to No. 14: Defendant objects to Request No. 14 on the grounds that it is unduly burdensome and seeks information that is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing specific objections, and the general objections set forth above, Defendant will produce documents responsive to this request.

**Basis for Motion to Compel:** As set forth in its basis for the motion to compel in response to Request No. 6, Plaintiff is entitled to all documents related to the termination of the white employees in the sales department who allegedly manipulated the phone system.

Request No. 15. Produce all documents which reflect violations of APC policies, practices and/or procedures by any APC employee since 1997 where such employees were not terminated by APC for the stated violations.

Response to No. 15: Defendant objects to Request No. 15 on the ground that it seeks information that is not relevant to the subject matter of this law and is not reasonably calculated to lead to the discovery of admissible evidence. The Company has employed tens of thousands of employees at locations throughout the world since January 1, 1997. Read literally, Request No. 15 seeks documents regarding each and every alleged violation of Company policies, practices, and/or procedures committed by each and every one of those employees during the preceding nine-plus years. Thus, because Request No. 15 seeks documents regarding alleged violations of Company policies, practices and/or procedures that are remote in time from Plaintiff's employment with the Company, it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery. Further, because Request No. 15 seeks documents regarding all such violations, and does not attempt to limit the scope of discovery to those employees who might arguably be similarly situated to Plaintiff, it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery.

**Basis for Motion Compel:** Brian Gough testified that APC maintains two file drawers with files of employee relations files. These files include documentation of employees who were accused of violating various APC policies. Ex. 9, Gough Dep. at 101-05, 122-125. It cannot be overly burdensome to review those two file drawers to determine whether there are any

responsive documents to this request. In addition to those files, Plaintiff further limits this request to those individuals working under the supervision of Paul Kavanagh, John Bonzani, and over whom Brian Gough at Human Resources responsibility.

Request No. 16. Produce all documents sent to and/or received from the Marriott Hotel in Providence Rhode Island, including, but not limited to all bills from the Marriott and payments made by APC to the Marriott Hotel in Providence Rhode Island since 1998.

Response No. 16: Defendant objects to Request No. 16 on the grounds that it is unduly burdensome, seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. To the extent this Request seeks documents regarding the Company's relationship with the Marriott Hotel in Providence, Rhode Island that pre-date or post-date Plaintiff's employment with the Company and do not concern hotel reservations made at such hotel by, or at the direction of, Plaintiff, it seeks documents that are not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome to locate and produce. Subject to and without waiving the foregoing specific objections, and the general objections set forth above, Defendant refers Plaintiff to the documents previously produced by Defendant, including documents Bates Nos. 373-425 and 521-34.

**Basis For Motion to Compel:** APC's objections regarding the temporal scope of this request is unfounded as described previously. To the extent that employees stayed at the Marriott Hotel rather than an APC preferred hotel, such evidence is reasonably calculated to lead to the discovery of admissible evidence and should be produced. In an effort to address APC's concerns regarding burden, Plaintiff's counsel informed counsel for Defendant that APC was not required to produce every document responsive to this request, but that as long as APC produced a sufficient amount of documents responsive to this request, Plaintiff would be satisfied. APC's complete refusal to produce responsive documents to this request is unfounded.

Request No. 17. Produce all documents referring or related to the use of any hotels by APC and/or its employees on business for APC, which hotel at the time, was not on an APC preferred hotel list.

Response No. 17: Defendant objects to Request No. 17 on the ground that it is unduly burdensome. Request No. 17 contains neither a temporal nor a geographic limitation. As stated

in response to Request No. 15, the Company has employed tens of thousands of individuals across the world since 1997 alone. Thus, read literally, Request No. 17 purports to require the Company to: (a) identify each and every employee who ever stayed at a hotel on Company business anywhere in the world since the Company was founded, (b) determine which hotels were on the Company's preferred list of vendors at the time of each such hotel stay, and (c) cross-reference each and every hotel reservation with the relevant list of preferred vendors to determine whether, for each occasion, each such employee did not stay at a hotel on such list. Therefore, Request No. 17 is unduly burdensome and exceeds the permissible scope of discovery. Further, to the extent Request No. 17 seeks documents that pre-date or post dates Plaintiff's employment with the Company and do not concern hotel reservations made by, or at the direction of, Plaintiff, it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the question of whether an employee booked, or the Company approved, a reservation at a hotel that was not one of the Company's preferred hotels is wholly irrelevant to this case: the Company terminated Plaintiff's employment because he wrongfully accepted travel or award points from the Providence Marriott in violation of APC's policies, not because he utilized a non-preferred hotel.

