LITTLER MENDELSON®
A PROFESSIONAL CORPORATION

ARIZONA
CALIFORNIA
COLORADO
DISTRICT OF COLUMBIA
FLORIDA
GEORGIA
ILLINOIS
MASSACHUSETTS
MINNESOTA
NEVADA
NEW JERSEY
NEW YORK
NORTH CAROLINA
OHIO
PENNSYLVANIA
TEXAS
WASHINGTON

June 24, 2005

Adam P. Forman
Direct: 617.378.6007
Direct Fax: 617.737.0052
aforman@littler.com

Edith Kessler, Investigator
Equal Employment Opportunity Commission
Boston Area Office
John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203

Re: ***Seth Daniels v. American Power Conversion Corp.***
***EEOC Charge No. 161-2005-00257***

Dear Ms. Kessler:

American Power Conversion Corporation ("APC" or "the Company") writes to respond to (i) Seth Daniels' reply to the Company's position statement and (ii) the Commission's specific request for more detailed information concerning certain non-minority employees who the Company terminated for theft or self-dealing. For the reasons set forth in detail below and in APC's March 7 and April 6, 2005 submissions, APC requests that the Commission issue a finding of no probable cause.

A. *Daniels' Reply Statement is Comprised of Bare and Unsubstantiated Allegations of Race Discrimination.*

Daniels' reply to APC's position statement simply does not show that APC discriminated against him because of his race. Significantly, Daniels fails to explain how APC, which interviewed and hired him into a managerial position at the Company in September 2002, suddenly developed an aversion to him because he is an African American just six months later when making the termination decision. The Company plainly knew he was African American at the time it hired him and, thus, was well aware of his membership in a protected category. It defies logic that within the space of six months APC would develop discriminatory animus.

Paul Kavanaugh interviewed Daniels and participated in the decision to hire him. Kavanaugh later terminated his employment at the Company. There is a powerful presumption of nondiscrimination where, as here, the same persons were involved in the decision to "hire and fire" the Charging Party within a brief period of time. See, e.g. Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 512 (1st Cir. 1997); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993); Tyndall v. Nat'l Education Centers, Inc., 31 F.3d 209, 215 (4th Cir. 1994).



Exhibit 3

Moreover, Daniels' reply is riddled with general and unsupported allegations of disparate treatment that are insufficient to establish his claim. Significantly, many of Daniels' allegations are directed toward Brian Kelly, who was not in Daniels' group and was not his supervisor.[1] For instance, Daniels makes much of Kelly's request for further information after Daniels claimed on his W-4 form to be completely exempt from federal taxes. This assertion ignores the obvious – Daniels' position that no taxes be withheld from his pay is (and was) unusual and is an aggressive tax strategy. Kelly is APC's Director of Finance. It is undisputed that one of Kelly's functions is to ensure that the Company properly withholds payroll taxes. It is also undisputed that APC faces financial and legal exposure if it does not properly withhold taxes. At the time Daniels was employed by the Company, the IRS required employers to send the IRS any Form W-4 claiming complete exemption from withholding if the Company expected the employee to earn $200 or more in weekly wages. Thus, it was both logical and prudent for Kelly to question Daniels' position that he should not have to pay taxes. The fact that Daniels was offended by Kelly's common sense requests, without more, is not evidence of racial animus or harassment.

In desperation, Daniels baldly asserts that Kelly did not make the same information requests of white employees who were attempting to avoid paying federal taxes. The EEOC should not condone such tactics by Daniels. The burden rests squarely with Daniels to demonstrate that Kelly treated similarly situated white employees differently. The law is clear: Daniels cannot rely upon mere speculation, innuendo or conjecture to pursue a charge of discrimination. He must produce credible evidence to support the charge, which he has completely failed to do. Daniels has offered absolutely no evidence whatsoever that there ever were similarly situated white employees or that such employees received more favorable treatment than he.

Similarly, Daniels contends that Kelly questioned Daniels' credentials, how he was hired and the specific terms of his employment with the Company, but did not similarly question white employees. The Company denies that Kelly questioned Daniels about these matters. Nonetheless, even were it true that Kelly questioned Daniels in this manner (and it is not), Daniels' own bare assertions are the sole support for this allegation. Daniels again fails to meet his burden of producing some credible evidence that Kelly was more critical of him than similarly situated white employees. Daniels never states in his reply to which white employees he compares himself or what foundation he has for alleging that Kelly never questioned any of these individuals about their credentials.

---

[1] As it stated in its March 7, 2005 position statement, APC generally denies Daniels' allegations of race discrimination and "racial harassment," or that Daniels complained to either Brian Gough or to John Bonzani about any such racially discriminatory or harassing behavior. APC also denies that anyone at the Company, including Bonzani, sanctioned Daniels' receipt of thousands of travel points based on the travel of other employees. Finally, APC denies that Bonzani has received travel points for the travel of other employees as a meeting organizer.

Equally important, Daniels has failed to produce even an iota of evidence that Kelly's alleged doubts about his credentials had any consequences. Kelly was not Daniels' supervisor and they were not in the same department. The question remains, therefore, how Kelly's alleged doubts about Daniels' credentials impacted the terms and conditions of Daniels' employment. This is a question to which Daniels must supply the answer, which he cannot do, as Kelly's doubts – assuming *arguendo* that they existed – were of no consequence to Daniels.

Finally, Daniels alleges that Kelly harassed him by questioning his judgment after Daniels' laptop was stolen from his rental car but did not question the judgment of "four white managers whose laptops had been stolen" during a business trip. The Company is unaware of the incident allegedly involving four white employees. It is no coincidence that Daniels is unable to supply any details with respect to this incident such as the names of the four white employees or any details about the alleged theft of their respective laptops, because he can offer nothing more than his own conjecture and self-serving assumptions that such an incident took place. These empty allegations, unanchored to any specific facts, simply cannot form the basis of a race discrimination claim.

On the other hand, APC has presented ample and detailed documentary evidence showing that it acted reasonably, and without discriminatory animus, when it terminated Daniels. The Company has provided the Commission with documents showing that Daniels was aware of the Company's travel policies, that he violated these policies, and that he received over 100,000 travel points for his own personal use based on the travel of other APC employees. Daniels has not presented credible evidence to the contrary. Based on the specific evidence presented by APC and the absence of any specific evidence presented by Daniels, the Commission should dismiss his charge.

B. *APC Has Terminated Other Non-Minority Employees for Similar Unethical Conduct.*

The Commission has requested more specific information about other employees that APC has terminated for engaging in what it perceived to be theft or self-dealing, which the Company described in its April 6 submission. As noted in the prior submission, in 2003, APC terminated the employment of two high level managers -- the Country General Manager for several countries in Latin America and the Regional General Manager for the Latin American region -- after the Company determined that they, both of whom are white males, had engaged in self-dealing as part of a "gray marketing" scheme. In late 2001, APC also terminated a number of white employees in the sales organization when it uncovered a scheme by which the employees were manipulating the phone system to inflate the number of calls they received or placed which, in turn, inflated their commission bonuses. The employees' commission bonuses were tied to the volume of calls they handled. More

particular information about these employees is contained in a chart, attached hereto as Exhibit A.

C. *Conclusion*

For the foregoing reasons and those stated in APC's prior submissions, the Company requests that the Commission issue a finding of lack of probable cause. Please feel free to contact me should you have any questions.

Very truly yours,

Adam P. Forman

Firmwide:80110167.1 049233.1002
6/20/05