**WIGGINS, CHILDS, QUINN & PANTAZIS, P.L.L.C.**
A PROFESSIONAL LIMITED LIABILITY COMPANY

7 DUPONT CIRCLE, N.W.
SUITE 200
WASHINGTON, DC 20036
TELEPHONE (202) 467-4123
FACSIMILE (202) 467-4489

November 21, 2006

**Via First Class U.S. Mail**
George Kostakos, Esq.
Littler Mendelson, P.C.
10 Weybosset Street, Suite 404
Providence, RI 02903

***Re: Seth Daniels v. American Power Conversion Corporation***

Dear Mr. Kostakos,

I am writing to follow up on our discussion of last week regarding the outstanding discovery issues in an effort to see if we can reach a resolution without the court's intervention. I have outlined our discussion below and those areas which you agreed to look into and those in which you represented that there are no responsive documents.

**Request No. 2**: You stated that there are no responsive documents.

**Request No. 3:** You are checking to see whether there are any additional documents. In particular, Christine Hendrix testified that APC policies were distributed via email. Hendrix Dep. at 254. Please produce any such emails that exist. Additionally, Brian Gough testified that there should be documents from the minutes of the Board of Directors after the Board voted to implement the ethics policy. Additionally, Mr. Gough testified that either he or his boss sent an email to employees informing them of the new ethics policy. Please produce both the Board minutes and any email communications regarding the ethics policy. Also, Christine Bollman testified that the travel policy was changed from a 50 page document to a 25 page document. Bollman Dep. at 34, 39-42. Please produce all documents related to any changes to the travel policy as well as any emails regarding the creation of and/or changes to the travel policy. Doug Radamacher testified that he printed out the travel policy. Radamacher Dep. at 16. Please produce any copies that APC still maintains.

You also agreed to review the Affirmative Action Plans, Adverse Impact Analysis Reports. and other documents related to the OFCCP audits and let me know whether or not APC would agree to produce such documents.

**Request No. 4:** You agreed to provide all complaints of race discrimination, harassment, and retaliation dating back to 1999 for those employees who worked under Paul Kavanuagh. See Christine Hendrix Dep. at 94-151 regarding complaints made by or regarding John Bonzani, Seth Daniels, Mike Cox, Brian Kelly, Ron Templeton, Rom Saleki. Please produce all documents relating to such complaints. Also, Doug Radamacher testified that both Kevin Brown and Kathleen Green complained of discrimination and/or harassment. Radamacher Dep. at 32-36. Please produce all documents related to such complaints. Unless APC changes its position, we will file a motion to compel with regard to all complaints of race discrimination, harassment, and retaliation by individuals over whom Brian Gough had HR responsibility. Again, we ask for all such complaints through the present. You stated that you would let me know whether or not you would produce complaints from the time Mr. Daniels was terminated to the present.

**Request No. 5:** You stated that all the personnel file documents related to Seth Daniels, including any employee relations file documents, have been produced. However, I am not sure whether we discussed the expense and reimbursement file(s) for Mr. Daniels, but please confirm whether it has been produced. With regard to your statement that no documents exist to support that Plaintiff was treated differently than other employees, we had discussed production of documents relating to Bonzani and Kavanaugh's expenses and reimbursements. Also, we had requested the documents related to those individuals who did not stay in preferred hotels. Specifically, we requested documents reflecting the expenses and reimbursements related to Christine Bollman's travel. We also requested the documents related to the hotel stays at the Marriot Hotel in Providence at which numerous sales employees stayed.

Please also produce the expense and reimbursement files for the tech working under Michael Cox who Kelly initially refused to reimburse for $8,000 of expenses, but eventually did provide such reimbursement. Please also produce all emails, notes, and documents regarding the complaints made about Kelly regarding the expenses for the tech under Mr. Cox, including Hendrix's documents relating and/or referring to her involvement and the resolution of the complaints, if any. See Hendrix Dep. at 151-154.

