***Document Electronically Filed***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SETH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION,<br><br>Defendant. | Civil Action No: 05-00459-ML-LDA |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant American Power Conversion Corporation ("APC" or the "Company") opposes the motion to compel of plaintiff Seth Daniels. In his motion, Daniels seeks to compel discovery of information that is entirely irrelevant to his claims of racial harassment, discrimination, and retaliation.

## I. BACKGROUND[1]

This case arises out of APC's decision to terminate Daniels' employment as Training Manager for the Company's Global Services Group. On March 12, 2004, Christine Bollman, APC's corporate travel manager, informed Brian Gough, then APC's Director of Human Resources, that Daniels had engaged in self-dealing to the detriment of APC. (SUF ¶ 93). Specifically, Bollman informed Gough that, contrary to Bollman's instructions, Daniels had booked almost 300 rooms at the Providence Marriott during a two-month period in January and February 2004, instead of at one of the other Providence-area hotels where Bollman had

[1] The facts of this case are set forth more fully in the memorandum in support of APC's motion for summary judgment and the related documents submitted in connection with such motion, including the Statement of Undisputed Facts ("SUF").

negotiated a preferred rate on the Company's behalf. (SUF ¶¶ 49-50, 63, 66-67). This arrangement resulted in APC paying approximately $8,000 in additional hotel costs during that period. Further, Daniels' actions potentially threatened APC's well-established relationship with the Johnson and Wales Hotel which (a) Bollman had directed Daniels to utilize, and (b) offered preferred rates to APC based in part on the yearly volume of rooms booked. In addition, since Daniels did not book these rooms at the Johnson and Wales Hotel, the Company did not receive any corresponding rewards points from the hotel, which it typically raffles off to employees at its annual holiday party. (SUF ¶¶ 67-74). Equally troubling was the fact that when Bollman previously had asked Daniels whether he was using the Providence Marriott, he denied doing so. (SUF ¶¶ 55, 75-77).

Bollman learned earlier in the day on March 12 why Daniels lied to her about his use of the Providence Marriott: Daniels himself *benefited* financially from his use of the hotel. Indeed, as part of his "arrangement" with the hotel, Daniels received over 100,000 valuable Marriott Rewards points for his personal account based upon the stays of other APC employees for APC training activities. (SUF ¶¶ 78-82). This self-dealing clearly violated the Company's Code of Ethics and Business Conduct. (SUF ¶¶ 83-86).

After learning about Daniels' self-dealing, Gough and Paul Kavanaugh, Daniels' ultimate supervisor,[2] concluded that Daniels' receipt of Marriott Rewards points constituted a form of kickback from the Providence Marriott, a *quid pro quo* in exchange for booking rooms there instead of at hotels (such as the Johnson and Wales Hotel) where APC had negotiated significantly lower rates. (SUF ¶¶ 83-84, 94-97). Because of this self-dealing, Gough and Kavanaugh terminated Daniels' employment that afternoon.

---

[2] Daniels' immediate supervisor was John Bonzani. Bonzani reported directly to Kavanaugh.

**A. Daniels Files An EEOC Charge And A Court Complaint**

Daniels subsequently filed a charge of discrimination with the EEOC and, ultimately, the Complaint that gave rise to this litigation. In his Complaint, Daniels alleges that he was harassed on account of his race by Brian Kelly, APC's Director of Finance, prior to his termination. Specifically, Daniels alleges that Kelly (i) "interrogated" him after he submitted an incorrect Form W-4, (ii) questioned his job qualifications, (iii) blamed him for the fact that Daniels' Company-issued laptop had been stolen from the backseat of Daniels' car, (iv) denied his requests to direct bill his rental cars, and (v) generally was rude to him. See Complaint ¶¶ 12-15. Daniels also alleges that he was terminated because of his race and/or in retaliation in for his complaints regarding Kelly. Accordingly, he asserts claims against APC under 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Rhode Island Civil Rights Act of 1990, R.I. Gen. Laws § 42-112-1 *et seq*.

**B. Daniels Engages In Wide-Ranging Discovery**

In the ensuing months, Daniels served, and APC responded to, 37 requests for production of documents and 25 interrogatories. He also took the depositions of six current or former APC employees, including Gough, Bollman, Bonzani, and Kelly.[3] In addition, he served four subpoenas duces tecum on third party witnesses, and took the depositions of three of those individuals (including the Controller of the Providence Marriott).

Not content with the results of this wide-ranging discovery, Daniels now seeks to compel additional responses to thirteen requests for production of documents and five interrogatories.

[3] APC maintains that Daniels' discovery requests clearly were overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding that belief, APC engaged in extensive discussions and written communications with Daniels in a sincere effort to narrow the scope of his requests. Moreover, APC made reasonable efforts to respond to plaintiff's discovery requests notwithstanding the often broad and vague nature of the requests.

## II. STANDARD OF REVIEW

Although the scope of discovery under the Federal Rules is broad, it is not limitless. Thus, parties have an obligation to tailor discovery requests "to suit the particular exigencies of the litigation. They ought not to use broadswords where scalpels will suffice, nor to undertake wholly exploratory discovery operations in the vague hope that something helpful will turn up." Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 187 (1st Cir. 1989) (affirming denial of plaintiff's motion to compel discovery in a Title VII case).

