IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

------------------------------x

SETH DANIELS,

Plaintiff,

v.

Civil Action No: 05-00459-ML-LDA

AMERICAN POWER CONVERSION CORPORATION,

Defendant.

------------------------------x

Job No. 2713

Pages 1 - 307

COPY

DEPOSITION OF SETH DANIELS, a witness called by counsel for the Defendant, taken pursuant to the Federal Rules of Civil Procedure before Dena M. O'Brien, CSR, and Notary Public in and for the State of Rhode Island, at the law office Of Littler Mendelson, 10 Weybosset Street, Suite 404, Providence, Rhode Island, on September 14, 2006, commencing at 9:29 a.m.

Brian Kelly.

Q. When were you terminated?

A. It was in '04 in March, I believe, which is why I said the individual instances had yet to form a pattern that I perceived to be racially motivated.

Q. You said that was when you had the conversation with Hendrix, as I recall.

A. Right, and I'm saying I believe that conversation with Hendrix happened between October and December of 2003, on or about. I'm approximating --

Q. And, as I understand it, that conversation came in third in the race of conversations, if you will. Let me say it a different way. You spoke to her after you spoke to Bonzani and after you spoke to Gough?

A. That is correct --

Q. You spoke to --

A. -- from my recollection.

Q. Getting back to the laptop issue, some receipts were stolen -- were some receipts stolen with that laptop?

A. Yes.

Q. Were they business-related receipts?
A. Yes.
Q. And did you obtain reimbursement for those expenses that were represented by those receipts nonetheless.
A. Yes. To the best of my recollection, I had to reconstruct what was -- I had receipts for. So --
Q. And you were able to do that how?
A. It was using a credit card for a majority or a bank card. So I had records.
Q. Got it. You were able to go back to your credit card or bank card records and reconstruct your expenses?
A. Yes, and I was using a personal computer program, too.
Q. Did the company provide you with a replacement laptop?
A. Yes.
Q. And did they require that you pay for the replacement?
A. No.
Q. How about for the lost laptop or stolen laptop? Did they require that you pay for it?

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

----------------------------x

SETH DANIELS,

Plaintiff,

v. Civil Action No:
05-00459-ML-LDA

AMERICAN POWER CONVERSION
CORPORATION,
Defendant.
----------------------------x ORIGINAL

Job No. 2867 Pages 308 - 419

CONTINUATION DEPOSITION OF SETH DANIELS, a witness called by counsel for the Defendant, taken pursuant to the Federal Rules of Civil Procedure before Dena M. O'Brien, CSR, and Notary Public in and for the State of Rhode Island, at the law office of Littler Mendelson, 10 Weybosset Street, Suite 404, Providence, Rhode Island, on November 10, 2006, commencing at 9:00 a.m.

Mortgage?

A. Yes.

Q. And how long were you employed there?

A. Until sometime in the end of winter, spring of '05.

Q. What was your rate of pay?

A. It was a commission-only job.

Q. Did you receive any commissions during your tenure there?

A. Yes.

Q. And how much?

A. I don't recall exactly how much.

Q. Can you approximate?

A. I'm not sure how much money I made at Allied. That information is still being determined by my attorney.

Q. Do you have any idea how much you earned during 2004 at Allied?

A. Again, that information is being determined by my attorney.

Q. Do you have documents that reflect how much you earned, pay stubs, anything like that, paychecks, copies of paychecks?

A. I'm trying to answer your question.

Q. And I'm trying to find out what you have.

A. I'm trying to answer your question, but because it was a commission-only job, I'm trying to determine what I earned if I earned, for example, $100 but I consumed -- it cost me $75 to earn that $100, then my earnings would then be $25.

Q. I'm simply concerned with how much you were paid by Allied in 2004? Do you have any idea how much you were paid by Allied in 2004?

