IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

\- - - - - - - - - - - - - - - x

SETH DANIELS,

Plaintiff

Civil Action

vs. No. 05-00459-ML-LDA

AMERICAN POWER
CONVERSION CORPORATION,

Defendant

\- - - - - - - - - - - - - - - x

DEPOSITION of SUSAN COLUCCI, a witness called on behalf of the Plaintiff, pursuant to the Federal Rules of Civil Procedure, before Patricia A. Conant, a Registered Professional Reporter and Notary Public within and for the State of Rhode Island, at the offices of Stephen Robinson, 155 South Main Street, Fourth Floor, Providence, Rhode Island 02903, on Thursday, November 9, 2006, commencing at 5:02 p.m.

**Exhibit 6**

APPEARANCES:
LORI KISCH, ESQUIRE
Wiggins childs Quinn Pantazis, PC
7 Dupont Circle NW
Suite 200
Washington, DC 20036
For the Plaintiff;

GEORGE P. KOSTAKOS, ESQUIRE
Littler Mendelson, PC
10 Weybosset Street
Suite 404
Providence, Rhode Island 02903
For the Defendant.



I N D E X



| Deposition of: | Direct | Cross |
|---|---|---|
| SUSAN COLUCCI | | |
| By MS. KISCH: | 4 & 16 | |
| By Mr. Kostakos | | 15 & 21 |



E X H I B I T S



| No. | Description | Page |
|---|---|---|
| 1 | Subpoena | 5 |





SUSAN COLUCCI,
having been satisfactorily identified by the production of her driver's license, and duly sworn by the notary public, was examined and testified as follows:

EXAMINATION
BY MS. KISCH:
Q. Good afternoon. Could you just go ahead and just state your name for the record?
A. Susan Colucci.
Q. And if you could spell it again?
A. C-O-L-U-C-C-I.
MR. KOSTAKOS: With a name like Kostakos, should get Colucci right.
BY MS. KISCH:
Q. Thank you, Miss Colucci, for coming in today. My name is Lori Kisch, and I represent Seth Daniels who has filed a lawsuit against American Power Conversion or APC; and we're here to take your deposition to find out what you know about the facts and what documents you have in response to the subpoena on the Marriott?
A. Okay.



MS. KISCH: Can I have this marked.
(Colucci Exhibit 1, marked for identification.)
BY MS. KISCH:
Q. Who are you currently employed by?
A. Marriott Hotel.
Q. What is your position?
A. Controller.
Q. And how long have you been employed there?
A. Back since 1992.
Q. Have you always been the comptroller?
A. Since 1999.
Q. And what are your job duties in general, very general, as controller?
A. Financial well-being of the hotel.
Q. Okay. I show you what's been marked as Colucci Exhibit 1?
A. Okay.
Q. Which is a subpoena that was served on the Marriott, and attached is a document request?
A. Uh-huh.

Q. Are you familiar with that?
A. Yes, I am.
Q. Okay. And you've brought some documents with you here today?
A. Yes, I have.
Q. Did you actually check the documents you brought in?
A. Yes.
Q. Search for all the responsive documents in response to the subpoena?
A. Yes.
Q. Were there any requests that you had no documents for?
A. Yes.
Q. Which ones were those?
A. The first one states, "Any employee by American Power Conversion." Our systems are name based only, so I don't have the ability it look up anything by APC.
Q. Okay.
A. Okay. I do not have any documentation for No. 2.
Q. Okay.
A. What I have for No. 3 are just some, the



rewards form that is filled out for people who are -- who received reward points for booking group events for us and just a brochure on that. That's all I have on that.
Q. Okay.
A. As it pertains to specific documents like that for this particular group we do not have them because our sales files have been destroyed, so I can't even tell you if any documents existed. I don't know that.
Q. Okay. You don't know which documents existed?
A. Rewards points for this. In No. 5, I believe, it says documents reflecting individual travel award points given to Jeff St. Clair and Jeff Gardener. If there were points associated with a group booking at our hotel, this document would prove that. However, this document is part of a sales file, and our sales files were destroyed for this time frame.
Q. Okay?
A. So I don't have any for that.
Q. Okay. If they had booked their own hotel



rooms and received reward points, would you have any documents to reflect that?
A. I would not on an individual basis. These forms are not filled out for individual stays. If they are rewards members, we have rewards reports that are transmitted electronically to Marriott every night when we close day, and it is based on that information that they then award points to rewards members, but they have to be an active rewards member at the time in good standing with Marriott, and I don't have any documents that could attest to that. I don't have anything at all.
Q. Okay. So if Jeff Gardener or Jeff St. Clair received travel award points for staying at the Marriott and they booked their reservation themselves and received those points, you would not have any documentation to reflect that?
A. No, I don't.
Q. Okay. Was there anything else you don't have documentation in response to?
A. I don't have No. 4 because, as I stated



