**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SETH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION<br><br>Defendant. | CIVIL NO: 05-00459-ML-LDA<br>Judge Mary Lisi |

**PLAINTIFF'S NOTICE OF APPEAL OF THE MAGISTRATE JUDGE'S MEMORANDUM AND ORDER DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, through his undersigned attorneys, pursuant to Local Civil Rules 7 and 72, hereby respectfully moves this Court to overturn the Magistrate Judge's Order Denying In Part Plaintiff's Motion to Compel, and to issue an Order compelling Defendant to answer and produce all non-privileged responsive discovery currently outstanding. Furthermore, Plaintiff respectfully request that this Court order Defendant to produce all outstanding discovery within 20 days from the date of an Order overturning the Order Denying in Part Plaintiff's Motion to Compel. The grounds for this Appeal are set forth in the accompanying Memorandum.

Respectfully submitted this 2nd day of March, 2007,

/s/ Noelle Clapham___________________
Noelle K. Clapham (R.I. Bar #5338)
Law Office of Noelle Clapham
24 Salt Pond Road
Suite A-8
South Kingston, RI 02879
claphamlaw@verizon.net
(401) 783-3600

Lori B. Kisch (MD Fed Bar # 25781)
Wiggins, Childs, Quinn & Pantazis PLLC
2031 Florida Ave., NW, Suite 300
Washington, DC 20009
lkisch@wcqp.com

***ATTORNEYS FOR THE PLAINTIFFS***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SETH DANIELS, Plaintiff, v. AMERICAN POWER CONVERSION CORPORATION Defendant. | CIVIL NO: 05-00459-ML-LDA Judge Lisi |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPEAL OF THE MAGISTRATE JUDGE'S ORDER DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

The Plaintiff, through his undersigned Counsel, hereby files an Appeal from the Magistrate Judge's Order Denying in Part Plaintiff's Motion To Compel and requesting that the District Court order Defendant to answer discovery and produce documents in response to Plaintiff's discovery requests.

## I. INTRODUCTION

Plaintiff Seth Daniels propounded discovery on Defendant, American Power Conversion Corporation ("APC"), in the form of requests for production of documents and interrogatories. APC refused to respond to much of the discovery in an attempt to withhold relevant and potentially damaging evidence. Defendant's objections to producing the relevant evidence were

unsupported by both the facts of the case and the law of this Circuit. After numerous attempts to reach agreement regarding the scope of the discovery, there remained several areas of disagreement. Plaintiff filed a Motion to Compel APC to produce requested documents, answer interrogatories, and to provide a privilege log on December 6, 2006. Dkt. Nos. 16, 17. APC filed its Response in opposition to Daniels' Motion to Compel on December 26, 2006, Dkt. Nos. 26, 27, and Plaintiff filed his Reply on January 16, 2007, Dkt. No. 35. On February 14, 2007, the Magistrate Judge issued a Memorandum and Order granting in part, and denying in part, Plaintiff's Motion to Compel. Dkt. 39, Addendum ("Add.") A. It is this Order that is the bases of Plaintiff's instant appeal.

The Magistrate Judge held that "Plaintiff's discovery requests are largely overbroad and/or Plaintiff has not shown that the information sought is relevant to a claim or defense in this action." Add. A at 3. Contrary to the Magistrate Judge's opinion, Plaintiff tailored his requests to the specific facts of the case and requested only those documents necessary to demonstrate pretext and to develop evidence of comparator information.

Although the Magistrate Judge ordered APC to produce some discovery of comparator information, the Magistrate Judge's ruling was too narrow. In several instances, the Magistrate Judge denied, in part, Plaintiff's Motion to Compel with regard to requested discovery of possible comparators who were disciplined, terminated, and/or who were not disciplined, but who violated APC's policies involving dishonest and unethical behavior. The Magistrate Judge limited his decision granting Plaintiff's Motion to Compel for such comparators to those individuals working under Daniels' direct and second level supervisors, John Bonzani and Paul Kavanaugh. The Magistrate Judge denied the requested discovery of comparator information for

those individuals over whom Human Resources Director Brian Gough had human resources responsibility, even though the evidence is uncontradicted that Gough made the decision to terminate Daniels. Further, it is uncontroverted that APC maintains two file drawers of employee relations documents which may contain additional comparator evidence that would not be burdensome to review and produce. The Magistrate Judge denied Plaintiff's motion to compel production of these documents. Additionally, the Magistrate Judge limited the complaints of race discrimination, harassment, and/or retaliation to those made specifically against Daniels' supervisors rather than all those complaints made by individuals working under the supervision of those individuals. The Magistrate Judge also refused to order the production of personnel files on the basis of relevancy grounds.

The remaining issues for appeal relate to the denial by the Magistrate Judge of discovery that would assist Daniels to prove pretext. Specifically, Daniels requested discovery that would prove that the company's articulated reason for terminating him for directing that hotel rooms be booked at the Marriott hotel, stealing reward points from other employees, disregarding an alleged preferred hotel list, setting up an alleged direct billing scheme, and costing the company $8,000 for using a non-preferred hotel was a pretext for discrimination. The requested discovery would have revealed that employees regularly stay at non-preferred hotels, Daniels did not cost the company any money, Daniels did not steel reward points from other employees, other employees had engaged in similar conduct by receiving reward points for hotel stays that were not their own, other employees paid for their own hotel rooms, and that complaints were made against the Johnson & Wales (the hotel from which Daniels allegedly diverted the business).

## II. STANDARD OF REVIEW

A district court judge may reverse a Magistrate Judge's opinion where "the magistrate's order is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *Sunview Condominium Ass'n v. Flexel Intern., Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997); *Fischer v. McGowan,* 585 F. Supp. 978, 984 (D.R.I.1984); *Pascale v. G.D. Searle & Co.,* 90 F.R.D. 55, 59 (D.R.I.1981). The Magistrate Judge's ruling in this case was clearly erroneous and contrary to law.

## III. FACTS

A brief discussion of the facts of the case illustrates the relevancy of the discovery sought and the clear error in the Magistrate Judge's denial of Plaintiff's Motion to Compel. Plaintiff Seth Daniels was terminated on March 12, 2004, after working for APC for only six months. Dkt. No. 1, Complaint, ¶ 6. APC claims it terminated Daniels because he, in organizing training sessions for APC employees, directed that rooms be booked at the Providence Marriott, a non-preferred hotel which cost the company money, jeopardized APC's contract with another hotel, the Johnson & Wales Inn, and stole travel points from APC employees and/or the company. Add. B, Motion to Compel ("MTC") Exhibit ("Ex.") 1, APC 474; Add. B, MTC Ex. 5, APC 512, 514. APC claims travel points purportedly stolen by Plaintiff "belonged to the APC employees who stayed at the Marriott at Daniels' direction." Add. B, MTC Ex. 4, APC 501. APC further alleges that Daniels "devised a scheme to divert the Marriott Rewards Points that should have been credited to the FSEs staying at the Marriott to his own personal account." *Id.* at 501. It further stated that APC "allows employees who travel on Company business to collect travel points for their own personal travel. Thus, if Daniels had followed Company practice, each individual

renting a room at the Marriott would have collected travel points." Add. B, MTC Ex. 1, APC 475, n.5.

APC also accused Daniels of creating a direct billing relationship whereby employees who stayed at the Marriott did not pay for their hotel stay directly, but rather, APC was directly charged for such expenses. *Id*. at 475. APC alleges that the direct billing was established in an effort to hide the fact that the trainees were staying at the Marriott. *Id*. at 475. APC alleges that the hotel stays at the Marriott resulted in a loss of money for APC. *Id.* at 473.

Contrary to APC's stated position, Daniels receipt of travel points did not deprive any individual from obtaining travel points for their stay at the Marriott Hotel. APC's termination of Daniels was a pretext for discrimination and retaliation for his prior complaints of discrimination and harassment. Prior to his termination, Daniels was harassed and discriminated against on several occasions and his complaints regarding the harassment and discrimination were ignored. Add. B, MTC Ex. 8, Daniels Dep. at 377, 394-95.

