LITTLER MENDELSON®
A PROFESSIONAL CORPORATION

ARIZONA
CALIFORNIA
COLORADO
DISTRICT OF COLUMBIA
FLORIDA
GEORGIA
ILLINOIS
MASSACHUSETTS
MINNESOTA
NEVADA
NEW JERSEY
NEW YORK
NORTH CAROLINA
OHIO
PENNSYLVANIA
TEXAS
WASHINGTON

August 2, 2005

Adam P. Forman
Direct: 617.378.6007
Direct Fax: 617.737.0052
aforman@littler.com

Edith Kessler, Investigator
Equal Employment Opportunity Commission
Boston Area Office
John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203

Re: ***Seth Daniels v. American Power Conversion Corp.***
***EEOC Charge No. 161-2005-00257***

Dear Ms. Kessler:

This letter responds to your request, made during our telephone conversation on July 27, 2005, for a brief summary of American Power Conversion Corporation's position concerning Seth Daniels' misappropriation of Marriott Rewards points earned by other APC employees. The evidence presented unequivocally demonstrates that APC acted without discriminatory animus when it terminated Daniels after learning he had arranged to take these points for himself. A no probable cause finding is warranted.

**1. APC Unravels Daniels' Misconduct**

APC's travel manager, Christine Bollman, was unaware that Daniels had devised a relationship with the Marriott hotel in downtown Providence until the Johnson and Wales Inn called her. The hotel asked Bollman whether there was a problem with its service because the business it received from APC had dropped precipitously. The sudden and significant downturn in the use of the Johnson and Wales Inn surprised Bollman.

The Johnson and Wales Inn was one of APC's preferred providers because the hotel offered an attractive incentive program that enabled the Company to secure reduced rates and to participate in an awards program for which it received direct credit. Pursuant to this program – called "Corporate Inn-Centives" – APC negotiated a special rate for guest rooms and it received points for each room used by one its employees. Attached as Exhibit 1 is a copy of the Rate Agreement APC entered into with the Johnson and Wales in January 2004, which was based on the assumption that the Company would use a minimum of 350 guest rooms. The Corporate Inn-Centives program awarded APC (as opposed to Company employees) one point for each guest room used by a Company employee. If APC accumulated a sufficient number of points, it would receive awards. By way of example, in the past, APC has used the awards to purchase gift certificates and other items to raffle off at the Company holiday

party. Attached as Exhibit 2 is a description of the Johnson and Wales Corporate Inn-Centives program.

Bollman decided to find out why APC employees were suddenly no longer using the Johnson and Wales Inn. Because Daniels had in the past expressed a preference for Marriott hotels for his personal travel, Bollman suspected that Daniels had directed the APC employees traveling to Providence for training to the Marriott. Bollman initially questioned Daniels as to whether he was conducting offsite training at the Marriott.[1] Daniels misled Bollman and claimed that he was not using the Marriott. Attached as Exhibit 3 is an e-mail exchange between Daniels and Bollman on this topic dated February 6 and 9, 2004. In March, however, Bollman learned from the Marriott that an APC training had in fact taken place at that hotel and that the APC employees attending the training also stayed at the hotel. Attached as Exhibit 4 is an excerpt from a Marriott invoice indicating that an "APC Training" took place between February 8 and 13, 2004.

Even more troubling, Bollman learned that close to 300 room nights were rented to APC employees at the Marriott in January and February 2004 and that points earned from the use of those rooms under the Marriott Rewards program were credited to Daniels' personal account. Bollman obtained this information from Scott Barger, the Director of Sales and Marketing at the Marriott in downtown Providence. Bollman asked Barger what arrangement the hotel had with APC, to whom the bills were sent, whether Daniels received Marriott Rewards points, and, if so, how many Marriott Rewards points Daniels had earned. In an e-mail dated March 12, 2004, Barger explained to Bollman that (i) the invoices for stays at the downtown Providence Marriott were sent to Daniels at his office at APC's East Providence, RI facility; (ii) APC employees had rented 116 "room nights" in January 2004 and 180 "room nights" in February 2004; and (iii) Daniels had earned "a little over 100,000 points" in the first two months of 2004 alone in his personal account. Attached as Exhibit 5 is the e-mail from Scott Barger. *Daniels has not denied any of these allegations in his submissions to the EEOC.*

It was only after Bollman received Barger's e-mail on March 12, 2004 that APC understood that Daniels, in his position as the training and development manager for APC's Global Services group, had directed APC employees to stay at a hotel so that he could earn points for his personal Marriott Rewards account based on the travel of these other employees. It was also at this point that Bollman confirmed Daniels had misled her about the location of the offsite training. The Company reasonably determined that Daniels' behavior was unethical self-dealing and terminated his employment immediately.