**Basis for Motion to Compel:** As explained previously, this information is reasonably calculated to lead to the discovery of admissible evidence. It relates to APC's arguments that Daniels' direction to employees to stay at a non preferred APC hotel violated APC policy. Evidence that employees regularly stayed at non APC preferred hotels is directly related to Daniels' claims in this case.

Request No. 18. Produce all documents related to requests for reimbursements submitted by Laurie Gaspar and APC issued checks for such reimbursements for events hosted at her house.

Response No. 18: Defendant objects to Request No. 18 on the grounds that it is unduly burdensome and seeks information that is not relevant to the subject matter of this lawsuit and is not reaosnbaly calculated to lead to the discovery of admissible evidence. The Company has reviewd the portion of Ms. Gaspar's expense reimbursement records that are electronically available (those dating from January 1, 2005 onward): none of those records specifically refernce events that were hosted at Ms. Gaspar's house. The remaining expense reimbursement records are voluminous, available only in paper, as opposed to electronic, form and are stored offsite. These records are not indexed. Further, the expense reimbursement forms submitted by Ms. Gaspar did not require that she specifically indicate the events for which she sought reimbursement were hosted at her home. Thus, unless Ms. Gaspar specifically documented the fact that she was seeking reimbursement for an event hosted at her house, it would be impossible for the Company to determine which records, if any, related to such events. In light of the foregoing, it would be unduly burdensome for Defendant to obtain the requested records from its

offsite storage location and review each and every expense reimbursement form ever submitted by Ms. Gaspar during the course of her employment with the Company to determine whether any of those requests related to events held at her house. The time and expense associated with such an undertaking far exceeds the permissible scope of discovery, particularly in light of the fact that the requested documents are entirely irrelevant to the claims asserted by Mr. Daniels.

**Basis for Motion to Compel:** As previously stated, Brian Kelly testified that the expense and reimbursement files are organized by employee. Ex. 12, Kelly Dep. at 162-66. Thus, it should not be burdensome to retrieve Ms. Gasper's expense and reimbursement files from storage and produce them in this case. Further, this information is reasonably calculated to lead to the discovery of admissible evidence. To the extent that APC reimbursed Ms. Gaspar for personal expenses unrelated to APC, and Ms. Gaspar was not disciplined for the submission of such expenses, Ms. Gaspar is a comparator on which Mr. Daniels may rely.

### B. APC's Objections to Plaintiff's Interrogatories Have Been Waived and Are Without Merit

APC refuses to answer several of Plaintiffs' Interrogatories. However, APC's objections were waived when it failed to respond to Plaintiff's Interrogatories in a timely manner. Plaintiff served his initial Interrogatories on APC on July 3, 2006. Ex. 16. Plaintiff agreed to several extensions for APC's responses. Ex. 15. The final extension agreed to by Plaintiff allowed APC until September 1, 2006 to respond to the Interrogatories. *Id.* APC failed to serve its objections and answers by that date and instead did not respond until September 11, 2006. Ex. 17.

APC failed to raise its objections within the time allowed under the Federal Rules and as agreed to by Plaintiff. Fed. R. Civ. Pro. 33 (b)(3). All objections to the interrogatories must be timely and stated with specificity. Fed. R. Civ. Pro. 33(b)(4). "Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause

shown." Fed. R. Civ. Proc. 33 (d)(4). "In the absence of an extension of time, failure to object within the time fixed by the Rules is a waiver of any objection." *Demary v. Yamaha Motor Corp.*, U.S.A. 125 F.R.D. 20, 22 (D. Mass. 1989). *See also Tropix, Inc. v. Lyon & Lyon,* 169 F.R.D. 3, 5 (D. Mass. 1996) ("The defendants have waived any objections which they might have to the interrogatories and document requests by not serving the objections in a timely manner.");

Even if this Court finds that the objections raised by APC were not waived, the objections are without merit. The specific Interrogatories for which Plaintiff seeks to compel answers are identified below.

Interrogatory No. 5. Identify each person who has been terminated from employment by APC, including but not limited to the employees identified in section I. B. of Defendant's letter of April 6, 2005 to the EEOC, and APC's Exhibit A to APC's letter of June 24, 2005 to the EEOC, and describe fully and in detail the circumstances leading to and the reasons for such terminations.