**Request No. 6.** With regard to Seth Daniels' files, we are still waiting to receive Mr. Daniels' annual review. With regard to the personnel files for employees identified in Interrogatory No 5, we await the complete files for those individuals involved in the grey marketing scheme. You stated that APC is unaware of any individuals responsive to Interrogatory Nos. 8 and 14. With regard to employees who lost equipment and/or had company equipment stolen, as requested in Interrogatory No. 15, the following are a list of such individuals as identified in the depositions:

1. See Christine Bollman Dep. at 197-201; Individual in Florida whose laptop was lost or stolen from a rental car;
2. See John Bonzani Dep. at 96-97- Anthony Corrideo (phonetic spelling)
3. See Bonzani Dep. at 96; Dominic (LNU); and

4. See Hendrix Dep. at 180; Tech employee who lost his luggage containing company equipment

**Request No. 7:** You agreed to provide all discipline related documents (including the employee relations files) for those individuals who report directly or indirectly to Paul Kavanaugh. You agreed that APC would review the employee relations files to determine if any of the files relate to such individuals, and if so, they would be produced. Additionally, the discipline documents should include all performance improvement plans or development plans as mentioned by Hendrix (Dep. 27-29) for employees reporting to Kavanaugh. All emails and documents relating and/or referring to the plans should also be produced. Plaintiff will move to compel the discipline files for those individuals over whom Brian Gough has Human Resource responsibility if APC continues to refuse to produce such documents. You agreed to determine whether the discipline RIF documents about which Brian Gough testified still exist.

We also expect that all notes and/or documents (including fact gathering reports) evidencing, describing and/or relating to APC's conisideration of discipline and/or termination of employees reporting to Paul Kavanaugh be produced. See Hendrix Dep. at 42, 67-69. We will move to compel for such documents to the extent there are additional documents for individuals over whom Brian Gough has Human Resources responsibility. Please also produce all manager's files which relate or and/or evidence consideration of discipline. See Hendrix Dep. at 79-80.

The following individuals were specifically identified by Christine Hendrix as having discipline and/or performance related issues. Each of their personnel files, employee relations files, managers' files, performance plans, emails, and notes, etc. should be produced to the extent that they exist.

1. Andy Cross (pp 75-78);
2. Cathy Green (pp. 82-85);
3. The white male field service employee who worked in Pennsylvania and who had alcohol problems (pp. 33-34);
4. The white male employee supervised by David McDaniel who worked in Florida and who was put on a performance plan (pp. 43-44);
5. The white male employee in the engineering department, under Brian Gough, with attendance and productivity problems (p. 47);
6. The manufacturing employee managed by J. Guimond who was investigated on suspicions of spending too much time on the internet (pp. 73-75);
7. Julie Kelly (pp. 196-97); and
8. Jim Biller (referenced on pages 139, 202 -203 of John Bonzani's deposition).

**Request No. 8:** You agreed to see if there are any documents maintained by APC regarding its direct billing at the Marriott Hotel and the Johnson & Whales Hotel. You also stated that you would check to see if Ms. Bollman or any other individual has monthly statements regarding hotel stays. We agreed to provide the deposition cites to

the transcripts from which the witnesses testified about the large sales meeting. Both Brian Kelly, Doug Radamacher, and John Bonzani all testified about a large sales meeting or conference that took place in Providence. Mr. Kelly and Mr. Radamacher testified that they be believed that APC employees stayed at the Marriot during that conference. See Kelly Dep. at 127; Radamacher Dep. at 50, and Bonzani Dep. at 61-64.

Also, please produce all documents relating to complaints made about the Johnson & Whales. Christine Hendrix testified that complaints were made by John Bonzani. See Hendrix Dep. at 224. To the extent that any emails related to such complaints exist, such emails should be produced.

**Request No. 9:** You agreed to check whether Mr. Bonzani's notes regarding his expectations of Daniels and the need for high speed internet access at hotels still exists. See Bonzani Dep. at 190, 214-15, 219-20.

**Request No. 10:** We agreed to limit the scope of No. 10 to the Marriott. You agreed to check to see if there were any lists or anyway to determine who attended the training sessions over which Mr. Daniels organized. We then requested that the expense and reimbursement files of those individuals who attended the training sessions be produced.

**Request No. 11:** You stated that no documents exist and that Defendant has not withheld any documents responsive to this request.

**Request Nos. 12 & 17:**

John Bonzani testified that Jim Biller stayed at a hotel in East Providence which was not on the APC preferred hotel list. Bonzani Dep. at 139, 202-203. Please produce his expense and reimbursement files.

You also stated that you were checking to see whether any documents were withheld as privileged.

If I have misstated what we have agreed to please let me know at your earliest convenience.

Very truly yours,

Lori B. Kisch

cc: Noelle Clapham, Esq.