Accordingly, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." Caouette v. Officemax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005); Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995) ("without a showing of . . . relevance, Plaintiff is not entitled to discovery"); see also, e.g., Gheesling v. Chater, 162 F.R.D. 649, 650 (D. Kan. 1995) ("If the plaintiff has failed to specify how the information is relevant, and the court cannot determine how the information sought is relevant, a court will not require the defendant to produce the information."). Because Daniels cannot satisfy this burden, his motion to compel should be denied.[4]

## III. ARGUMENT

A fair reading of Daniels' motion to compel suggests that the information he seeks falls within two broad categories, namely, information regarding: (1) other employees (including, among other things, complaints made by or about other employees); and (2) hotels with which

---

[4] Daniels cites FDIC v. Ogden Corp., 202 F.3d 454 (1st Cir. 2000), for the proposition that "APC bears the burden to demonstrate why it should not have to produce the requested discovery." See Memorandum of Law in Support of Plaintiff's Motion to Compel ("Pl.'s Memo.") at 4. Ogden does not support that proposition. To the contrary, Ogden stands for a very different proposition, namely that "[i]n a discovery dispute, the burden to establish an applicable ***privilege*** rests with the party resisting discovery." 202 F.3d at 460 (emphasis added). In addition, another case cited by Daniels, Gagne v. Reddy, 104 F.R.D. 454 (D. Mass. 1984), also supports the proposition that he bears the burden of establishing relevance. Id. at 456 ("For the Court to allow the defendants' motion [to compel], it must be shown that the information sought is relevant to the subject matter involved in the pending action."). As discussed herein, the discoverability of the overwhelming majority of the information sought by Daniels turns on the question of relevance, not privilege, and, therefore, ***he*** bears the burden of establishing why the Court should grant his motion to compel.

APC has done business. It is clear, however, that Daniels has not and cannot demonstrate that any of the information he seeks is relevant to this case and, therefore, discoverable. Therefore, his motion should be denied.

**A. Daniels Cannot Satisfy His Burden Of Establishing That The Information Regarding Other Employees He Seeks To Compel Is Relevant To This Case**

To the extent Daniels seeks to compare APC's treatment of him to its treatment of other employees, any such comparison must be to an employee who was similarly situated to him in all relevant respects. See, e.g., Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) ("for us to compare [plaintiff's] treatment with that of" other employees "in a meaningful way, [plaintiff] would have to show that she was similarly situated to those [employees] in terms of performance, qualifications and conduct without such differentiating or mitigating circumstances that would distinguish" their situations) (internal quotation marks omitted); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) (holding that a plaintiff must compare herself to "persons situated similarly in all relevant aspects").

Employees are not similarly situated if they held different positions, or were disciplined for different offenses or by different supervisors. See, e.g., Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002) (holding that plaintiff was not similarly situated to other employees where she, unlike her would-be comparators, "benefited financially" from her misconduct and displayed a "lack of candor" when questioned about it); Cruse v. G&J USA Publishing, 96 F. Supp. 2d 320, 330 (S.D.N.Y. 2000) ("Most importantly, for other employees to be similarly situated, they must have reported to the same supervisor as plaintiff."); Williams v. Frank, 757 F. Supp. 112, 119 (D. Mass. 1991) ("First and foremost, two employees are not similarly situated when the offense each is accused of is not the same.").

Thus, it is "well settled that discovery in Title VII cases involving highly individualized

claims of discriminatory treatment should be restricted to the practices at issue in the case, applied to employees in similar circumstances." Whittingham, 164 F.R.D. at 127. Because Daniels seeks to compel production of documents and information regarding other employees who plainly are not similarly situated to him in all relevant respects, his motion should be denied. See, e.g., id.

**1. Request No. 4 seeks irrelevant documents concerning alleged complaints made by employees under dissimilar circumstances.**

Request No. 4 seeks "[a]ll documents relating to any complaints of race discrimination and/or harassment and/or retaliation at [APC's] Providence Rhode Island office, including, but not limited to, all internal complaints, documents, or memoranda, EEO complaints, EEOC Charges, and investigative files and lawsuits alleging race discrimination and/or [sic] against [APC] from 1995 to the present." After making appropriate objections, APC informed Daniels that it would produce any documents related to complaints of race-based discrimination, harassment or retaliation that (a) involved the same individuals who supervised Daniels and participated in the decision to terminate his employment, and (b) were raised by employees similarly situated to Daniels on or after January 1, 1999 through the end of Daniels' employment with APC. See Pl.'s Memo, Exh. 6 at 2-3, Exh. 21 at 2. APC subsequently informed Daniels that it had no documents regarding any complaints of race-based discrimination, harassment, or retaliation regarding Bonzani, Kavanaugh, or Kelly.[5] See id., Exh. 6 at 3.

Daniels now asks the Court to compel APC to search for, and produce, documents concerning complaints made against employees who neither supervised Daniels nor participated in the decision to terminate his employment, as well as complaints of sexual harassment. In

[5] Request No. 4 seeks only complaints regarding APC's Providence facility. Nonetheless, in the spirit of discovery, APC agreed to produce information regarding Bonzani, who traveled frequently and often worked from his home in Oregon, and Kelly, who worked at APC's headquarters in West Kingston.

support of this position, Daniels cites to over 175 pages of irrelevant deposition testimony regarding (a) a host of garden variety workplace grips unconnected to race (e.g., Hendrix Dep. at 100-03 (Kostakos Aff., Exh. E) ("he was difficult to get along with in meetings")),[6] and (b) a handful of complaints of discrimination unrelated to the decisionmakers at issue in this case (e.g., Rademacher Dep. at 32-33, 36 (Pl.'s Memo, Exh. 11) (testifying regarding complaints of alleged sex and sexual orientation discrimination)).[7] Daniels' motion should be denied for at least two reasons.

First, "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990); see Stratus Computer, Inc., 40 F.3d at 18. As a result, Daniels cannot show that complaints against individuals other than Kavanaugh, Gough, or Kelly[8] are relevant to this case and, therefore, any such complaints fall outside the scope of permissible discovery. See Medina-Munoz, 896 F.2d at 10; see also, e.g., Griffiths v. Cigna Corp., 1992 WL 13016, at *2 (E.D. Pa. Jan. 23, 1992) (Van Artsdalen, J.) ("As plaintiff alleges that his managers made discriminatory remarks, prior claims against them would be relevant to [his] claims. Prior claims against other CIGNA employees would not be. This discovery, then, will be allowed only in respect to any [of] those individuals who [were] managers or supervisors of plaintiff"); Prouty v. Nat'l Railroad Passenger Corp., 99 F.R.D. 545,

---

[6] The relevant portions of the deposition transcripts cited herein are either attached to Daniels' memorandum of law in support of his motion to compel or the Affidavit of George P. Kostakos ("Kostakos Aff.") submitted contemporaneously herewith.