A. I'd have to get that information.

Q. Do you have a W-2 that reflects how much you were paid in 2004?

A. All of that documentation would be with my attorney.

Q. Okay. Do you have a W-2 that shows how much you were paid by Allied in 2005?

A. Again, that information would be with my attorney.

Q. Any other employers since your departure from APC?

A. My only -- I was only an employee -- post APC the only employer that I worked for as an employee was Allied Home Mortgage, to the best of my recollection at this point in time.

Q. Did you receive any income from any other source since your departure from APC?
A. Yes.
Q. From where?
A. From Berg & Associates.
Q. B-e-r-g?
A. B-e-r-g.
Q. And who are they?
A. It's a company.
Q. What kind of company?
A. Marketing and management company.
Q. And what was your role with respect to Berg & Associates?
A. It's a company I started.
Q. What do they do, marketing you said?
A. Yes.
Q. How much income have you received from Berg & Associates?
A. Again, I'm waiting to get that information from my accountant, who's an attorney.
Q. Did you receive a W-2 that reflects your income from Berg & Associates?
A. I'm not an employee at Berg & Associates.
Q. Are you an owner?

A. Yes.
Q. Do you have any other documentation to support how much income you made relative to Berg & Associates?
A. That information will be forthcoming at some point in time from my CPA, who's an attorney.
Q. Any other sources of income since your departure -- let me ask you: How long have you been associated with or an owner of Berg & Associates?
A. Since June or July of '04, to the best of my recollection at this point in time.
Q. Does that remain an existing and viable entity? Strike that. Are you still receiving an income from that source?
A. Income -- I need to wait for my accountant to make that determination.
Q. Okay. Does the entity remain in existence?
A. Yes.
Q. Are there any other owners of the company?
A. No.
Q. Who are the associates?
A. The name of the company is Berg & Associates.

Q. Right. Who's Berg?
A. It's just the name of the company.
Q. There's nobody named Berg, Berg & Associates? There are no associates either?
A. Just the name of a company.
Q. Any other sources of income since your departure from APC?
A. Premiere Mortgage.
Q. And what was the nature of your involvement with Premiere Mortgage?
A. 1099.
Q. You were an independent contractor that did some work for them?
A. Yes.
Q. Have you received a 1099 from them?
A. Yes.
Q. For what years?
A. '05, to the best of my recollection.
Q. How much income have you received from Premier Mortgage?
A. Again, I have to wait for my accountant to make that determination.
Q. Okay. When did you begin your association or any involvement with Premiere Mortgage?

A. Sometime in the spring of -- end of winter, beginning of spring of '05.

Q. I'm sorry. Beginning spring of '05 or winter -- winter of '04, spring of '05; is that --

A. Sometime during that time frame, sometime after Allied.

Q. Any other sources of income other than those that you've described since your departure from APC?

A. I'm waiting on my attorney to tell me what, if, how much money I've made.

Q. Are you currently employed?

A. No.

Q. Subsequent -- I'm sorry. Were you going to say something?

A. To clarify, my last employer was Allied Home Mortgage.

Q. Okay. Did you visit any physicians or any other health professionals subsequent to your employment with APC as a result of any -- for any reason related to your employment with APC?

A. No.

Q. What did you do to look for work after your departure from APC?

Monster and maybe Net Tips, did you respond to newspaper listings for jobs?

A. The newspaper listings I'd look, but that wasn't my primary source.

Q. Was the internet your primary source?

A. Yes.

Q. In response to your interrogatories, you claim that you suffered $65,000 in back pay damages. Does that sound accurate to you?

A. Based upon that point in time, to the best of my ability based upon the formula that I used to calculate, I'd say that would be accurate for that period of time.

Q. What documents do you have, if any, to support that calculation?

A. At this point in time, my accountant has documentation that's relative to previous income.

Q. Did you provide those documents to counsel in this litigation for production?

A. Which documents?

Q. Documents supporting any damage calculation that you may have done?

A. Yes.

Q. You did provide them?