before the sales -- the contracts are kept in sales files and those files have since been destroyed, so I do not have those. The only thing I do have here, other than this information here, these are the billings for APC when Mr. Daniels booked his event. It wasn't specifically asked for in here, but I brought it because I did not know if that is something that you would want.
Q. Okay. But do you have any other documents reflecting the use of the Providence Marriott by APC other than when Mr. Daniels was involved?
A. There are other people within these billings that were -- that stayed, which I am assuming were APC employees which is why I brought these. But again, as I stated in the first thing, unless you provide me with names, I could go back on the history and look it up, but I can't look it up by APC, if you will.
Q. So you were able to find those relating to Mr. Daniels because you had his name in there and you were able to go back and look?
A. Because we billed APC Global Services.

This was a receivables billing, and because the vendor for the receivables was APC Global Services, I brought that because, No. 1, you referred to APC.
Q. Right.
A. I can't look up individual names by the APC reference, but I can give you this because the billing was to APC, and this billing does include individual overnight guest stays for people who stayed under, quote, unquote, APC.
Q. Okay. So did you print out all of the documents related to APC?
A. With regard to these billings, they are all inclusive here.
Q. Did you print out all of the documents related to APC at any time from 2000 to the present?
A. I'm not sure I understand your question. These documents were printed at the time that APC was a client of ours, a guest of ours in our hotel. That's where these billings came from. These billings were not destroyed. They records are from that time period.
Q. Okay.



A. I don't have the ability now to go back to the year 2003, 2004 and print anything. That ability does not exist.
Q. But there may have been other times from 2000 to present in which APC did use hotels rooms or booked events at the Providence Marriott, but you no longer have the capability of printing those documents, is that correct?
MR. KOSTAKOS: Objection.
A. That is correct.
Q. What about within the last year?
A. The Marriott systems retain about 13 months worth of history in their system where I could go back and print a room folio, but again, I cannot do that by looking up APC. You would have to provide me with a specific name, and I could go back into the system to see if a room reservation existed with the particular guest name that you were looking for.
Q. If there was a direct billing, though, to APC within the 13 months, would you be able to look --



A. There has -- I beg your pardon.
Q. Let me just finish my question.
A. Sure.
Q. If there's been a direct billing relationship between APC and the Providence Marriott within the last 13 months, did you look for those such documents?
A. No, I didn't, but there has not been.
Q. How do you know that?
A. Because I manage the receivables at the hotel, so I can tell you within the last 13 months there hasn't been. There is no current sales file active because I did look for that when I looked for sales files from the 2003, 2004, time period. We do have the last two years current and active and I did look for an APC file, and one does not exist.
Q. Okay. So you know within the last two years there were no direct billing contracts with APC, is that correct?
A. Correct.
Q. Okay. But you don't know whether or not individually APC employees stayed at the Providence Marriott within the last two years



because we would have to provide you those names in order for you to retrieve that information, correct?
A. That's correct.
Q. Do you have in there the documents reflecting the APC -- excuse me, the Marriott rewards program back in the year 2000, 2004?
A. No. The only thing I have is this document here which is how we supply Marriott reward points, but I don't know if this same reward -- this is an current document. I don't know if the same reward point, number of point per dollar spent was the same in 2003 as it is in 2004, but the program is the same.
Q. You don't know if this document that is called Marriott Rewards and has black and red writing on it and says Marriott Rewards Program on it. You don't know if it was the same program that existed in 2003, correct?
A. I know it's the same program that existed. I don't know if the rewards was the same.
Q. And you don't know if it was the same in 2004, either, is that correct?