Specifically, Daniels alleges that he was harassed and treated differently than white employees. While white employees were allowed to directly bill their travel related expenses, Finance Manager Brian Kelly and Travel Manager Christine Bollman refused such accommodations for Daniels. *Id.* at 177-86. Additionally, when Daniels' company issued laptop was stolen from his rental car, he was harassed by APC managers regarding the incident. Dkt. No. 1, Complaint, ¶ 13. Daniels was also harassed by Finance Manager Brian Kelly with regard to the information he provided on his W-4 form. *Id.* at 220-22, 251, 335. Additionally, Daniels was harassed by APC managers regarding reimbursement for his expenses related to his travel for APC. *Id.* at 252, 267. Daniels complained to numerous

managers regarding the harassment and discrimination at APC, but his complaints were ignored. *Id.* at 377, 394-395.

Despite the claims raised by Daniels and the defenses specifically alleged by APC, APC refused to produce much of the evidence directly related to these specific claims and defenses, and the Magistrate Judge refused to compel APC to produce this pertinent information.

## IV. ARGUMENT

The Magistrate Judge's refusal to compel Defendant to produce the requested, relevant discovery is contrary to the Federal Rules of Civil Procedure, Supreme Court, and First Circuit precedent, all of which guarantee the broad scope of discovery. Rule 26(b)(1) defines the scope of discovery to which Plaintiff is entitled:

> (b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. Pro. 26(b)(1). The First Circuit has held that the "plain language of this Rule 26(b)(1) contemplates wide-ranging discovery to the *fullest possible extent*." *Klonoski v. Mahlab,* 156 F.3d 255, 267 (1st Cir. 1998) (emphasis added). The matters "relevant" to the subject matter of the pending action, as described in Rule 26 (b)(1), include:

> [A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case… [D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise

during litigation that are not related to the merits."

*Klonoski,* 156 F.3d at 267 (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

> For purposes of Rule 26(b)(1), the term relevant is not to be equated with 'relevant' as ordinarily used in determining admissibility of evidence upon a trial. By the same token, relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. Thus, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.

*Gagne v. Reddy,* 104 F.R.D. 454, 456 (D. Mass. 1984) (internal citations and quotations omitted).

The purpose of broad-ranging discovery is to "narrow and clarify the basic issues between the parties," and to ascertain "the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947)). The result is that "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain *the fullest possible knowledge of the issues and facts before trial.*" *Id.* (quoting *Hickman*, 329 U.S. at 500-01) (emphasis in *Klonoski*).

The First Circuit has held that the "discovery rules are to be accorded a broad and liberal treatment," because "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Klonoski,* 156 F.3d at 267-68 (quoting *Hickman,* 329 U.S. at 507). "To that end, either party may compel the other to disgorge whatever facts he has in his possession," *Id.* at 268 (quoting *Hickman,* 329 U.S. at 507) (emphasis in *Klonoski*), and all basic

issues and facts must be disclosed "*to the fullest practicable extent*," *Id.* (quoting *United States v. Procter & Gamble Co*., 356 U.S. 677, 682 (1958) (emphasis in *Klonoski*)).

Therefore, a "great deal of latitude" is provided for discovery, *Harris v. Nelson*, 394 U.S. 286, 297 (1969), and appellate courts generally will not uphold discovery rulings "which [have] failed to adhere to the liberal spirit of the [Federal] Rules [of Civil Procedure]," *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). *See also Williams v. City of Dothan, Ala*., 745 F.2d 1406, 1415-16 (11th Cir. 1984); *Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944-45 (2d Cir.1983). This is particularly so in employment discrimination cases, because, as the First Circuit has recognized, "discrimination is often subtle and pervasive," and therefore "plaintiffs must be able to rely on circumstantial evidence to prove discriminatory intent." *Cummings v. Standard Register Co*., 265 F.3d 56, 63-64 (1st Cir. 2001).

Plaintiffs who raise allegations of employment discrimination are entitled to a broad range of documents relating to the employer's employment practices, since such information is relevant and necessary to the evaluation and proof of the plaintiff's claims. As the Supreme Court stated in *Wards Cove Packing Co., Inc. v. Atonio,* "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims." 490 U.S. 642, 657 (1989). "Relevancy for discovery purposes is much broader than for admissibility purposes at trial. If the information sought appears reasonably calculated to lead to the discovery of admissible evidence, it is within the limits set forth in Fed. R. Civ. P. 26(b)(1)." *Jackson v. Harvard University*, 111 F.R.D. 472 (D. Mass. 1986).

The Magistrate Judge clearly erred in failing to adhere to the liberal spirit of the discovery rules by denying many of Plaintiff's discovery requests.

**A. The Magistrate Judge's Order Is Clearly Erroneous and Contrary to Law To The Extent That the Order Denies Plaintiff's Discovery Requests Which Are Tailored to Prove Pretext and to Illicit Comparator Evidence**

The Magistrate Judge's ruling that many of Plaintiff's requests are overly broad and are not limited to information that is relevant[1] to a claim or defense in the case is contrary to the law. The Magistrate Judge's denial of comparator discovery on the basis of relevance is contrary to law. The Magistrate Judge granted Plaintiff only a limited scope of discovery for the requests made in Nos. 4, 6, 7, 15, and Interrogatory No. 5. Generally, Plaintiff sought discovery of possible comparator evidence for all individuals working under Plaintiff's supervisors, Bonzani and Gough, and those individuals over whom Human Resources Director Brain Gough had human resources responsibility. Further, Plaintiff sought discovery of the employee relations files which APC maintained in two file drawers.

Although it was undisputed that Gough made the decision to terminate Daniels, the Magistrate Judge denied Plaintiff's Motion to Compel as to the evidence relating to possible comparators over whom Gough had human resources responsibility. The Magistrate's Judge's ruling with regard to the evidence of comparators over whom Gough had HR responsibility and his ruling that Plaintiff was not entitled to the evidence in the employee relations files was clear error and contrary to the law. In ruling against Plaintiff on his motion to compel, the Magistrate Judge apparently adopted APC's argument that Plaintiff must first demonstrate that the comparator meets the similarly situated test before receiving the requested discovery. This argument has been rejected by numerous courts. These courts have held that it is improper to

[1] Plaintiff need not demonstrate that the evidence is relevant. Rather, the standard as articulated in the Federal Rules requires only that the discovery sought is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The Magistrate Judge's reliance on a relevance standard is clearly erroneous and contrary to the Federal Rules of Civil Procedure and should be reversed.

deny a motion to compel with regard to discovery that might uncover comparator information and subsequently to grant summary judgment to the defendant based upon the lack of such evidence or failing to establish pretext.

For example, the court in *Hollander v. American Cyanamid*, 895 F.2d 80 (2nd Cir. 1990) reversed summary judgment where the district court had failed to grant a motion to compel seeking discovery of individuals who may have been similarly situated. Specifically, the plaintiff, who had been terminated by his employer, had requested that defendant "[i]dentify each management level employee who has terminated employment with you . . . who at the time of the termination of his employment was over the age of 40, stating as to each the reason or reasons for the termination of employment." *Id.* at 84. The defendant objected, arguing that the request was overly broad and vague and beyond the geographic areas in which the plaintiff worked. The district court held that the discovery would be burdensome and was irrelevant. *Id.* The Second Circuit held that the "restriction upon [] the plaintiff's discovery unduly limited his ability to establish his argument that [] [the defendant's] discharge of him was pretextual." *Id.* The Second Circuit further held:

> [e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's decision regarding a particular individual masks a discriminatory motive. . . . It is possible that [] [plaintiff's] discovery request might uncover a pattern of older management employees leaving [] [defendant] under unexplained circumstances, which might help prove his claim that [] [defendant's] explanation for his discharge was pretextual.
>
> Because employers rarely leave a paper trail-or "smoking gun"-attesting to a discriminatory intent, . . . disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer. Such determinations are, generally speaking, most competently and appropriately made by the trier of fact. So long as the

> plaintiff can present "solid circumstantial evidence" supporting his case, . . . he should have the opportunity to prove his case at trial.