[1] Pursuant to the terms of the Marriott Rewards program, the points should have been credited to each employee staying at the hotel. If, however, Daniels was going to make some kind of special arrangement with the Marriott, it should have been to credit the points to APC.

### 2. APC Is Aware of No Other Employee Who Engaged in Misconduct Related to Travel Points.

APC has never denied that employees may collect points for their personal accounts based on their own stays at the Marriott or for their own travel. Daniels' behavior, however, went far beyond merely earning points based on his own corporate travel expenses. Although APC did not have a policy specifically prohibiting its employees from stealing travel points from other employees (or from the Company), an employer is not required to draft a policy for every type of conduct that it prohibits. An employer is entitled to expect that its employees will not engage in unethical self-dealing or theft without expressly telling them that it is unacceptable to do so.

Moreover, based on the Company's past experience, instituting a policy specifically prohibiting the theft of travel points of other employees was not necessary. APC is not aware of any employee other than Daniels who arranged to earn points for his or her own personal account based on the travel of other APC employees.

### 3. Marriott Rewards Points Are Valuable.

Significantly, the Marriott Rewards points Daniels received through his scheme are valuable. The Marriott Rewards program is a "frequent traveler program." Attached as Exhibit 6 are materials concerning the Marriott Rewards Program. Rewards program members "can earn points or miles" by staying at one of over 2,400 participating Marriott brand hotels. (Exhibit 6, p. 1 of 7). Members earn a certain number of Marriott Rewards points for every dollar they spend at the hotel. (Exhibit 6, pp. 1 of 7 through 3 of 7). For example, members earn 10 points per dollar spent at Marriott Hotels & Resorts. (Exhibit 6, p. 3 of 7). Members also can earn 3 points per dollar spent when they "hold a qualified meeting or event at" participating Marriott hotels. (See Exhibit 6, page 3 of 7).[2]

In return, Rewards program members can redeem the Rewards points they earn for free stays at Marriott hotels and partner chains around the country or for free airline travel on

[2] Daniels contends that John Bonzani, his direct supervisor at APC, told him that he had collected points based on the travel of other employees as a "meeting organizer." Not only does Bonzani categorically deny ever having received any sort of frequent travel points based on the travel of other APC employees as a meeting organizer or having told Daniels that he did so, Bonzani's position and duties at APC did not and do not generally entail arranging or organizing travel or meetings for other employees. Thus, it is simply not credible that Bonzani would have made such a ridiculous claim to Daniels.

Moreover, while Daniels purports to have collected Marriott Reward points as a meeting organizer, it is clear that Daniels collected points at the Marriott for hotel rooms rented for the lodging for APC employees he was in charge of training. The invoices from the Marriott plainly reflect this as well. A selection of invoices from the Marriott for the "APC Training" Master Account reveals that a number of hotel rooms were rented in February 2004. These invoices are attached hereto as Exhibit 4. Thus, even were it true that Bonzani told Daniels it was acceptable for him to collect points as a meeting organizer (and Bonzani did not), Daniels' argument is flawed because he was largely collecting points for rooms to lodge the employees and not for the training meetings.

participating carriers. (Exhibit 6, page 2 of 7). Marriott Rewards points can also be redeemed for vacation packages, cruises, car rentals, theme park passes, merchandise and gift certificates, among other things. (Exhibit 6, page 2 of 7). A free hotel stay can be had for as few as 7,500 points. (Exhibit 6, page 1 of 1).

To put this in perspective, after just two months of his scheme, Daniels earned over 100,000 points, which, at the rate of 7,500 points per night, he could have redeemed for 13 nights of free lodging at a participating Marriott hotel. These points did not belong to Daniels and it is not unlawful to punish him for his unethical and underhanded behavior.

**Conclusion**

For the foregoing reasons and those stated in APC's prior submissions, the Company requests that the Commission issue a finding of lack of probable cause.

Very truly yours,

Adam P. Forman

APF:vfm
Attachments