Response No. 5: Defendant objects to Interrogatory No. 5 on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Interrogatory No. 5 contains no temporal limitation, it purports to seek information regarding every employee ever terminated by the Company since the date it was founded, and therefore it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery. Further because Interrogatory No. 5 seeks information regarding all employees who ever have been terminated by the Company, and does not attempt to limit the scope of discovery to those employees who might arguable be similarly situated to Plaintiff, it is overly broad, unduly burdensome and exceeds the permissible scope of discovery. Defendant further objects to Interrogatory No. 5 because it seeks confidential information regarding Defendant's current or former employees. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant states that it is willing to provide Plaintiff with the names and titles of (a) the individuals identified in section I.B. of Defendant's letter of April 6, 2005 to the EEOC, and (b) the individuals identified in Exhibit A to Defendant's letter of June 24, 2005 to the EEOC, provided that the parties agree the terms of, and the Court approves, an appropriate confidentiality agreement and stipulation. Further responding, Defendant states that the reasons for the termination of such individuals are set forth in the above-referenced correspondence from Defendant to the EEOC.

Exception: Plaintiff takes exception to the defendant's objections. However, in the spirit of compromise, Plaintiff agrees to a temporal limitation dating back to 1995. However, Plaintiff requests that in addition to identifying the individuals who were terminated, Plaintiff again requests

that Defendant describe fully and in detail the circumstances leading to, and the reasons for, such terminations.

Supplemental Response No. 5: APC maintains its objections to Interrogatory No. 5. As you know, however, APC already produced (subject to the parties' agreement regarding confidentiality) documents (Bates Nos. APC 568-627) identifying the employees identified in Section I.B. of APC's letter of April 6, 2005 to the EEOC and Exhibit A to APC's letter of June 24, 2005 to the EEOC. The only individual listed on Exhibit A who was not identified in the documents previously produced is Rainer Waigle. Mr. Waigle worked outside of the United States at the time of his departure from APC. APC has sufficiently stated the reasons for the termination of these employees in the referenced correspondence to the EEOC. Plaintiff's request for information related to employees beyond those set forth in the list is objectionable on the bases set forth in APC's original response. Plaintiff's attempt to provide a temporal limitation for its request in your September 29, 2006 letter is not sufficient to address these objections.

**Basis For Motion To Compel:** APC has not provided a full response regarding the reasons for the termination of the individuals involved in the "grey marketing scheme" and the employees in the sales department who allegedly inflated their calls to increase their commissions. Further, Plaintiff asked that APC identify the individuals and APC has not fully provided such identification.[4] APC also has not provided answers regarding any other terminations of APC employees. Discovery regarding past terminations is regularly permitted by courts. For example, the Seventh Circuit held that in a discrimination suit, discovery of previous employees who were discharged should have been allowed to demonstrate a past history of terminations which is relevant to the intent of the defendant in terminating the plaintiff. *Saltzman v. Fullerton*, 661 F. 2d 647, 655 (7th Cir. 1981). The Court instructed the district court, on remand, to "follow a liberal approach designed to ferret out all relevant facts about discharges . . . ." *Id.*

[4] In the definition section of Plaintiff's Interrogatories, Plaintiff defined "Identify" when referring to a natural person as information "sufficient to notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, race, present or last known home address and telephone number, present or last known business affiliation and address, title or occupation, years of service or seniority level, and each of the positions held by such persons during the applicable

Plaintiff limited its request to those individuals terminated since 1995. Despite this temporal limitation, APC refuses to fully respond to the Interrogatory. In addition to the termination information related to the sales employees and employees involved in the "grey marketing scheme, Plaintiff will hereby amend his request to limit the request to terminations from 1998 to the present for those employees over whom Brian Gough has had human resources responsibility, and/or who worked under the supervision of John Bonzani and/or Paul Kavanaugh.

Interrogatory No. 11. Identify all hotels in Rhode Island used for lodging, conferences, trainings, or other events by APC and/or its employees and identify all policies, practices, procedures, or directives of APC regarding the use of such hotels for lodging, conferences, trainings, or other events.