[7] The only complaint of race discrimination referred to by Daniels involves Junior Thomas, who claimed that, when APC offered him a promotion into a technical support engineer position in 1999, the Company gave him a lower rate of pay than his white peers. (Gough Dep. at 70-71 (Pl.'s Memo, Exh. 9)). Daniels also cites a complaint made by an employee named Olson, who claimed that APC terminated him from his position as a product manager at the Company's West Kingston facility because he is of Danish national origin. (Gough Dep. at 76-78 (Pl.'s Memo, Exh. 9)). Daniels plainly is not similarly situated to these individuals in all relevant respects.

[8] Although Daniels alleges that Kelly harassed him, Kelly was not involved in the decision to terminate Daniels' employment. (SUF ¶ 97).

549 (D.D.C. 1983) (denying motion to compel production of information regarding other discrimination lawsuits because "issues raised in other lawsuits are not relevant to this case"); see generally Earley v. Champion Int'l Corp., 907 F.2d 1077, 1084-1085 (11th Cir. 1990) ("Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit . . . A vague possibility that loose and sweeping discovery might turn up something suggesting [discrimination] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry.").

Second, documents regarding complaints of sexual harassment, or other forms of discrimination unrelated to race, plainly are irrelevant to Daniels' claims of race-based harassment, discrimination, and retaliation. See Whittingham, 164 F.R.D. at 127 (holding that discovery in employment discrimination cases "should be restricted to the practices at issue in the case"); Gheesling, 162 F.R.D. at 651 (where plaintiff alleged age discrimination, the court granted plaintiff's motion to compel discovery regarding other age discrimination complaints, but denied motion regarding complaints of other forms of discrimination because "any other EEO complaints have no conceivable relevance to an age discrimination case"); Prouty, 99 F.R.D. at 546 ("Because plaintiff only alleges sex discrimination, he is not entitled to any information pertaining to race.").

Daniels seeks to make an end-run around this common-sense principle by asserting that documents concerning complaints of sexual harassment or non-racial discrimination are relevant because they may show that APC investigated and/or responded to such complaints differently than to his alleged complaints of race discrimination. Daniels' bald assertion that such information might potentially be relevant to this case is not sufficient to open the door to the wide-ranging discovery contemplated by Request No. 4: to obtain discovery Daniels still must

demonstrate that the employees who allegedly complained are similarly-situated to him in all material respects. See, e.g., Whittingham, 164 F.R.D. at 127; see also Gavenda v. Orleans County, 182 F.R.D. 17, 29 (W.D.N.Y. 1997) (holding that mere "bald assertion[s]" of disparate treatment do not "entitle a plaintiff to disclosure of confidential personnel information"). Daniels wholly failed to establish that any of the targets of his motion to compel are similarly situated to him, despite having had the opportunity to depose Gough and others[9] regarding these issues. Therefore, his motion should be denied.

Daniels argues that it is unfair to require him to satisfy his burden of establishing relevance because doing so requires that he "prove his case before even receiving the evidence." See Pl.'s Memo. at 8. That is not so. Daniels had months to conduct discovery. During that time he took nine depositions (and received responses to over 60 interrogatories and document requests). Thus, he had a full and fair opportunity to identify, and question under oath, various witnesses to obtain a factual foundation linking his own allegations to the other alleged complaints of discrimination he now seeks to compel in response to Request No. 4. He failed to do so; and his conclusory assertions of relevance are not an adequate remedy for such failure. See Whittingham, 164 F.R.D. at 127 (denying motion to compel where plaintiff "offers only the conclusory assertion that the files are relevant"); Gagne, 104 F.R.D. at 456 n.4 ("a general allegation of relevancy is not sufficient to overcome specific objections by an adverse party") (internal punctuation and citation omitted). Indeed, Daniels' inability, despite months of discovery, to demonstrate the connection between the additional documents he seeks to compel and his own allegations is perhaps the strongest evidence that such documents are wholly

[9] Notably, Daniels took the deposition of Christine Hendrix, a former APC employee who had worked in the Company's human resources department. Hendrix testified regarding numerous employee relations issues.

irrelevant to this case. For all the reasons discussed above, the Court should deny Daniels' motion to compel with regard to Request No. 4.

**2. Request No. 5 cannot reasonably be interpreted in the manner suggested by Daniels and, in any event, seeks irrelevant documents.**

In Request No. 5, Daniels seeks "[a]ny and all documents relating to Plaintiff's employment by Defendant and/or his termination by Defendant." Notwithstanding the fact that this request seeks information concerning Daniels only, he now asserts that the following documents are responsive to this request and must be produced: (1) documents related to requests for expense reimbursement made by Kavanaugh and Bonzani; (2) documents indicating whether Kavanaugh or Bonzani ever received reward points for business-related travel; (3) "documents which reflect that APC employees did not always stay in APC preferred hotels;" and (4) documents concerning expense reimbursement requests made by an unnamed employee who worked under Michael Cox. See Pl.'s Memo at 11-13. This interpretation is outlandish.