A. That is correct.
Q. Does the Marriott currently have any program which allows a company to receive points for booking individual hotel rooms for guests?
A. Not to my knowledge.
Q. How it ever?
A. Not to my knowledge.
Q. And would you have knowledge of that?
A. I should, yes.
Q. Okay. I'm going to ask that we get a copy of these documents.
A. Sure.
MR. KOSTAKOS: Can I ask a question while we're on these points.
BY MS. KISCH: Okay.
MR. KOSTAKOS: And not to interrupt, but are these originals or copies of documents?
THE WITNESS: Those are originals.
MR. KOSTAKOS: I can take them and have copies made.
MS. KISCH: She doesn't feel



comfortable leaving them now. I spoke to her in the hall. So we said that she's going to take them back to the hotel and she's either going to make copies and we'll arrange somehow to make copies.
MR. KOSTAKOS: I can arrange to.
MS. KISCH: Okay.
THE WITNESS: Do you want me to mail them to you?
MR. KOSTAKOS: I can pick them up. I don't want my distrust of the U.S. Mail system on the record.
MS. KISCH: I don't have any other questions. Do you have any?
MR. KOSTAKOS: Actually, I have one or two while I'm digging.
EXAMINATION
BY MR. KOSTAKOS:
Q. You may have answered this, and I apologize if you did. If you had a direct billing relationship -- if you had -- do these documents represent all of the bills or invoices sent to APC under any direct billing relationship Marriott had with APC?



A. No, these documents reflect the direct billing relationship that existed at the time for this particular group clients event.
Q. Okay. And these are all of the invoices that you have for that time period?
A. That is correct.
MR. KOSTAKOS: That's all I have.
MS. KISCH: Well, I have one more question.
EXAMINATION
BY MS. KISCH:
Q. Do you know if there were additional documents related to that event that you no longer have?
A. No, I do not.
MR. KOSTAKOS: Can I ask you another question.
EXAMINATION
BY MR. KOSTAKOS:
Q. What is that document you have there?
A. This is a letter from the initial point of contact for this group billing event that was sent by a sales manager. This is on our system. It defers to the date that it



actually printed off the system which is why it has a current date of November 8, which is when I pulled it from the system.
Q. Do you know when it was created?
A. I do not know because it was part of the original sales file which we to longer have.
Q. Okay. And who is Frank (inaudible).
A. He was the --
Q. He's not the guy from the movie, I take it?
A. No. He was at the time our business travel sales manager. He's not longer employed at the hotel.
Q. And what time was that?
A. That was in December 2003, which I believe was the inception of that, but I believe his employment started with us sometime in '02.
Q. So he was there sometime in '02 to December of '03?
A. He left in January of '04.
Q. And who succeeded him, do you know?
A. I don't know off the top of my head.
Q. Does the name Scott Barger (Phonetic)

ring a bell?
A. Scott Barger was the director who left in May of this year. He did not follow Frank. I think he was actually -- I don't know.
Q. Do you know if Frank reported to Scott Barger?
A. If Mr. Barger was there, yes, Frank would have reported to him.
MR. KOSTAKOS: No further questions.
THE WITNESS: Anything else?
MS. KISCH: Let me look at these.
THE WITNESS: Sure. Go right ahead.
MR. KOSTAKOS: Off the record.
MS. KISCH: Okay. That's it.
(Whereupon, at 5:17 p.m., the proceedings adjourned.)



ERRATA SHEET DISTRIBUTION INFORMATION
DEPONENT'S ERRATA & SIGNATURE INSTRUCTIONS.

ERRATA SHEET DISTRIBUTION INFORMATION

The original of the Errata Sheet has been delivered to Mr. Kostakos, Esquire.

When the Errata Sheet has been completed by the deponent and signed, a copy thereof should be delivered to each party of record and the ORIGINAL forwarded to MS. KISCH, Esquire.

INSTRUCTIONS TO DEPONENT

After reading this volume of your deposition, please indicate any corrections or changes to your testimony and the reasons therefore on the Errata Sheet supplied to you and sign it. DO NOT make marks or notations on the transcript volume itself. Add additional sheets if necessary. Please refer to the above instructions for errata sheet distribution information.



ATTACH TO THE DEPOSITION OF Brian E. Gough
CASE: Daniels V. APC DATE TAKEN: November 9, 2006

ERRATA SHEET

Please refer to page 19 for errata sheet instructions and distribution instructions.

I, the undersigned, SUSAN COLUCCI, do hereby certify that I have read the foregoing deposition, taken on Thursday, November 9, 2006, and that, to the best of my knowledge, said deposition is true and accurate (with the exception of the following corrections listed below):

Page Line Change Reason

_______________________________________________
_______________________________________________
_______________________________________________
_______________________________________________
_______________________________________________
_______________________________________________
_______________________________________________

_____________ Executed this ____ day of _____, 2006

_________________________



C E R T I F I C A T E

State of Rhode Island

I, Patricia A. Conant, a Registered Professional Reporter and Notary Public within and for the State of Rhode Island, do hereby certify:

That SUSAN COLUCCI, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the said witness.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal this 27th day of November, 2006.

Registered Professional Reporter
and Notary Public

My commission expires:
July 2, 2010