*Id.* at 84-85; *Kraiman v. Georgia-Pacific Corp.*, No. 90-4299, 1991 WL 175428 (E.D. Pa. Sept. 5, 1991) (same).

The D.C. Circuit has also ruled that the denial of possible comparator evidence warrants a reversal of summary judgment. *Paquin v. Federal National Mortgage Association*, 119 F.3d 23 (D.C. Cir. 1997). The court held that evidence of potential comparators is necessary prior to a ruling on summary judgment because such evidence may assist the plaintiff in proving pretext. *Id.* at 229.

APC's argument for its refusal to produce responsive evidence are almost identical to those rejected in *Mitchell v. Fishbein*, 227 F.R.D. 239 (S.D.N.Y. 2005). In *Mitchell*, the plaintiff, an African-American attorney who was formerly certified to serve on the state's panel to provide legal services to indigent criminal defendants, alleged race discrimination when his recertification was denied. Plaintiff filed a motion to compel after the defendant refused to produce possible comparator evidence. The court held:

> To the extent that [] [defendants] are arguing that [] [plaintiff] must provide the Court with proof of discrimination before he is entitled to seek discovery relating to his claim of discrimination, that argument turns the purpose of discovery on its head and is rejected as frivolous. To the extent that defendants are arguing there is no possibility that [] [plaintiff] could ever demonstrate discrimination simply because he is the only African-American attorney who was not recertified to the Panel, that argument too is frivolous. As should be obvious, if [] [plaintiff] uncovered evidence that similarly-situated non-African-American applicants were in fact recertified to the Panel, such evidence plainly would be relevant to his claim of discrimination.

*Id.* at 249.

Numerous other courts have also ordered defendants to produce documents where they, like APC, have withheld evidence which might have aided plaintiffs to prove their case. For example, in *Jacobson v. Starbucks Coffee Co.*, No. 05-1338, 2006 WL 3146349 (D. Kan. Oct. 31, 2006), the court rejected the defendant's argument that, before it should have to turn over certain employee files, the plaintiff must first identify the individuals whose files would contain relevant information. In *Jackson v. Montgomery Ward*, 173 F.R.D. 524 (D. Nev. 1997), the court also held that a plaintiff had a right to access documents which might be helpful to his race discrimination and harassment claim, and ordered defendant to produce the documents. The court further noted that "defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it," thus justifying the need for the requested documents. *Id.* at 527. In *Lyoch v. Anheuser-Busch Co., Inc.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995), the court ordered defendant to comply with a discovery request over the defendant's argument that an individual plaintiff was "engaging in a 'fishing expedition'" when he asked the defendant to identify individuals who received promotions so that he could determine whether or not they were potential comparators,

Both the Seventh and Ninth Circuits have also ruled that summary judgment is improper in a disparate treatment case when a district court restricts a plaintiff's ability to discover evidence that may be useful for establishing a *prima facie* case or the employer's motivation for taking the employment action. *See Diaz v. American Telephone & Telegraph*, 752, F.2d 1356 (9th Cir. 1985), and *Cedillo v. International Ass'n of Bridge and Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, (7th Cir. 1979).

Additionally, the Ninth Circuit has held that it is inappropriate to make determinations regarding comparator analysis without first allowing a plaintiff to obtain the related discovery. For example, in *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987), the court reversed summary judgment where the district court failed first to address the plaintiff's request for comparator evidence relating to other employees who may have engaged in similar acts of wrongdoing, but were nevertheless not fired. The Ninth Circuit explained that "this case presents the circumstance where 'a party's access to material is of crucial importance where the information is likely to be in the sole possession of the opposing party." *Id.*

Based upon all of these precedents, APC's arguments that Plaintiff must first prove that the evidence, of which he had not yet even discovered, meets the similarly situated test, is plainly at odds with the entire fabric of the discovery provisions of the Federal Rules. Indeed, in *Cummings v. Standard Register Co.*, the First Circuit held that anecdotal evidence of discrimination suffered by other employees, even those working in a different area or under different supervisors than plaintiff, is admissible to establish the corporate "atmosphere" or "state of mind" of the company. 265 F.3d 56, 63-64 (1st Cir. 2001) The Magistrate Judge's ruling that APC is not required to produce evidence that is admissible, not to mention relevant, in a discrimination case is clearly contrary to the law of this Circuit and contrary to the liberal spirit of the Federal Rules. *See id.; see also Klonoski,* 156 F.3d at 267 (the "plain language of this Rule 26(b)(1) contemplates wide-ranging discovery to the fullest possible extent.").

The specific discovery requests, responses, and ruling from the Magistrate Judge as well as the reasons for this appeal are addressed below.

### B. Plaintiff's Document Requests Were Narrowly Tailored and Sought Only Relevant Discovery

#### 1. Requests for Production of Documents[2]

**Request No. 4:** All documents relating to any complaints of race discrimination and/or harassment and/or retaliation at the Defendant's Providence Rhode Island office, including, but not limited to, all internal complaints, documents, or memoranda, EEO complaints, EEOC Charges, and investigative files and lawsuits alleging race discrimination and/or against the Defendant from 1995 to the present.

**Response No. 4:** Defendant objects to Request No. 4 the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Request No. 4 seeks documents regarding alleged incident that are remote in time from the alleged incidents regarding Plaintiff, it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery. Further, because Request No. 4 seeks documents regarding all alleged employee complaints, and does not attempt to limit the scope of discovery to those employees who might arguably be similarly situated to Plaintiff, it is overly broad, unduly burdensome and exceeds the permissible scope of discovery.

**Exception:** Defendant's objections are without merit. The documents are reasonably calculated to lead to the discovery of admissible evidence. To the extent that there are complaints of race discrimination, retaliation and or harassment by the same individuals involved in Daniels' termination, the fact that such incidents occurred prior to Mr. Daniels' employment, does not render it irrelevant. However, in the spirit of compromise, Plaintiff will revise his request to include only those complaints that were made by employees who work in the Providence Rhode Island Office or those employees who were trained in Rhode Island.

**Supplemental Response No. 4:** Defendant maintains its objections to this Request, particularly given that Plaintiff failed to sufficiently tailor his request. In the spirit of compromise, APC will produce any documents related to complaints of race-based discrimination, harassment or retaliation that involved the same individuals that supervised Daniels and participated in the decision to terminate his employment. We will further agree to produce documents relating to any such claim that was first asserted on or after January 1, 1999, through the end of Plaintiff's employment.

---

[2] Plaintiff's Requests for Production of Documents Nos. 1-11, and Plaintiff's Interrogatories Nos. 1-20, referred to herein, are included in Add. B, MTC Ex.16. APC's responses thereto are included in Add. B, MTC Ex. 17. Plaintiff's exceptions to APC's objections and responses related to Plaintiff's Interrogatories Nos. 2-19 can be found at Add. B, MTC Ex. 18. Plaintiff's exceptions to APC's objections and responses related to Plaintiff's Document Requests 1-11are included in Add. B, MTC Ex. 19.

**Basis for Appeal:** The Magistrate Judge ordered APC to produce only "all non-privileged documents relating to any complaints of race discrimination and/or harassment and/or retaliation *directed personally at* John Bonzani, Paul Kavanaugh, Brian Gough and/or Brian Kelly from January 1, 2000 to the present," and otherwise denied Plaintiff's Motion to Compel. Add. A at 3 (emphasis added).

Plaintiff appeals the Magistrate Judge's opinion with regard to this request because Plaintiff sought documents related to complaints for all individuals *working under* Bonzani and Kavanaugh, and over whom Gough had human resources responsibility, and Finance Manager Kelly had financial responsibility. The Magistrate Judge's limitation to grant discovery of only those individuals who complained *directly about* Bonzani, Kavanaugh, Gough, and Kelly is clearly erroneous and contrary to law.

The First Circuit in *Cummings v. Standard Register Co*., 265 F.3d 56, 63-64 (1st Cir. 2001) held that the type of evidence sought by Daniels is discoverable. Specifically, the First Circuit held that:

> [E]vidence of a corporate state-of-mind or a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific claim that generated a claim of discriminatory treatment.