Response No. 11: Defendant objects to Interrogatory No. 11 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 11 on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Interrogatory No. 11 contains no temporal limitation, it purports to request information regarding all hotels ever used by any Company employee at any time, since the date the Company was founded, for lodging, conferences, training or other events and, therefore, it is overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant states that, in 2004, the Company had negotiated special rates with, and/or encouraged employees to stay at, the following hotels in Rhode Island: (1) the Radisson Airport Hotel in Warwick; (2) the Sheraton Providence Airport Hotel in Warwick; (3) the Fairfield Inn in Warwick; (4) the Homestead Studio Suites Hotels in Warwick; (5) the Hotel Viking in Newport; (6) the Newport Harbor Hotel & Marina in Newport; (7) the Johnson & Wales Inn in East Providence; and (8) Extended Stay America in East Providence. Pursuant to Fed. R. Civ. P. 33(d), additional information responsive to this interrogatory can be derived or ascertained from the documents Defendant produced in response to Plaintiff's Request for Production of Documents, including without limitation documents Bates Nos. APC 370-371.

Exception: Plaintiff will limit the temporal scope of this Interrogatory. Please provide all responsive information to this Interrogatory dating back to 2000. No other objections in this Interrogatory have merit. A full supplementation of this response including all policies, practices, procedures and directives regarding the use of such facilities must be made.

Supplemental Response No. 11: In response to Plaintiff's willingness to limit temporally this interrogatory, APC attempted to identify the hotels in Rhode Island with which it negotiated special rates and /or where it encouraged employees to stay from 2000 through 2004. In addition, APC

---

time covered by any answer referring to such person." Ex. 16.

already supplemented its response to this Interrogatory by producing the APC Travel Policy dated March 1, 2003 (Bates Nos. APC 543-567). As we discussed, APC has reviewed its computer records to determine whether there is a readily-available master record of all hotels in Rhode Island at which APC employees have stayed since 2000. No such record exists. APC does not intend otherwise to supplement its response to this Interrogatory at this time.

**Basis for Motion to Compel:** APC has not provided a full list of hotels in Rhode Island since 2000 which were used by APC employees. APC limited its response to only those hotels with which it had "negotiated special rates and/or where it encouraged employees to stay from 2000-2004." This information is reasonably calculated to lead to the discovery of admissible evidence and no credible objection can be made to this request. APC's refusal to provide the hotels at which APC employees stayed which, is the very evidence that would be damaging to APC. APC cannot refuse to provide the very evidence that would serve to assist to prove Daniels' case of discrimination and retaliation. Further, APC's refusal to provide information past 2004 is without merit. As stated previously, it is generally recognized that an individual who has been terminated is entitled to discovery beyond the date of his termination. *See, e.g.*, *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) (allowing discovery into the period two years after termination); *Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D. Pa. 1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Obiajulu v. City of Rochester,* 166 F.R.D. 293, 296 (W.D.N.Y.1996) (discovery allowed up until the time the case was heard).

Interrogatory No. 14. Identify each of the individuals from whom Plaintiff allegedly misdirected Marriott travel points while employed by APC and provide the home address of each such individual.

Response No. 14: Defendant objects to Interrogatory No. 14 on the grounds that it is vague, ambiguous, unduly burdensome, and seeks confidential information regarding current and/or former Company employees. Defendant further objects to Interrogatory No. 14 on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to

lead to the discovery of admissible evidence.

Exception: Defendant's objections are without merit. Defendant's complete failure to answer this interrogatory is in violation of the rules. Defendant must supplement this answer and provide a complete and responsive answer.

Supplemental Response No. 14: APC maintains its objections to this Interrogatory. As noted in other submissions related to this matter, Plaintiff personally profited from diverting APC employees from the Johnson and Wales Inn in Rhode Island to the Providence Marriott hotel. He devised a direct billing relationship with the Marriott, in direct violation of PAC's practices, whereby the Marriott sent the bills to him at his office at APC in East Providence. The Marriott allowed Plaintiff to accrue over 100,000 Marriott Rewards points for his personal account based upon the stays of other APC employees for APC training activities. On March 12, 2004, Christine Bollman received an electronic mail form the Marriott's Director of Sales and Marketing explaining that Plaintiff had rented a large number of rooms at the Marriott in January and February 2004 for APC events, and that he was awarded over 100,000 points to his personal Marriott Rewards account as a result. Further, the correspondence form the Marriott's Director of Sales and Marketing confirmed that, to the extent Plaintiff received rewards points for the stay of APC employees, the employees themselves were unable also to receive reward points for their stay at the Marriott.