Request No. 5 plainly seeks information regarding Daniels only.[10] There is absolutely no basis for construing the phrase "relating to Plaintiff's employment by Defendant and/or his termination by Defendant" as including the various documents regarding Bonzani, Kavanaugh, and others that Daniels now seeks to compel. Moreover, Daniels offers no evidence – nor can he – suggesting that Gough or Kavanaugh reviewed or considered any of the requested documents when they made the decision to terminate his employment. See Gough Dep. at 173 (Kostakos Aff., Exh. D) (all of the information Gough received relative to the termination decision came from Bollman). Because the documents sought in Daniels' motion to compel fall far outside the

[10] Accordingly, after objecting to Request No. 5 on various grounds, including vagueness, APC produced documents relating directly to Daniels, including: (1) his personnel file; (2) documents and emails related to Daniels' expense reimbursement requests; (3) emails and other documents related to Daniels' use of the Providence Marriott; and (4) emails and other documents related to APC's decision to terminate his employment.

scope of Request No. 5, the Court should deny his request for same.[11]

**3. Request No. 6 seeks documents that do not exist, as well as personnel files that are wholly irrelevant to this case, the production of which would infringe on the privacy interests of others.**

With regard to Request No. 6, Daniels seeks to compel the complete personnel files for: (1) two overseas executives who were terminated as part of an investigation into a suspected "grey marketing" scheme; (2) nine sales employees who were terminated for artificially inflating the volume of their telephone calls; (3) each and every APC employee who obtained travel points for organizing the use of a hotel or airline by other APC employees and who was not disciplined for such behavior; and (4) each and every APC employee who ever reported the loss or theft of any type of APC-issued equipment.[12]

"[P]ersonnel files contain perhaps the most private information about an employee within the possession of an employer." Whittingham, 164 F.R.D. at 127. Therefore, to be entitled to the personnel files of other employees, Daniels must make a particularized showing that such employees are similarly situated to him. Id. (denying motion to compel discovery of other employees' personnel files absent a particularized showing that such employees were similarly situated to plaintiff); see Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir 1994) (privacy interests were proper basis upon which to prevent counsel from "root[ing] through the personnel files").[13] Because he cannot do so, his motion should be denied.

---

[11] Even if the Court were to construe Request No. 5 as broadly as Daniels suggests, he fails to show how the documents he seeks to compel are relevant to this case. Additionally, Daniels' contention that these documents will help him to establish pretext is wholly unfounded. APC terminated plaintiff for self-dealing related to the Providence Marriott points scheme and for attempting to conceal his actions, and not for his use of the non-preferred hotels.

[12] Daniels also seeks to compel production of a document that does not even exist, namely, a draft evaluation of Daniels' performance purportedly begun by Bonzani prior to Daniels' termination. Daniels only was employed by APC for approximately six months and, as a result, never received an annual performance review. After reviewing its records, APC was unable to locate an evaluation of Daniels' performance drafted by Bonzani (who no longer works for APC) or anyone else.

[13] The privacy concerns underlying courts' refusal to require disclosure of personnel files are not mitigated by the existence of a confidentiality stipulation. See, e.g., Raddatz v. Standard Register Co., 177 F.R.D. 446, 227-48 (D.

**a. The individuals terminated in connection with the "grey marketing" and "telephone manipulation" schemes were not similarly-situated to Daniels and, in any event, APC already produced any arguably discoverable information regarding their terminations.**

Daniels asserts that he is entitled to the entire personnel files for (a) the two "high-level executives who were involved in a 'grey marketing scheme,'" and (b) the nine sales employees whom APC terminated for manipulating the Company's telephone system to inflate artificially the number of calls they placed and received. See Pl.'s Memo. at 15. These individuals are not similarly situated to Daniels.

First, the two individuals terminated in 2003 in connection with APC's grey marketing investigation were, unlike Daniels, (a) high-level executives, (b) based overseas, and (c) terminated for their involvement in a scheme whereby one of APC's distributors was allowed to purchase huge quantities of APC's products at a price reserved for sales to a particular Latin American country and then resell such products at a higher price. These two executives did not directly report to Bonzani, Kavanaugh, Gough, or Kelly.

Second, the nine individuals terminated in 2001 in connection with the telephone manipulation scheme were, unlike Daniels, (a) sales employees, and (b) terminated for manipulating the Company's telephone system so as to make it appear as though they were making more sales calls than was actually the case, thereby artificially inflating their performance rankings vis-à-vis their peers. None of these employees directly reported to Bonzani, Kavanaugh, Gough, or Kelly.

Thus, these individuals plainly are not similarly-situated to Daniels in all material respects and, as a result, he cannot demonstrate that their personnel files are relevant to this case

---

Minn. 1997) ("the very act of disclosing an employee's sensitive and personal data is a highly, and frequently an unnecessarily intrusive act – whether or not that disclosure is governed by the terms of a confidentiality order").

and therefore discoverable. See Whittingham, 164 F.R.D. at 127. Cf., e.g., Griffiths, 1992 WL 13016, at *2 ("plaintiff will not be entitled to a 'fishing expedition' through [his supervisor's] personnel files . . . where he has not narrowed his request to any particular type of information which he seeks from the personnel file, nor has he provided any basis in fact for believing that any particular piece of relevant information will be there."). The mere fact that APC mentioned these terminations in its supplemental position statement to the EEOC does not change this conclusion, particularly in light of the fact that the Company did not rely on its handling of these incidents in support of its motion for summary judgment.[14]

Even assuming, *arguendo*, that information regarding the termination of these individuals is relevant to this case, there still is no basis for the production of their entire personnel files. See Gavenda, 182 F.R.D. at 29 ("the bald assertion of a disparate treatment claim does not by itself entitle a plaintiff to disclosure of confidential personnel information regarding all employees, similarly situated or not"). APC respectfully submits that, in the spirit of discovery and compromise, it already produced the relevant portions of their personnel files, including: (1) termination notices (which clearly state the reasons for termination) and supporting documentation for each employee terminated by APC in connection with the telephone manipulation scheme; and (2) documents concerning the terms under which the executives implicated in the "grey marketing" scheme left APC.[15] Further, Daniels had the opportunity to question Gough at length regarding the grey marketing scheme. See Gough Dep. at 129-44 (Kostakos Aff., Exh. D). In light of these disclosures, and given the privacy interests implicated

[14] To be sure, if APC ultimately decides to raise these issues as part of its defense at trial, the Company will amend its initial disclosures appropriately and provide additional documents and information to Daniels, such that he has adequate time to prepare a response to, and, if necessary, request additional discovery regarding, same. At this point, however, there is absolutely no basis for expanding the scope of discovery to include these irrelevant matters.