*Id.* The Court further held that where a defendant "raised, as part of its defense, its national corporate practices of nondiscrimination, making evidence challenging those claims especially relevant." *Id. See also Roberson v. Allied Signal*, No. 95-CV-0616, 1997 WL 222359, *3 (N.D.N.Y. March 21, 1997) (discrimination of a type not alleged in the case may "lead to relevant information, particularly with respect to the plaintiff's claim that the defendants' reason

for termination was a mere pretext for discrimination."). Thus, even if there are individuals who were not directly supervised by Bonzani or Kavanaugh, the evidence from such other individuals may be used by Daniels to prove the discriminatory atmosphere and corporate state-of-mind. The Magistrate Judge's denial of such evidence directly contradicts the First Circuit's ruling in *Cummings*.

Additionally, Plaintiff's claims of racial harassment, racial discrimination, and retaliation arise in part from his managers' failure to respond to his repeated complaints that he was being racially harassed. In order to establish his claims, Plaintiff needs not only evidence related complaints made *about* his managers, but also complaints of discrimination or harassment about which his managers, and other APC managers, were aware, and their response(s) thereto. For example, if an individual, over whom Kavanaugh had supervisory responsibility and Gough had Human Resources responsibility, complained of race-based harassment by travel manager Bollman, and his personnel file or other file included a memo from Gough stating that, although he realizes that there have been several complaints about how Bollman has treated African-Americans and other minorities, he would not discipline her and would simply notify the complainant and/or EEOC that the allegations were unfounded. Certainly such a document would be relevant to establishing pretext in Daniels' case and would not have been limited to complaints against Kavanaugh, Kelly, or Gough. *See, e.g., United States v. Massachusetts Indust. Fin.* Agency, 162 F.R.D. 410, 413 (D.Mass.1995) (compelling production of evidence of how other individuals were treated by defendant, for it bears on "a determination of whether [defendant] discriminated against [plaintiff]").

Thus, the Magistrate Judge erred in narrowly granting the motion to compel only as to documents pertaining to complaints of discrimination/harassment/retaliation "directed personally at" Bonzani, Kavanaugh, Gough and/or Kelly.

**Request No. 6**. The personnel files or any other file, including but not limited to, Human Resources files, supervisor's files, departmental files, discipline files or other files, by whatever name, containing employment information relating to Seth Daniels, and all those employees identified in response to Interrogatory Nos. 5, 8, 14 and 15.

**Response No. 6:** Defendant objects to Request No. 6 on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. To the extent Request No. 6 seeks documents relating to Plaintiff, Defendant refers Plaintiff to the documents produced in response to Request No. 5. To the extent Request No. 6 seeks documents regarding individuals referred to in Interrogatory Nos. 5,8,14 and 15 other than Plaintiff; Defendant incorporates its responses and objections to such Interrogatories herein by reference. Defendant further objects to Request No. 6 on the grounds that is unduly burdensome and unnecessarily invades the reasonable privacy interests of current and former employees of Defendant.

**Exception:** Defendant's objections are without merit and also are not proper objections. Defendant cannot object based upon privacy reasons. However, in an effort to reach resolution on the dispute regarding the personnel files of other employees, Plaintiff will agree to a protective order that recognizes the confidentiality of such documents. Additionally, Plaintiff was required to take a personality test prior to his employment with APC. No such test was included in the production. This test is directly responsive to request No. 6 and should have been produced. To the extent that such tests were also required of the other individuals for whom personnel files were requested, such documents must also be produced. To the extent that such documents were omitted from the production from the files, please explain why they were not initially produced.

**Supplemental Response No. 6:** APC maintains its objections, though it will produce non-privileged documents responsive to this Request with respect to individuals identified in response to Interrogatory No. 5. Further, while APC maintains its objections to Interrogatory No. 8, APC stated that it was unaware of any employee (other than Plaintiff) who received travel points from an airline or hotel for organizing the use of such airline or hotel by APC employees. APC further maintains its objection to Interrogatory No. 14. As noted in other submissions related to this matter, Plaintiff personally profited from diverting APC employees from the Johnson and Wales Inn in Rhode Island to the Providence Marriott hotel. He devised a direct billing relationship with the Marriott, in direct violation of APC's practices, whereby the Marriott sent the bills to him at his office at APC in East Providence. The Marriott allowed Plaintiff to accrue over 100,000 Marriott Rewards points for his personal account based upon the stays of other APC employees for APC training activities. On March 12, 2004, Christine Bollman received an electronic mail from the Marriott's Director of Sales and Marketing

explaining that Plaintiff had rented a large number of rooms at the Marriott in January and February 2004 for APC events, and that he was awarded over 100,000 points to his personal Marriott Rewards account as a result. Further, the correspondence from the Marriott's Director of Sales and Marketing confirmed that, to the extent Plaintiff received rewards points for the stay of APC employees, the employees themselves were unable also to receive rewards points for their stay at the Marriott. APC is otherwise currently not aware of the identities of any individual responsive to this request. Finally, with respect to Interrogatory 15, APC refers Plaintiff to its letter of November 10, 2006 to you, and the response provided to your exception to APC's answer to that interrogatory.

**Basis for Appeal:** The Magistrate Judge denied Plaintiff's Motion for personnel files with respect to all employees other than Plaintiff himself, holding that "Plaintiff has not established the relevance of production of the complete personnel files of those individuals" involved in the grey marketing and telephone call manipulation schemes (Interrogatory 5), and did not establish the relevance of production of any information pertaining to the individuals from whom Plaintiff allegedly misdirected travel points (Interrogatory 14).

The Magistrate Judge's denial of these records is based solely on relevance. However, the Magistrate Judge did order APC to produce all documents relating to the grey marketing and telephone manipulation schemes (Request Nos. 13 and 14), ruling that "APC's claim of lack of relevance as to these Requests rings hollow." Add. A at 4-5. The personnel files of the individuals involved in these schemes are reasonably calculated to lead to the discovery of admissible evidence because it may provide information to help to establish that the individuals involved in one of these schemes are similarly situated to Daniels. The documents in the personnel files may reveal the departments in which these employees worked, and the supervisors and human resources personnel to whom they reported. The personnel files will also give background information which certainly would be admissible at trial should any of these witnesses be called to the stand. Such information may include any prior discipline, how long

they had worked for the company prior to their terminations, the conditions of their employment, and the conditions of their terminations, such as any severance that was offered.

Further, discovery of personnel records is commonly granted especially in Title VII cases. *See, e.g.*, *Coughlin v. Lee*, 946 F.2d 1152, 1158-59 (5th Cir. 1991) (holding plaintiff was entitled to comparators' personnel files because relevant to question of pretext, and stating "In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files. All or some parts of these personnel files could be central to the plaintiffs' effort to prove pretext.") (collecting cases); *Johnson v. Morris*, 903 F.2d 996, 998 (4th Cir.1990) (pursuant to a protective order, defendant's investigative file and the personnel files of all employees who supplied information during the investigation of plaintiff's alleged misconduct, were produced.); *Mitchell v. Fishbein*, 227 F.R.D. 239, 253 (S.D.N.Y. 2005) (requiring personnel files be produced in an employment discrimination suit); *Barfoot v. Boeing Co.*, 184 F.R.D. 42, 644 (N.D. Ala.1999) (permitting discovery of personnel files in that information within them might relevant for establishing pretext or a prima facie case); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105-06 (E.D.N.C. 1993) (ordering production of personnel files of employees directly implicated by plaintiff because the files contained information which was "clearly relevant" and not otherwise readily available).