**Basis for Motion to Compel:** APC alleges that Plaintiff misdirected travel points from individuals who stayed at the Marriott at his direction. Yet, APC refuses to identify the individuals who stayed at the Marriott at Daniels' direction. No credible objection has been made to this Interrogatory and the information relates to the very heart of the case.

Interrogatory No. 15. Identify each individual employee who either reported to APC that company equipment was lost or stolen, or whom APC learned that company equipment under the control of such employee, was lost or stolen, and identify the race of each such individual.

Response No. 15: Defendant objects to Interrogatory No. 15 on the grounds that that it is vague and ambiguous. Defendant further objects to Interrogatory No. 15 on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Interrogatory No. 15 contains no temporal limitation, it purports to request information regarding every employee who ever reported lost or stolen equipment to the Company since the date the Company was founded, and, therefore, it is overly broad, unduly burdensome and exceeds the permissible scope of discovery. Further, because Interrogatory No. 15 seeks information regarding all employees who ever have reported theft, or loss of equipment to Defendant, and does not attempt to limit the scope of discovery to those employees who might arguably be similarly situated to Plaintiff, it is overly broad, unduly burdensome and exceeds the permissible scope of discovery.

Exception: Plaintiff will agree to limit the temporal scope to all reports dating back to 1990. Defendant's remaining objections are without merit and Plaintiff requests that the Interrogatory be answered.

Supplemental Response No. 15: APC maintains its objections to Interrogatory No. 15. Plaintiff's attempt to provide a temporal limitation for its request in your September 29, 2006 letter is not sufficient to address these objections.

**Basis for Motion to Compel:** APC's basis for objecting to this request is that the temporal limitation is too broad. It further objects that Plaintiff has not limited its request to those individuals who are comparators. Plaintiff hereby limits its request to those reports of loss of theft from employees who worked under the supervision of John Bonzani, Paul Kavanaugh and over whom Brian Gough and Brian Kelly had human resources and financial responsibility from the years 1998 to the present. See also basis for motion to compel under Request for Production of Documents, No. 6.

Interrogatory No. 18. Describe all complaints made by APC employees regarding the Johnson & Wales Hotel.

Response No. 18: Defendant objects to Interrogatory No. 18 on the ground that it is so vague and ambiguous as to be unintelligible. To the extent Interrogatory No. 18 requests information regarding complaints made by Company employees that were unrelated to Plaintiff, Defendant objects to Interrogatory No. 18 on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

Exception: Defendant's objections are without merit. Plaintiff requests that APC fully respond to this Interrogatory.

Supplemental Response to No. 18: APC maintains its objections to this Interrogatory. Plaintiff failed to provide a temporal limitation on this request. Further, this Interrogatory is unclear regarding the nature of the complaint, the source(s) of the complaint, or to whom any such complaint might be directed (the hotel? to APC officials?). Finally, to the extent information regarding "complaints" is available, it is readily available to Plaintiff, and has been produced in this case.

**Basis for Motion to Compel:** Defendant's objections are without merit. The Interrogatory

is reasonably calculated to lead to the discovery of admissible evidence. APC's objections that it is vague is perplexing. To the extent that APC has knowledge of any complaints that were made regardless of whether they were made to the hotel or to APC officials such a request is discoverable. Further, such complaints are not readily available to Plaintiffs, and APC has an obligation to answer the interrogatory unless a proper objection exists. No proper objection has been made and APC must answer the interrogatory.

Finally, despite Plaintiffs' request for a privilege log, Defendant has failed to provide one.

## III. CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that his Motion to Compel be granted.

Dated: December 6, 2006

Respectfully submitted,

/s/ Noelle Clapham
Noelle K. Clapham (R.I. Bar #5338)
Law Office of Noelle Clapham
24 Salt Pond Road
Suite A-8
South Kingston, RI 02879
claphamlaw@verizon.net
(401) 783-3600

Lori B. Kisch (MD Fed Bar # 25781)
Wiggins, Childs, Quinn & Pantazis PLLC
7 Dupont Circle, NW, Suite 200
Washington, DC 20036
lkisch@wcqp.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Memorandum in Support of his Motion to Compel and exhibits will be served upon all counsel of record via the court's electronic filing system.

/s/ Noelle Clapham