[15] If the Court believes that review of these confidential documents will assist it in resolving Daniels' motion, APC can make such documents available for *in camera* review.

in the disclosure of any personnel file, Daniels has not articulated any legitimate basis for the production of these employees' entire personnel files. See Fed. R. Civ. P. 26(b)(2)(i) (providing that courts may limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"). Therefore, his motion should be denied.

**b. The personnel files of employees who would have received Marriott Rewards points but for Daniels' kickback scheme are not relevant and, even if they were, would not contain the information Daniels hopes to obtain.**

Next, Daniels seeks the personnel files for "each of the individuals from whom Plaintiff allegedly misdirected Marriott travel points while employed by APC." Daniels makes no attempt to justify this demand. See Haselhorst v. Wal-Mart Stores, Inc., 163 F.R.D. 10, 11 (D. Kan. 1995) ("The mere fact that a person may be a witness in a case does not automatically warrant access to their personnel file."). Given his previous assertions, however, APC presumes that Daniels is attempting to obtain evidence that the employees who stayed at the Providence Marriott at his direction did, in fact, receive Marriott Rewards points for their stays there.

This is a non-issue. APC repeatedly told Daniels during the course of discovery that it would have terminated his employment *even if* no employees had lost Marriott Rewards points as a result of his scheme. Indeed, Gough testified as follows:

> Q: Did you inquire whether or not any individuals also received reward points for their stay at the Marriott?
>
> A: No, I did not at that time.
>
> Q: Okay. And is that an important fact to know?
>
> A: The fact that they received Marriott point rewards for the stay? No, I do not see that as relevant.

Gough Dep. at 187-88 (Kostakos Aff., Exh. D).

Even if this issue were relevant, it is highly unlikely that any personnel file would contain information concerning whether an employee received Marriott Rewards points for his or her stay at the Providence Marriott, particularly given that Daniels arranged to have the cost of these rooms billed directly to APC. Accordingly, Daniels has no legitimate basis for moving to compel the production of these files, particularly in light of the privacy issues discussed above. See, e.g., Whittingham, 164 F.R.D. at 127.

**c. There is absolutely no basis for requiring APC to produce the personnel files of all employees whose Company-issued equipment was lost or stolen.**

Lastly, Daniels boldly seeks to compel APC to (a) identify "each individual employee who either reported to APC that company equipment was lost or stolen, or whom APC learned that company equipment under the control of such employee, was lost or stolen," and (b) produce the personnel file of each of these employees. Daniels makes no attempt to limit this request to situations involving Kelly (Daniels alleges that Kelly "harassed" him after Daniels' Company-provided laptop was stolen from the backseat of Daniels' car, see Complaint ¶ 13) or even to those files that actually contain documents concerning the loss or theft of Company equipment.[16] Further, this request contains neither a temporal limitation, nor a monetary threshold. As a result, this request clearly seeks information that is wholly irrelevant to this case.

The response of employees other than Kelly to reports of theft or loss is wholly irrelevant to Daniels' allegation that Kelly responded to his report of a stolen laptop differently because of his race. See Medina-Munoz, 896 F.2d at 10 ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."). Further, even assuming that Kelly was involved in responding to reports of stolen

[16] The smattering of theft-related incidents referenced by Daniels in his brief do not appear to have involved Kelly (who no longer works for APC) in any way.

equipment made by other employees, Daniels makes not attempt to limit his request to the files (a) of similarly-situated employees, or (b) that actually contain documents related to the reported theft or loss. See, e.g., Archer Daniels Midland Co. v. Aon Risk Services, Inc., 187 F.R.D. 578, 589 (D. Minn. 1999) ("[D]espite the liberality of discovery, we will be reluctant to allow any party to roam in the shadow zones of relevancy and to explore matter which does not presently appear to be germane on the theory that it might conceivably become so.") (internal citations and punctuation omitted).

In addition, this request clearly is unduly burdensome. On its face, this request requires that APC canvass its records for all employees internationally, going back to the Company's founding, to determine whether *any* employee *ever* lost *any* Company-issued equipment or had such equipment stolen. Because APC does not maintain centralized records regarding each and every report of lost or stolen equipment, to comply with this request it would have to interview supervisors at every level, throughout the Company, to identify each and every report of loss or theft. For all these reasons, the Court should deny Daniels' motion with regard to Request No. 6.

**4. Request No. 7 seeks irrelevant documents concerning discipline imposed under dissimilar circumstances.**

With regard to Request No. 7, Daniels "respectfully asserts that he is entitled to all discipline[-]related documents for all individuals who worked under Bonzani, Kavanaugh and/or over whom Brian Gough had [h]uman [r]esources responsibility" from 1995 to the present. See Pl.'s Memo. at 16-17. Daniels does not attempt to limit his demand to documents regarding the discipline of employees who were similarly situated to himself, or even to employees who reported directly to Bonzani, Kavanaugh, or Gough (as opposed to lower-level managers who, in turn, reported up to them).

Indeed, the few examples provided by Daniels (many of which concern employees who

did not report to Bonzani, Kavanaugh, or Gough) demonstrate that he seeks to discover information regarding discipline imposed under dissimilar circumstances. See id. (identifying employees who (a) "worked in Pennsylvania and who had alcohol problems," (b) worked in the engineering department and had "attendance and productivity problems," and (c) were "investigated on suspicions of spending too much time on the internet").

While again reflecting Daniels' efforts to engage in a fishing expedition, these examples also demonstrate Daniels' willingness to distort the record. For example, although Daniels identifies Jim Biller as an employee with disciplinary issues, a review of the deposition excerpts cited by Daniels establishes only that Biller stayed at a hotel that was not on APC's list of preferred hotels. See Pl.'s Memo. at 17; Bonzani Dep. at 139, 202-03 (Pl.'s Memo, Exh. 13). Further, Bonzani testified that Biller had been authorized to do so; and there is no indication in the record that Biller was subject to disciplinary action. See Bonzani Dep. at 203 (Pl.'s Memo, Exh. 13).