Additionally, in a Title VII retaliation case, the court in *Williams v. The Art Institute of Atlanta*, No. 1:06-CV-0285-CC/AJB, 2006 WL 3694649, *6 (N.D. Ga. Sept. 1, 2006) held that "personnel files are generally permitted to be disclosed in discovery . . . for: (1) those employees

whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defense; or (2) those employees whom a plaintiff believes were treated differently from her." *Id.*

The Magistrate Judge clearly erred in failing to compel APC to produce the personnel files related to the grey marketing and phone manipulation scheme.[3]

The Magistrate Judge also denied Plaintiff's Motion to Compel relating to the personnel files of the individuals from whom Daniels' allegedly stole rewards points, the names of whom were requested in Interrogatory No. 14. As explained above, APC alleges that Daniels was fired, in part, for stealing reward points from other employees. In Interrogatory No. 14, Daniels seeks to find out the names of the individuals who attended the training sessions and stayed at the Marriott, which he organized, and to obtain the personnel files of those individuals. The personnel files, including the expense and reimbursement files, would provide the evidence of the individuals who paid for their own hotel rooms and were therefore potentially eligible to receive reward points from the Marriott Hotel. The Magistrate Judge's denial of this discovery was clear error.

**Request No. 7:** Any and all documents relating to discipline of employees including but not limited to any compilation, databases, and or lists of discipline compiled by Defendant.

**Response No. 7:** Defendant objects to Request No. 7 on the grounds that the phrase "relating to discipline," as used therein, is vague and ambiguous. Defendant also objects to this request because it seeks information that is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Read literally, Request No. 7 seeks the production of any and all documents related to any and all disciplinary actions taken by defendant, for any and all reasons, at any time since Defendant was founded. This vague,

[3] The Magistrate Judge denied Plaintiff's request to compel APC to answer Interrogatory No. 5 which seeks the identity of individuals terminated by APC on the basis that Plaintiff's Interrogatory was overly broad and not limited in any way. The Magistrate Judge was mistaken in this regard as will be further explained below, because Plaintiff did limit his request. To the extent that this Court finds in favor of Plaintiff and orders APC to identify the individuals requested in Interrogatory No. 5, the personnel files in this request will be reasonably calculated to lead to the discovery of admissible evidence for the same reasons identified above, and the Magistrate Judge's ruling to the contrary was clear error.

unfocused Request is therefore unduly burdensome and exceeds the permissible scope of discovery.

**Exception:** Defendant's objections are without merit. However, in the spirit of compromise, Plaintiff will agree that its requests for documents relating to discipline of employees is unlimited in time, only to the extent that there are any lists, compilations, and/or databases maintained by APC of such discipline and/or termination. With regard to additional documents relating to discipline, Plaintiff clarifies his request to only those documents that refer to discipline and/or termination and will limit his request in time to those documents dating back to 1995.

**Supplemental Response No. 7:** APC maintains its objections to this Request. As previously noted, this Request calls for APC to produce documents related to all disciplinary actions taken by APC for any reason and that occurred across all divisions of the company. Your attempt to limit this request in time to those documents dating back to 1995 falls well short of the sort of limitation required to enable APC to provide any sort of logical, rational, or coherent response. This vague, unfocused Request remains unduly burdensome and exceeds the permissible scope of discovery. In any event, APC does not maintain any master lists or databases, or any comprehensive compilation of documents, related specifically to discipline or termination.

**Basis for Appeal:** The Magistrate Judge ordered APC to produce "all non-privileged documents relating to discipline of employees where the disciplinary decision was made in whole or material part by John Bonzani or Paul Kavanaugh from January 1, 2000 to the present." Add. A at 4. This ruling is clearly erroneous and contrary to law because it excludes the evidence sought by Daniels of those individuals over whom Brian Gough had human resources responsibility. It also excludes evidence that could be obtained from the employee relations files maintained by APC in two file drawers.[4] No reason was given by the Magistrate Judge for this limitation and APC did not present any credible argument for withholding the evidence. *See Klonoski,* 156 F.3d at 267; *Massachusetts Indust. Fin. Agency*, 162 F.R.D. at 413 (compelling production of evidence of how other individuals were treated by defendant, for it bears on "a determination of whether [defendant] discriminated against [plaintiff]"). In fact, Plaintiff must

[4] Furthermore, this information is not overly burdensome for APC to produce, for Brian Gough testified that the information contained within the employee relations files are maintained in two file drawers in the Providence, Rhode Island office. Add. C, Reply in Support of Motion to Compel ("RMTC") Ex. 9, Gough Dep. at 101-05, 122-

have this information to evaluate and prove his claim that he was treated less favorably than similarly situated employees. *See Klonoski,* 156 F.3d at 267.

The Magistrate Judge clearly erred in refusing Plaintiff access to this easily obtainable, highly relevant information.

**Request No. 8:** All documents reflecting and/or referring or relating to the Marriot Hotel in Providence and/or the Johnson & Wales hotel.

**Response No. 8:** Defendant objects to Request No. 8 on the grounds that it is vague, ambiguous, unduly burdensome, and lacks any temporal limitation. Defendant also objects to this request because it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant will produce documents responsive to this request. Defendant also refers Plaintiff to the documents produced in response to Request No. 5.

**Exception:** Defendant's objections are without merit. Please confirm that all documents responsive to this request have been produced.

**Supplemental Response No. 8:** APC maintains its objections to this Request. In this instance, Plaintiff propounded a vague, overly broad discovery request that is subject to multiple interpretations. In response, APC properly asserted objections, and made a good faith effort to respond based on APC's reasonable interpretation of the Request. Your exceptions suggest that, since there is some reasonable interpretation to this broadly worded request, APC is without the right to respond in this fashion. We disagree. Subject to its objections, APC states that no documents responsive to this request exist in APC's files other than those already produced by Plaintiff.

**Basis for Appeal:** The Magistrate Judge held that Plaintiff "has not established the relevance of the additional documents sought regarding APC employees who attended a large sales meeting and stayed at the Providence Marriott," and therefore denied Plaintiff's Motion. Add. A at 4. The Magistrate Judge's ruling regarding the evidence pertaining the sales meeting in Providence was clearly erroneous because such evidence would assist Plaintiff in establishing

---

125.

pretext. Several APC managers testified that several APC employees stayed at the Marriott Hotel when a large sales meeting was held in the Providence area. [5]

The requested information is relevant and calculated to lead to the discovery of admissible evidence, because Plaintiff was terminated, purportedly, for organizing a training session at this very same hotel. Documents related to the sales meeting held at the Marriott will provide information regarding the employees who attended the meeting, who organized the meeting, whether and why the Marriott was approved as a proper location for the sales meeting, whether or not a direct billing system was in place to pay for the hotel rooms reserved for this meeting, whether the organizer of the meeting received any sort of incentive for selecting the Marriott for this meeting, and how much was paid for the hotel rooms at this meeting. All of this information is necessary to establish whether and why the Marriott was suitable for some events but not others, and whether and why Plaintiff was terminated for allegedly receiving an organizer's incentive and establishing a direct billing arrangement with the Marriott, while other employees were not. This information is relevant and important to the proof of Plaintiff's claims that his treatment was disparate, and the Magistrate Judge erred in refusing to compel APC to produce such evidence. *See Klonoski,* 156 F.3d at 267; *Massachusetts Indust. Fin. Agency*, 162 F.R.D. at 413.

**Request No. 10:** All documents, including but not limited to all bills, received by the Finance Department related to training sessions held during the months of January and February 2004.

---

[5] Brian Kelly, Doug Radamacher, and John Bonzani all testified about a large sales meeting or conference that took place in Providence. Mr. Kelly and Mr. Radamacher testified that APC employees stayed at the Marriot during that conference. See Add. B Ex. 12, Kelly Dep. at 127; Ex. 11, Radamacher Dep. at 50, Ex. 13, Bonzani Dep. at 61-64; and Ex. 21.

**Response No. 10:** Defendant objects to Request No. 10 on the grounds that it is unduly burdensome and seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant refers Plaintiff to the documents produced in response to Request Nos. 3 and 8.

**Exception:** Defendant's objections are without merit. Please confirm that all documents responsive to this request have been produced.

**Supplemental Response No. 10:** Subject to its objections, APC produced all responsive, nonprivileged documents in its possession, custody, or control.