In addition, Daniels identifies an employee "in the engineering department, under Brian Gough" who had attendance and productivity problems. See Pl.'s Memo. at 17. The deposition testimony cited by Daniels does not establish that this employee reported to Gough, rather he was *investigated by someone who reported to* Gough:

> Q: Do you recall who the supervisor was?
>
> A: I don't.
>
> Q: Who was the HR generalist handling that one; do you recall?
>
> A: No. I don't recall exactly who it was.
>
> Q: It was someone who worked under Brian Gough?
>
> A: Yes.

Hendrix Dep. at 47-48 (Kostakos Aff., Exh. E).

Daniels' filing of a discrimination claim does not give him license to troll through the Company's disciplinary records. Because he has not established that any of the documents he seeks are relevant to this case, his motion should be denied with regard to Request No. 7. See, e.g., Archer Daniels Midland Co., 187 F.R.D. at 589.

**5. Requests Nos. 13 and 14 seek the production of irrelevant documents that either are protected from discovery by privilege or which are duplicative of information previously provided.**

Requests Nos. 13 and 14 seek "all documents related to the termination of" the employees whom APC terminated as part of the "grey marketing" and the telephone manipulation schemes, respectively. As discussed above with regard to Request No. 6, these individuals are not similarly situated to Daniels in all relevant respects and, in any event, (a) the Company already produced documents concerning their terminations, and (b) Daniels questioned Gough at length regarding the grey marketing scheme. See Fed. R. Civ. P. 26(b)(2)(i) (providing that courts may limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"). Thus, Daniels' motion should be denied with regard to Requests Nos. 13 and 14.

To the extent Daniels seeks to compel production of the investigative file maintained by attorney Jeffrey Giguere, APC's in-house counsel, regarding the grey marketing scheme, the contents of such file are protected from disclosure by the attorney-client and/or attorney work product privileges. APC produced an appropriate privilege log to Daniels earlier this month. See Kostakos Aff., Exh. A. As set forth therein, the investigative file contains various documents drafted by, or at the direction of, attorney Giguere, as well as his notes and impressions regarding various issues. Therefore, to the extent Daniels seeks to compel the disclosure of the investigative file, his motion should be denied.

**6. Request No. 15 seeks irrelevant documents concerning violations of APC policies by employees under dissimilar circumstances.**

Request No. 15 seeks "all documents which reflect violations of APC policies, practices and/or procedures by any APC employee since 1997 where such employees were not terminated by APC for the stated violations." In his motion, Daniels limits this request to documents (a) contained in two file drawers maintained by Gough, (b) concerning employees who worked under Kavanaugh or Bonzani, and (c) over whom Brian Gough had human resources responsibility. See Pl.'s Mot. at 21-22. Even with such limitations, this request is overbroad because Daniels plainly seeks documents concerning employees who were disciplined for offenses that are not even remotely similar to his kickback scheme. Therefore, he cannot establish that such documents are relevant. Accordingly, the Court should deny his motion with respect to Request No. 15.

**7. Request No. 18 seeks documents concerning requests for reimbursement made by Laurie Gaspar that are wholly irrelevant to this case and unduly burdensome to produce.**

Request No. 18 seeks "all documents related to requests for reimbursements submitted by Laurie Gaspar and APC issued checks for such reimbursements for events hosted at her house." Daniels appears to be suggesting that Gaspar requested reimbursement from APC for personal events she hosted at her house. APC is unaware of any such instances. In any event, even if Daniels' assertion is true, and Gaspar was not disciplined for her actions, her situation is not comparable, or remotely relevant, to the circumstances surrounding Daniels' termination. Thus, her expense reimbursement files are not the proper subject of a motion to compel.

Relevance aside, in its response, APC informed Daniels that these documents would be unduly burdensome to produce:

> The Company has reviewed the portion of Ms. Gaspar's expense reimbursement records that are electronically available (those

> dating from January 1, 2005 onward): none of those records specifically reference events that were hosted at Ms. Gaspar's house. The remaining expense reimbursement records are voluminous, available only in paper, as opposed to electronic, form and are stored offsite. These records are not indexed. Further, the expense reimbursement forms submitted by Ms. Gaspar did not require that she specifically indicate whether the events for which she sought reimbursement were hosted at her home. Thus, unless Ms. Gaspar specifically documented the fact that she was seeking reimbursement for an event hosted at her house, it would be impossible for the Company to determine which records, if any, related to such events. In light of the foregoing, it would be unduly burdensome for Defendant to obtain the requested records from its offsite storage location and review each and every expense reimbursement form ever submitted by Ms. Gaspar during the course of her employment with the Company to determine whether any of those requests related to events held at her house. The time and expense associated with such an undertaking far exceeds the permissible scope of discovery, particularly in light of the fact that the requested documents are entirely irrelevant to the claims asserted by Mr. Daniels.

Pl.'s Memo., Exh. 22, at 6-7.

For all these reasons, Daniels' motion should be denied with respect to Request No. 18.

**8. Interrogatory No. 5 seeks information that APC already has provided to Daniels, is wholly irrelevant to this case, and is unduly burdensome to produce.**

Daniels next moves to compel additional responses to Interrogatory No. 5. He begins his argument by asserting that APC waived its objections to Interrogatory No. 5, and his other interrogatories, because the Company did not serve its responses in a timely fashion. This argument is both disingenuous and unavailing.