**Basis for Appeal:** The Magistrate Judge held "Plaintiff has not established the relevance of business expense documents from APC employees attending the January/February 2004 training sessions coordinated by him. Plaintiff argues that such documents are relevant to the allegation that he "stole reward points" from APC employees. However, Plaintiff has failed to establish the relevance of this specific allegation or that the request seeks relevant documents or could reasonably lead to admissible evidence." Add. A at 4.

Plaintiff did establish the relevancy of these documents as well as how the documents were reasonably calculated to lead to the discovery of admissible evidence. APC has not produced the expense and reimbursement files for the individuals who attended the training sessions from whom Daniels allegedly stole reward points. The expense files will reveal the names of the individuals from whom Daniels allegedly stole travel points, and will allow Plaintiff to prove that, in fact, he did not prevent individuals from paying for their own hotel rooms and thus collecting travel points. No legitimate objection was raised to warrant the withholding of this most basic information.

The importance and relevance of the requested documents cannot be overstated. They are directly related to Plaintiff's claims and APC's defenses. APC claims Defendant stole reward

points from other employees, at least in part by establishing a direct billing system for use during the training session. The business expense documents from the training sessions that formed the alleged basis for Plaintiff's termination will show whether, in fact, such a direct billing was in place and if any attendees selected to pay for their rooms themselves. Payment for the hotel rooms by the individuals would demonstrate that they were eligible to receive rewards points of their own (which, of course, would support Plaintiff's assertions that no reward points were stolen at all). This evidence goes to the very heart of Plaintiff's claims, and is essential for Plaintiff to establish that APC's proffered legitimate non-discriminatory reason was pretextual. The Magistrate Judge's holding that these documents were not relevant is erroneous and clearly contrary to the law, which provides that Plaintiff is entitled to the basic information fundamentally necessary to "narrow and clarify the basic issues between the parties," and to ascertain "the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Klonoski,* 156 F.3d at 267.

**Request No. 15.** Produce all documents which reflect violations of APC policies, practices and/or procedures by any APC employee since 1997 where such employees were not terminated by APC for the stated violations.

**Response to No. 15:** Defendant objects to Request No. 15 on the ground that it seeks information that is not relevant to the subject matter of this law and is not reasonably calculated to lead to the discovery of admissible evidence. The Company has employed tens of thousands of employees at locations throughout the world since January 1, 1997. Read literally, Request No. 15 seeks documents regarding each and every alleged violation of Company policies, practices, and/or procedures committed by each and every one of those employees during the preceding nine-plus years. Thus, because Request No. 15 seeks documents regarding alleged violations of Company policies, practices and/or procedures that are remote in time from Plaintiff's employment with the Company, it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery. Further, because Request No. 15 seeks documents regarding all such violations, and does not attempt to limit the scope of discovery to those employees who might arguably be similarly situated to Plaintiff, it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery.

**Basis for Appeal:** The Magistrate Judge ordered APC to produce "all non-privileged documents related to employee violations of APC policies, practices, and/or procedures involving dishonest or unethical behavior where the employees were not terminated and such decision not to terminate was made in whole or material part by John Bonzani or Paul Kavanaugh from January 1, 2000 to the present," and otherwise denied Plaintiff's motion. Add. A at 5.

Plaintiff maintains that he is entitled to all violations of dishonest or unethical behavior where the employees were not terminated and where the employees worked under the supervision of Bonzani, Kavanaugh, and/or over whom Gough had human resources responsibility. Additionally, Plaintiff is entitled to all such violations where there is evidence in the employee relations files maintained in the two file drawers. Add. B, MTC Ex. 9, Gough Dep. at 101-05, 122-125. The Magistrate Judge's denial of the broader request was clearly erroneous and contrary to law.

**Request No. 16.** Produce all documents sent to and/or received from the Marriott Hotel in Providence Rhode Island, including, but not limited to all bills from the Marriott and payments made by APC to the Marriott Hotel in Providence Rhode Island since 1998.

**Response No. 16:** Defendant objects to Request No. 16 on the grounds that it is unduly burdensome, seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. To the extent this Request seeks documents regarding the Company's relationship with the Marriott Hotel in Providence, Rhode Island that pre-date or post-date Plaintiff's employment with the Company and do not concern hotel reservations made at such hotel by, or at the direction of, Plaintiff, it seeks documents that are not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome to locate and produce. Subject to and without waiving the foregoing specific objections, and the general objections set forth above, Defendant refers Plaintiff to the documents previously produced by Defendant, including documents Bates Nos. 373-425 and 521-34.

**Basis For Appeal:** The Magistrate Judge denied Plaintiff's Motion to Compel APC to produce this information, stating only that "Plaintiff has not established the relevance of the documents" sought in the request. Add. A at 5. Plaintiff respectfully asserts that this information is plainly relevant. The billing information will establish how often APC employees stayed at the Marriott and what rates were paid by them. APC asserts it was improper and overly expensive for Plaintiff to organize a conference at the Marriott, there it follows that if other employees regularly stayed at the Marriott in the past, and paid as much or more than the rate Plaintiff negotiated, than APC's assertion that Plaintiff acted improperly would help to demonstrate pretext. Plaintiff is entitled to explore this relevant information because it relates to his claims and APC's defenses. The Magistrate Judge clearly erred in refusing to compel APC to produce the evidence.

**Request No. 17.** Produce all documents referring or related to the use of any hotels by APC and/or its employees on business for APC, which hotel at the time, was not on an APC preferred hotel list.

**Response No. 17:** Defendant objects to Request No. 17 on the ground that it is unduly burdensome. Request No. 17 contains neither a temporal nor a geographic limitation. As stated in response to Request No. 15, the Company has employed tens of thousands of individuals across the world since 1997 alone. Thus, read literally, Request No. 17 purports to require the Company to: (a) identify each and every employee who ever stayed at a hotel on Company business anywhere in the world since the Company was founded, (b) determine which hotels were on the Company's preferred list of vendors at the time of each such hotel stay, and (c) cross-reference each and every hotel reservation with the relevant list of preferred vendors to determine whether, for each occasion, each such employee did not stay at a hotel on such list. Therefore, Request No. 17 is unduly burdensome and exceeds the permissible scope of discovery. Further, to the extent Request No. 17 seeks documents that pre-date or post dates Plaintiff's employment with the Company and do not concern hotel reservations made by, or at the direction of, Plaintiff, it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. In addition, the question of whether an employee booked, or the Company approved, a reservation at a hotel that was not one of the Company's preferred hotels is wholly irrelevant to this case: the Company terminated Plaintiff's employment because he wrongfully accepted travel or award points from the Providence Marriott in violation of APC's policies, not because he utilized a

non-preferred hotel.

**Basis for Appeal:** The Magistrate Judge denied Plaintiff's Motion to Compel APC to produce this information, again stating only that "Plaintiff has not established the relevance of the documents" sought in the request. Add. A at 5. To the contrary, this request seeks information directly bearing on one of APC's articulated reasons for terminating Plaintiff – that he chose to book rooms at the Marriott, a non-preferred hotel, which cost the company money. Information on what other hotels were used by APC employees, and the rates they charged, will specifically address whether and how often other employees booked rooms at non-preferred hotels and the rates they were paying. If other employees had, indeed, booked rooms, or groups of rooms, at non-preferred hotels at rates higher than that negotiated by Daniels at the Marriott – and not terminated – then APC's proffered reason is both false and pretextual. Plaintiff should be entitled to explore and evaluate this potential evidence of pretext. *See, e.g., Hollander,* 895 F.2d at 84-85.

Therefore, this information is plainly relevant and easily accessible, and the Magistrate Judge clearly erred in refusing to order APC to produce the evidence. *See Klonoski,* 156 F.3d at 267; *Massachusetts Indust. Fin. Agency*, 162 F.R.D. at 413.