At or shortly after the agreed-upon due date, APC informed Daniels that it was having difficulty obtaining the original signature of Gough, who was out of town on business. See Kostakos Aff. ¶ 8. Accordingly, the Company informed Daniels that its responses would be produced shortly. See id. Daniels' primary concern appeared to be that he receive the Company's interrogatory responses prior to his deposition. See id. ¶¶ 8-9, Exh. F. At the time,

he neither objected to this brief delay, nor threatened to use this minor delay (which in no way prejudiced him) against the Company. See id. ¶¶ 9-12, Exh. F. Daniels' decision to raise this issue now is particularly galling in light of the fact that APC (a) granted him an extension of time to respond to the Company's discovery requests, and (b) readily waived its own argument that Daniels was late in responding to the Company's other discovery requests when he represented to APC that he had not received them. See id. ¶¶ 12-13; Pl.'s Memo., Exh. 20 at 1. Accordingly, APC's objections were timely and not waived. In any event, Daniels' motion should be denied with regard to Interrogatory No. 5 for at least two reasons.

First, Interrogatory No. 5 is patently overbroad: it seeks information regarding "each person who has been terminated from employment by APC" at any time, in any location, for any reason. This unfocused, far-reaching request flies squarely in the face of the First Circuit's rule that parties "ought not to use broadswords where scalpels will suffice, nor to undertake wholly exploratory discovery operations in the vague hope that something helpful will turn up." Mack, 871 F.2d at 187. Moreover, it would be unduly burdensome for the Company to comb its files to locate information responsive to this expansive request.

Second, to the extent Interrogatory No. 5 seeks the identity of the employees whom APC terminated in connection with the grey marketing and phone manipulation schemes, APC already provided this information to Daniels. Specifically, the documents previously produced by APC contain the names of all of these individuals. Thus, there is no basis for Daniels' motion to compel the disclosure of additional information in response to this interrogatory. See Fed. R. Civ. P. 26(b)(2)(i).

**9. Interrogatory No. 14 seeks information that is wholly irrelevant to this case.**

Interrogatory No. 14 seeks the identity of the APC employees "from whom Daniels allegedly misdirected Marriott travel points while employed by APC." As discussed above with regard to Request No. 6, this information is completely irrelevant to this case: APC terminated Daniels for self-dealing (and attempting to cover it up), not because he prevented other employees from receiving Marriott Rewards points. In any event, the invoices produced by the Providence Marriott in response to Daniels' subpoena duces tecum contain the names of some, if not all, of the employees who stayed at the Providence Marriott at Daniels' direction. Thus, there is no basis for Daniels' motion to compel the disclosure of additional information in response to this interrogatory. See Fed. R. Civ. P. 26(b)(2)(i).

**10. Interrogatory No. 15 seeks information that is wholly irrelevant to this case and unduly burdensome to produce.**

As limited by Daniels, Interrogatory No. 15 seeks the identity of all employees who (a) "worked under the supervision" of Bonzani or Kavanaugh, (b) over whom Gough and Kelly had "human resources and financial responsibility," respectively, and (c) reported the loss or theft of any APC-provided equipment at any point from 1998 to the present. As discussed above with regard to Request No. 6, this information is not relevant to this case. In addition to the grounds set forth above, APC reiterates that Bonzani, Kavanaugh, and Kelly no longer work for the Company and the Company does not maintain centralized records regarding each and every report of lost or stolen equipment. Thus, in addition to being entirely irrelevant to this case, Interrogatory No. 15 is unduly burdensome. Therefore, Daniels' motion should be denied.

### B. Daniels Cannot Satisfy His Burden Of Establishing That The Hotel-Related Information He Seeks To Compel Is Relevant To This Case

Daniels also seeks to compel the production of materials concerning a second broad category of information, namely, the various hotels utilized by APC in Rhode Island and throughout the world. As discussed below, these documents are entirely irrelevant to the issues at play in this case and, in many instances, unduly burdensome to produce and duplicative of documents produced previously.

#### 1. Request No. 8 seeks documents concerning a sales meeting that is irrelevant to this case and duplicative of documents produced previously.

Request No. 8 seeks "[a]ll documents reflecting or referring or relating to the Marriott Hotel in Providence and/or the Johnson and Wales Hotel." Not satisfied with the documents produced by APC, Daniels now moves to compel production of the expense reimbursement files for individuals who allegedly attended a "large sales meeting and who stayed at the Marriott during the meeting." Pl.'s Memo. at 18. His motion should be denied for at least two reasons.

First, whether or not APC employees ever stayed at the Providence Marriott, before or after Daniels hatched his kickback scheme, is irrelevant to this case. Daniels was not terminated simply because he used a non-preferred hotel; he was terminated for receiving (and attempting to hide) kickbacks from the Providence Marriott. Thus, the information sought by Daniels is irrelevant.

Second, current and former Company employees testified that they, or employees they knew, occasionally stayed at non-preferred hotels. APC also produced documents identifying various non-preferred hotels utilized by APC employees in recent years. <u>See</u> Kostakos Aff., Exh. B. Thus, to the extent the issue of whether APC employees stayed in non-preferred hotels is relevant to this case, Daniels already has documents and testimony sufficient to support that

proposition. See Archer Daniels Midland Co., 187 F.R.D. at 589 ("Even when dealing with requests for relevant information, the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved."). Thus, there is no basis for compelling APC to produce documents in response to Request No. 8 that are duplicative of documents and information provided previously. See Fed. R. Civ. P. 26(b)(2)(i).

**2. Request No. 10 seeks expense reimbursement documentation that is irrelevant to this case and duplicative of information produced previously.**

With regard to Request No. 10, Daniels seeks to compel disclosure of the expense reimbursement files for all employees who stayed at the Providence Marriott at his direction in January and February 2004. He articulates two rationales for this demand, namely, that these files will: (1) "reveal the names of the individuals from whom Daniels allegedly stole travel points;" and (2) "reveal that[,] in fact, Daniels did not prevent individuals from paying for their own hotel rooms and thus collecting travel points." See Pl.'s Memo. at 19.

As was the case with Request No. 6 (which sought these employees' personnel files for the same reasons), the requested documents are entirely irrelevant. Gough testified that the issue of whether individual employees received travel points was irrelevant to the decision to terminate Daniels' employment. See Gough Dep. at 187-88 (Kostakos Aff., Exh. D).