### C. APC Should Have Been Required to Respond to Plaintiff's Interrogatories Seeking Information That is Reasonably Calculated to Lead to the Discovery of Admissible Evidence

APC refused to answer several of Plaintiff's Interrogatories, and the Magistrate Judge refused to compel APC to do so. Plaintiff should have access to the evidence requested in the following Interrogatories:

**Interrogatory No. 5.** Identify each person who has been terminated from employment by APC,

including but not limited to the employees identified in section I. B. of Defendant's letter of April 6, 2005 to the EEOC, and APC's Exhibit A to APC's letter of June 24, 2005 to the EEOC, and describe fully and in detail the circumstances leading to and the reasons for such terminations.

**Response No. 5:** Defendant objects to Interrogatory No. 5 on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Interrogatory No. 5 contains no temporal limitation, it purports to seek information regarding every employee ever terminated by the Company since the date it was founded, and therefore it is overly broad, unduly burdensome, and exceeds the permissible scope of discovery. Further because Interrogatory No. 5 seeks information regarding all employees who ever have been terminated by the Company, and does not attempt to limit the scope of discovery to those employees who might arguable be similarly situated to Plaintiff, it is overly broad, unduly burdensome and exceeds the permissible scope of discovery. Defendant further objects to Interrogatory No. 5 because it seeks confidential information regarding Defendant's current or former employees. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant states that it is willing to provide Plaintiff with the names and titles of (a) the individuals identified in section I.B. of Defendant's letter of April 6, 2005 to the EEOC, and (b) the individuals identified in Exhibit A to Defendant's letter of June 24, 2005 to the EEOC, provided that the parties agree the terms of, and the Court approves, an appropriate confidentiality agreement and stipulation. Further responding, Defendant states that the reasons for the termination of such individuals are set forth in the above-referenced correspondence from Defendant to the EEOC.

**Exception:** Plaintiff takes exception to the defendant's objections. However, in the spirit of compromise, Plaintiff agrees to a temporal limitation dating back to 1995. However, Plaintiff requests that in addition to identifying the individuals who were terminated, Plaintiff again requests that Defendant describe fully and in detail the circumstances leading to, and the reasons for, such terminations.

**Supplemental Response No. 5:** APC maintains its objections to Interrogatory No. 5. As you know, however, APC already produced (subject to the parties' agreement regarding confidentiality) documents (Bates Nos. APC 568-627) identifying the employees identified in Section I.B. of APC's letter of April 6, 2005 to the EEOC and Exhibit A to APC's letter of June 24, 2005 to the EEOC. The only individual listed on Exhibit A who was not identified in the documents previously produced is Rainer Waigle. Mr. Waigle worked outside of the United States at the time of his departure from APC. APC has sufficiently stated the reasons for the termination of these employees in the referenced correspondence to the EEOC. Plaintiff's request for information related to employees beyond those set forth in the list is objectionable on the bases set forth in APC's original response. Plaintiff's attempt to provide a temporal limitation for its request in your September 29, 2006 letter is not sufficient to address these objections.

**Basis For Appeal:** The Magistrate Judge held, "[t]his Interrogatory, on its face, seeks the identity of *every person ever terminated* from employment by APC for any reason, and seeks a full and detailed description of the circumstances," and sustained APC's objection that the interrogatory was "overly broad and unduly burdensome." Add. A at 6 (emphasis added). Respectfully, the Magistrate Judge erred when he held that there were no limitations in this request. Plaintiff limited the request, in its exception to APC's objections, "to those individuals terminated since 1995," and further limited the request, in the Motion to Compel, to "terminations from 1998 to the present for those employees over whom Brian Gough has had human resources responsibility, and/or who worked under the supervision of John Bonzani and/or Paul Kavanaugh." Add. B, MTC at 27.

Discovery regarding past terminations is regularly permitted by courts. For example, the Seventh Circuit held that in a discrimination suit, discovery of previous employees who were discharged should have been allowed to demonstrate a past history of terminations, which is relevant to the intent of the defendant in terminating the plaintiff. *Saltzman v. Fullerton*, 661 F. 2d 647, 655 (7th Cir. 1981). The Court instructed the district court, on remand, to "follow a liberal approach designed to ferret out all relevant facts about discharges . . . . " *Id.*

With these limitations, the request is not overly broad and the Magistrate Judge's ruling was clear error.

**Interrogatory No. 11.** Identify all hotels in Rhode Island used for lodging, conferences, trainings, or other events by APC and/or its employees and identify all policies, practices, procedures, or directives of APC regarding the use of such hotels for lodging, conferences, trainings, or other events.

**Response No. 11:** Defendant objects to Interrogatory No. 11 on the grounds that it is vague and ambiguous. Defendant further objects to Interrogatory No. 11 on the grounds that it seeks

information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence. Because Interrogatory No. 11 contains no temporal limitation, it purports to request information regarding all hotels ever used by any Company employee at any time, since the date the Company was founded, for lodging, conferences, training or other events and, therefore, it is overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, and the general objections set forth above, Defendant states that, in 2004, the Company had negotiated special rates with, and/or encouraged employees to stay at, the following hotels in Rhode Island: (1) the Radisson Airport Hotel in Warwick; (2) the Sheraton Providence Airport Hotel in Warwick; (3) the Fairfield Inn in Warwick; (4) the Homestead Studio Suites Hotels in Warwick; (5) the Hotel Viking in Newport; (6) the Newport Harbor Hotel & Marina in Newport; (7) the Johnson & Wales Inn in East Providence; and (8) Extended Stay America in East Providence. Pursuant to Fed. R. Civ. P. 33(d), additional information responsive to this interrogatory can be derived or ascertained from the documents Defendant produced in response to Plaintiff's Request for Production of Documents, including without limitation documents Bates Nos. APC 370-371.

**Exception:** Plaintiff will limit the temporal scope of this Interrogatory. Please provide all responsive information to this Interrogatory dating back to 2000. No other objections in this Interrogatory have merit. A full supplementation of this response including all policies, practices, procedures and directives regarding the use of such facilities must be made.

**Supplemental Response No. 11:** In response to Plaintiff's willingness to limit temporally this interrogatory, APC attempted to identify the hotels in Rhode Island with which it negotiated special rates and /or where it encouraged employees to stay from 2000 through 2004. In addition, APC already supplemented its response to this Interrogatory by producing the APC Travel Policy dated March 1, 2003 (Bates Nos. APC 543-567). As we discussed, APC has reviewed its computer records to determine whether there is a readily-available master record of all hotels in Rhode Island at which APC employees have stayed since 2000. No such record exists. APC does not intend otherwise to supplement its response to this Interrogatory at this time.

**Basis for Appeal:** The Magistrate Judge held that "This Interrogatory, on its face, seeks the identity of all hotels used by APC (and/or its employees in Rhode Island) at any time and for any purpose, and all policies, practices, procedures, or directives of APC regarding the use of such hotels," and therefore sustained APC's objection that the interrogatory was "overly broad and unduly burdensome." Add. A at 6. Again, the Magistrate erred when he held that Plaintiff had not limited his request. Plaintiff did limit his Interrogatory in his exception to APC's objections, to hotels dating back to 2000. With this temporal limitation, Plaintiff's request is

neither overly broad nor irrelevant. If Plaintiff were terminated for improperly booking a hotel for a training, he should be entitled to information regarding APC's use of other hotels for lodging, training, conferences, and other events, so that he may prove that his actions were not, in fact, different from the practices at APC.

APC produced a partial list of Rhode Island hotels with which it had "negotiated special rates and/or where it encouraged employees to stay from 2000-2004." On December 18, 2006, after Plaintiff filed his Motion to Compel, Defendant belatedly produced documents which identified the number of rooms used by APC employees at various hotels, including the Marriott and the Johnson & Wales, and the average rates charged for the rooms. Add. C, RMTC Ex. 15. These documents were clearly responsive to this request and clearly existed when APC represented otherwise.

APC argued that because it provided this belated discovery regarding the hotel use to Plaintiff, no further discovery is necessary. Dkt. No., 27, APC Mem. at 23-24. But additional discovery is necessary for several reasons. First, the charts produced do not indicate the actual rates paid at the hotels, but instead merely list the average rates. Additionally, when producing the hotel charts for the years 2005 and 2006, APC stated that it "reserved the right to object to the competency" of the documents. Add. C, RMTC Ex. 16, email of January 5, 2007. While Plaintiff finds it perplexing that APC would object to its own document in this manner, such a potential objection requires that APC produce the documents from which the charts were compiled.