In any event, it is highly unlikely that these expense reimbursement records (which in most instances likely will consist of little more than copies of receipts, and checks issued in payment thereof) will contain any documents indicating whether an employee was credited with Marriott Rewards points for his or her personal account with Marriott. Moreover, as discussed above with regard to Interrogatory No. 14, the documents produced by the Providence Marriott itself contain the names of some, if not all, of the employees who stayed at the Providence Marriott at Daniels' direction.

Accordingly, Daniels is not entitled to these files and his motion to compel should be denied.

### 3. Requests Nos. 12, 16, and 17 seek documents concerning the use of non-preferred hotels which are wholly irrelevant to this case, duplicative of other documents produced previously, and, in many cases, unduly burdensome to produce.

Requests Nos. 12, 16, and 17 seek all documents: (1) "relating to the reimbursement of hotel expenses for all APC employees who stayed at a hotel in Rhode Island dating back to 1999;" (2) "sent to and/or received from the Marriott Hotel in Providence Rhode Island, including, but not limited to all bills from the Marriott and payments made by APC to the Marriott Hotel in Providence Rhode Island since 1998;" and (3) "referring or related to" the use of any non-preferred hotel by APC employees at any time, anywhere in the world.[17] Daniels' rationale for the production of these documents is that they "relate . . . to APC's arguments that Daniels' direction to employees to stay at a non-preferred APC hotel violated APC policy." See Pl.'s Memo. at 23.

His motion must be denied because, as discussed above with respect to Request No. 8, the issue of whether or not APC employees ever stayed at any non-preferred hotel, before or after Daniels hatched his kickback scheme, is irrelevant to this case. Daniels was not terminated simply because he used a non-preferred hotel; he was terminated for receiving (and attempting to hide) kickbacks from the Providence Marriott. In addition, to the extent this issue is relevant, Daniels already has deposition testimony and documents establishing that APC employees occasionally stayed at non-preferred hotels. Thus, there is no basis for compelling APC to produce documents in response to Requests Nos. 12, 16, and 17 that are both irrelevant and duplicative of documents and information provided previously.

[17] APC produced all documents sent to or received from the Providence Marriott relating to the rooms booked by Daniels. In addition, the Providence Marriott itself produced related documents.

Further, because innumerable Company employees have visited the various APC facilities located throughout Rhode Island during the seven-year period encompassed by Request No. 12, it would be unduly burdensome for the Company to locate and identify all documents regarding each and every hotel stay during such period. Request No. 17 is even broader, and therefore more burdensome, as it contains neither geographic nor temporal limitations. Given the irrelevance of the data sought by these requests, the Herculean effort required to respond thereto simply is not warranted. See, e.g., Blue Cross & Blue Shield of New Jersey, Inc. v. Phillip Morris, Inc., 178 F. Supp. 2d 198, 249-50 (E.D.N.Y. 2001) ("A balance must be struck between the burden and expense of discovery sought and its potential benefit."). Accordingly, Daniels' motion should be denied.

**4. Interrogatory No. 11 seeks information concerning hotel usage that is wholly irrelevant to this case and, to the extent it arguably seeks relevant data, such information already has been produced.**

Interrogatory No. 11, like the document requests discussed in the preceding section, is an attempt to identify the use of non-preferred hotels by APC employees. Specifically, Daniels seeks the names of all hotels used by APC in Rhode Island for "lodging, conferences, trainings, or other events" since 2000. See Pl.'s Memo. at 27-28. As discussed above, this information is entirely irrelevant. For that reason alone, his motion should be denied.

Even if this issue is relevant, APC already (a) produced documents identifying all hotels in Rhode Island (including non-preferred hotels) utilized by APC in recent years, and (b) represented to Daniels that there is no readily-available master record of all hotels in Rhode Island at which APC employees stayed since 2000. See Kostakos Aff., Exh. B; Pl.'s Mot., Exh. 20 at 3. Thus, there simply is no basis for compelling the disclosure of duplicative, irrelevant information.

**5. Interrogatory No. 18 seeks information concerning complaints about the Johnson and Wales Hotel that is wholly irrelevant to this case and, to the extent it seeks arguably relevant data, such information has been produced.**

Lastly, Request No. 18 asks for a description of "all complaints made by APC employees regarding the Johnson & Wales Hotel." This request is hopelessly vague because it provides no description of the nature or source of the "complaints" referred to therein. Although its wording is vague, Daniels' purpose in seeking complaints regarding the Johnson and Wales Hotel is clear: he desperately hopes to be able to cobble together an argument that he booked rooms at the Providence Marriott, instead of the Johnson and Wales Hotel, because of employee complaints regarding the latter. Under that premise, the only complaints relevant to this case are those of which Daniels was aware during his employment with APC or, at most, those that were made during the course of his employment but about which he was not specifically aware. In fact, APC has fully complied with this request by producing any and all information in its files that relate to complaints about the Johnson and Wales Hotel, and that are responsive to this request. Because APC produced all such responsive information, see Kostakos Aff., Exh. C, and other complaints, if any, are not even remotely relevant to this case, Daniels' motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, APC respectfully requests that the Court deny Daniels' motion to compel in its entirety.

Respectfully submitted,

AMERICAN POWER CONVERSION CORPORATION,

By its attorneys,

/s/ George P. Kostakos
George P. Kostakos (6971)
Christopher B. Kaczmarek (motion to appear *pro hac vice* pending)
Littler Mendelson, P.C.
10 Weybosset Street, Suite 404
Providence, RI 02903
(401) 454-2903 (tel.)
(401) 454-2969 (fax)
gkostakos@littler.com

Dated: December 26, 2006

**CERTIFICATE OF SERVICE**

I, George P. Kostakos, hereby certify that on this 26th day of December 2006 the foregoing **Memorandum Of Law in Support Of Defendant's Opposition to Plaintiff's Motion to Compel** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ George P. Kostakos
George P. Kostakos

Firmwide:81785771.1 049233.1004