Still other unproduced documents that are responsive to this request and are reasonably calculated to lead to the discovery of admissible evidence relate to employee complaints about

the Johnson & Wales Hotel. Other such documents include all of the expense reimbursement requests and approvals for the hotel stays at the Marriott, and in particular, the hotel stays for the large sales meeting. Further, all documents related to the hotel stays at the Marriott for the large sales meeting, including documents indicating who organized and approved the hotel stays at the Marriott after Daniels was terminated, are responsive and relevant. These documents would demonstrate that, despite APC's arguments that Daniels was terminated, in part, for arranging hotel rooms at the Marriott which cost the company money and which threatened APC's relationship with the Johnson & Wales, the very same reservations were again made for the large sales meeting and yet no one was disciplined, let alone terminated, for making such hotel reservations.

While APC did not specifically allege that it would be burdensome to produce the documents responsive to this request, it cited *Archer Daniels Midland Co., v. Aon Risk Services, Inc.*, 187 F.R.D. 578 (D. Minn. 1999), for the proposition that discovery may be limited where the benefits to obtain the documents are outweighed by the burdens and expenses involved. Dkt. No. 27, APC Mem. at 24. However, the Fifth Circuit has held that discovery should be produced despite a burden where the burden does not outweigh the relevance of the information and utility to the plaintiff. *Burns v. Thiokos Chem. Corp*., 483 F.2d 300 (5th Cir. 1973). *See also Clarke v. Mellon Bank*, No. 92-CV-4823, 1993 WL 54435 (E.D. Pa. 1993), in which the court held that even though document requests were likely to call for the production of thousands of personnel files and would cause burden, "unless Defendant demonstrated undue burden, the documents must be produced because they may provide "circumstantial evidence supporting [] [the plaintiff's] argument of pretext." *Id.* at 2. APC has not explained how production of documents

responsive to this request is burdensome or expensive. In fact, such an argument would be difficult to make because APC must have reviewed such documents in order to create the belatedly produced charts included in Add. C, RMTC Ex. 15.

Additionally, Plaintiff should be entitled to information regarding all Rhode Island hotels used from at least 2000 to the present. It is generally recognized that an individual who has been terminated is entitled to discovery beyond the date of his termination. *See, e.g.*, *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 448 (D. Minn. 1997) (allowing discovery into the period two years after termination); *Hicks v. Arthur*, 159 F.R.D. 468, 471 (E.D. Pa. 1995) (allowing discovery to extend to the period two years after the tenure of the plaintiffs); *Obiajulu v. City of Rochester,* 166 F.R.D. 293, 296 (W.D.N.Y.1996) (discovery allowed up until the time the case was heard). APC should not be allowed to continue to refuse to produce this relevant information. The Magistrate Judge's ruling was clearly erroneous and contrary to law.

**Interrogatory No. 14.** Identify each of the individuals from whom Plaintiff allegedly misdirected Marriott travel points while employed by APC and provide the home address of each such individual.

**Response No. 14:** Defendant objects to Interrogatory No. 14 on the grounds that it is vague, ambiguous, unduly burdensome, and seeks confidential information regarding current and/or former Company employees. Defendant further objects to Interrogatory No. 14 on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

**Exception:** Defendant's objections are without merit. Defendant's complete failure to answer this interrogatory is in violation of the rules. Defendant must supplement this answer and provide a complete and responsive answer.

**Supplemental Response No. 14:** APC maintains its objections to this Interrogatory. As noted in other submissions related to this matter, Plaintiff personally profited from diverting APC employees from the Johnson and Wales Inn in Rhode Island to the Providence Marriott hotel. He devised a direct billing relationship with the Marriott, in direct violation of APC's practices, whereby the Marriott sent the bills to him at his office at APC in East Providence. The Marriott allowed Plaintiff to accrue over 100,000 Marriott Rewards points for his personal account based

upon the stays of other APC employees for APC training activities. On March 12, 2004, Christine Bollman received an electronic mail form the Marriott's Director of Sales and Marketing explaining that Plaintiff had rented a large number of rooms at the Marriott in January and February 2004 for APC events, and that he was awarded over 100,000 points to his personal Marriott Rewards account as a result. Further, the correspondence form the Marriott's Director of Sales and Marketing confirmed that, to the extent Plaintiff received rewards points for the stay of APC employees, the employees themselves were unable also to receive reward points for their stay at the Marriott.

**Basis for Appeal:** The Magistrate Judge held that this interrogatory did not seek relevant information, and therefore denied the Motion to Compel. Add. A at 6, 4. APC reaffirmed in its Supplemental Response to No. 14 that it terminated Plaintiff for allegedly receiving awards points based on the hotel stays of other APC employees, and due to Plaintiff's actions, the employees themselves were "unable also to receive reward points for their stay at the Marriott." Plaintiff should be entitled to obtain this evidence refuting this defense. Evidence from the employees who stayed at the Marriott regarding whether they were unable to receive such reward points is directly relevant to the claims and defenses of this case. Plaintiff should not be barred from exploring this highly relevant information. APC attempts to preclude access to this information because of its potentially damaging nature, in flagrant disregard for the spirit of the Federal Rules which seek to ensure that claims are tried on their merits. The Magistrate Judge clearly erred when it held this information was irrelevant and refused to compel APC to produce the evidence.

**Interrogatory No. 18**. Describe all complaints made by APC employees regarding the Johnson & Wales Hotel.

**Response No. 18:** Defendant objects to Interrogatory No. 18 on the ground that it is so vague and ambiguous as to be unintelligible. To the extent Interrogatory No. 18 requests information regarding complaints made by Company employees that were unrelated to Plaintiff, Defendant objects to Interrogatory No. 18 on the ground that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence.

**Exception:** Defendant's objections are without merit. Plaintiff requests that APC fully respond to this Interrogatory.

**Supplemental Response to No. 18:** APC maintains its objections to this Interrogatory. Plaintiff failed to provide a temporal limitation on this request. Further, this Interrogatory is unclear regarding the nature of the complaint, the source(s) of the complaint, or to whom any such complaint might be directed (the hotel? to APC officials?). Finally, to the extent information regarding "complaints" is available, it is readily available to Plaintiff, and has been produced in this case.

**Basis for Appeal:** The Magistrate Judge held that "Plaintiff did not establish the relevance of complaints made by APC employees regarding the Johnson & Wales Hotel." Add. A at 7. To the contrary, this information is directly related to Plaintiff's assertion that his decision to book the training at the Marriott was based in part on a recognition that the Johnson and Wales was not a satisfactory hotel and did not provide all of the necessary services and amenities for the training, such as high speed internet access. APC's knowledge of any such complaints would undermine its argument that the training should have been held at the Johnson & Wales, as opposed to the Marriott. This information is clearly relevant and discoverable, and the Magistrate Judge clearly erred in failing to compel its production.

## III. CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Magistrate Judge's Order denying in part his Motion to Compel be overturned and his Motion to Compel be granted as requested herein.

Dated: March 2, 2007.

Respectfully submitted,

/s/ Noelle Clapham______________
Noelle K. Clapham (R.I. Bar #5338)
Law Office of Noelle Clapham
24 Salt Pond Road
Suite A-8
South Kingston, RI 02879
claphamlaw@verizon.net
(401) 783-3600

Lori B. Kisch (MD Fed Bar # 25781)
Wiggins, Childs, Quinn & Pantazis PLLC
2031 Florida Ave., NW, Suite 300
Washington, DC 20009
lkisch@wcqp.com
(202) 263-3681

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Appeal from the Magistrate Judge's Memorandum and Order Denying in Part Plaintiff' Motion to Compel, Memorandum in Support thereof, and addenda were filed electronically on this 2nd day of March, 2007, and will be served upon all counsel via the court's electronic filing system.

/s/ Noelle Clapham