***Document Electronically Filed***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SETH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION,<br><br>Defendant. | ) | Civil Action No: 05-00459-ML-LDA |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OPPOSITION TO <u>PLAINTIFF'S APPEAL OF THE MAGISTRATE JUDGE'S ORDER</u>**

Defendant American Power Conversion Corporation ("APC" or the "Company") opposes plaintiff Seth Daniels' appeal of the Memorandum and Order (the "Order") in which Magistrate Judge Almond denied in part, and granted in part, Daniels' Motion to Compel. Daniels' appeal should be denied because the Magistrate properly rejected Daniels' attempts to compel the production of information that is entirely irrelevant to his claims of racial discrimination, harassment, and retaliation.

## I. BACKGROUND[1]

In March 2004, APC discovered that Daniels had booked almost 300 rooms at the Providence Marriott in January and February 2004, instead of at one of the other Providence-area hotels where APC had negotiated a preferred rate. (SUF ¶¶ 49-50, 63, 66-67). The Company also learned that Daniels himself *benefited* financially from his use of the Providence Marriott:

[1] The facts of this case are set forth more fully in the memorandum in support of APC's motion for summary judgment and the related documents submitted in connection with such motion, including the Statement of Undisputed Facts ("SUF").

he received over 100,000 valuable Marriott Rewards points for his personal account based upon the stays of other APC employees for APC training activities. (SUF ¶¶ 78-82).

Paul Kavanaugh, Daniels' ultimate supervisor,[2] and Brian Gough, APC's director of human resources, concluded that Daniels' receipt of Marriott Rewards points constituted a form of kickback from the Providence Marriott, a *quid pro quo* in exchange for booking rooms there instead of at other hotels. (SUF ¶¶ 83-84, 94-97). Kavanaugh and Gough terminated Daniels' employment because of this self-dealing.

Daniels subsequently filed this lawsuit, claiming, principally, that he was terminated because of his race. In the course of discovery, Daniels served 37 requests for production of documents, 25 interrogatories, and four subpoenas duces tecum. He also took the depositions of six current or former APC employees and three third-party witnesses.

Almost one full month after the close of discovery, and on the very last day on which such motions could be filed, Daniels filed a motion to compel additional responses to thirteen requests for production of documents and five interrogatories. In support of his motion, Daniels filed a 32 page memorandum (with 272 pages of exhibits) and a 42 page reply (with 115 pages of exhibits) to APC's opposition.

After reviewing these voluminous filings, and conducting an extensive hearing, Magistrate Judge Almond denied Daniels' motion in part and granted it in part. In summarizing his analysis, the Magistrate "conclude[d] that Plaintiff's discovery requests are largely overbroad and/or Plaintiff has not shown that the information is relevant to a claim or defense in this action." Order at p. 3. Daniel now appeals this decision, asking the Court to overturn the vast majority of the Magistrate's decisions.

[2] Daniels' immediate supervisor was John Bonzani. Bonzani reported directly to Kavanaugh.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 72(a) provides that a district court may overturn a magistrate judge's order on a nondispositive motion only if such order was "clearly erroneous or contrary to law." An order is clearly erroneous only if the Court, "after scrutinizing the entire record . . . form[s] a strong, unyielding belief that a mistake has been made." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999); Ungar v. Palestinian Auth., 325 F. Supp. 2d 15, 25 (D.R.I. 2004) ("A determination is 'clearly erroneous' when . . . the court, after reviewing all the evidence, is left with the definite and firm conviction that the magistrate judge made a mistake."). "In conducting this review, the district court must refrain from second guessing the magistrate judge's pre-trial discovery rulings." Ungar, 325 F. Supp. 2d at 25; Commodity Futures Trading Comm'n v. Standard Forex, Inc., 882 F. Supp. 2d 40, 42 (E.D.N.Y. 1995) ("Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes"). Because the Magistrate's Order was neither clearly erroneous nor contrary to law, the Court should defer to his rulings.

## III. ARGUMENT

Litigants have an obligation to tailor discovery requests "to suit the particular exigencies of the litigation. They ought not to use broadswords where scalpels will suffice, nor to undertake wholly exploratory discovery operations in the vague hope that something helpful will turn up." Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 187 (1st Cir. 1989) (affirming denial of plaintiff's motion to compel discovery in a Title VII case). Because the Magistrate correctly recognized that Daniels had violated this fundamental precept, Daniels' appeal should be denied.

### A. Daniels Bases His Appeal In Large Part On A Mischaracterization Of The Company's Reason For Terminating His Employment

On appeal, Daniels claims that much of the discovery he seeks is relevant to his argument that APC's articulated reason for terminating his employment was a pretext for unlawful discrimination or retaliation. See Memo. of Law in Support of Pl.'s Appeal of the Magistrate Judge's Order ("Pl.'s Memo.") at pp. 2-3. "Specifically," according to Daniels, the requested discovery:

> would prove that the company's articulated reason for terminating him for directing that hotel rooms be booked at the Marriott hotel, stealing reward points from other employees, disregarding an alleged preferred hotel list, setting up an alleged direct billing scheme, and costing the company $8,000 for using a non-preferred hotel was a pretext for discrimination.

Id. at p. 3.

This statement is remarkable in that it mischaracterizes the Company's stated reason for Daniels' dismissal, and ***wholly omits*** the ***actual*** reason for Daniels' dismissal, namely, his self-dealing arrangement with the Providence Marriott. Because this fundamental mischaracterization of the basis for his termination underlies the majority of Daniels' claims of error, the Court should defer to the Magistrate's decision and dismiss Daniels' appeal. See Caouette v. Officemax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005) ("The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."); Whittingham v. Amherst College, 164 F.R.D. 124, 127 (D. Mass. 1995) ("without a showing of . . . relevance, Plaintiff is not entitled to discovery").

#### 1. The Magistrate properly denied Daniels' motion to compel the production of information concerning the "theft" of Marriott Rewards Points.

Daniels claims that the Magistrate erred by not requiring APC to produce the complete personnel file and all expense reimbursement records (in response to Requests Nos. 6 and 10) for

the employees who stayed at the Providence Marriott at his direction in January and February 2004. He asserts that these materials are necessary to rebut APC's claim that it terminated Daniels employment for "stealing rewards points" from such employees.[3] See Pl.'s Memo. at 19-20, 24-25, 35.

APC makes no such claim. As APC repeatedly represented during discovery, it would have terminated Daniels' employment *even if* no employees had lost Marriott Rewards points as a result of his scheme. Indeed, Gough testified as follows:

> Q: Did you inquire whether or not any individuals also received reward points for their stay at the Marriott?
>
> A: No, I did not at that time.
>
> Q: Okay. And is that an important fact to know?
>
> A: The fact that they received Marriott point rewards for the stay? No, I do not see that as relevant.

Deposition of Brian Gough at 187-88 (previously filed as Exhibit D to the Affidavit of George P. Kostakos ("Kostakos Aff.")).

The record is clear in this case: Daniels did in fact receive over 100,000 Marriott Rewards points for directing extensive APC business to the higher-priced Providence Marriott; and APC terminated Daniels' employment for self-dealing by putting his interest in receiving these rewards points ahead of the interests of the Company. Moreover, APC has never argued that it terminated Daniels' employment for stealing rewards points from other employees. In fact, whether other individuals also received rewards points for their stay at that hotel does not change the fact that Daniels engaged in self dealing to the Company's detriment.

[3] Daniels raises the same argument with regard to Interrogatory No. 14, which seeks the identity of such individuals. See Pl.'s Memo. at 35. In addition to seeking irrelevant information, as discussed above, Interrogatory No. 14 is unnecessary and unduly burdensome, given that the invoices previously produced in discovery contain the names of some, if not all, of the employees who stayed at the Providence Marriott at Daniels' direction. See Fed. R. Civ. P. 26(b)(2)(i).

Even if this issue were relevant, it is highly unlikely that any personnel file or expense reimbursement records will contain documents indicating whether an employee was credited with Marriott Rewards points for his or her personal account as a result of staying at the Providence Marriott, particularly given that Daniels arranged to have the cost of these rooms billed directly to APC. Given the highly confidential nature of the files sought by Daniels, their lack of relevance, and the relative unlikelihood that they will even contain the data sought by Daniels, the Magistrate Judge's decision should be affirmed. See Whittingham, 164 F.R.D. at 127; see also Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir 1994) (privacy interests were proper basis upon which to prevent counsel from "root[ing] through the personnel files").

**2. The Magistrate properly denied Daniels' motion to compel the production of information concerning the use of non-preferred hotels by APC employees.**

Daniels next claims that the Magistrate erred by not ordering APC to produce documents (in response to Requests Nos. 8, 16, and 17) and information (in response to Interrogatory No. 11) regarding the fact that other APC employees stayed at hotels that were not on the Company's "preferred" list. He claims that these requests seek "information directly bearing on one of APC's articulated reasons for terminating [his employment] – that he chose to book rooms at the Marriott, a non-preferred hotel, which cost the company money." Pl.'s Memo. at 28; see also id. at 22-23, 27, 31-33. His appeal should be denied for at least two reasons.

First, whether or not APC employees ever stayed at the Providence Marriott, before or after Daniels hatched his kickback scheme, is irrelevant to this case. Daniels was not terminated because he used a non-preferred hotel; rather, he was terminated for receiving (and attempting to hide) kickbacks from the Providence Marriott. Thus, the information sought by Daniels is irrelevant. See, e.g., Caouette, 352 F. Supp. 2d at 136 ("The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."). Indeed,

given the reason for Daniels' termination, the information sought will not establish pretext in this case.

Second, current and former Company employees testified that they, or employees they knew, occasionally stayed at non-preferred hotels. APC also produced documents identifying various non-preferred hotels utilized by APC employees in recent years. See Kostakos Aff., Exh. B. Thus, to the extent the issue of whether APC employees stayed in non-preferred hotels is relevant to this case, Daniels already has documents and testimony sufficient to support that proposition. Accordingly, and given the marginal relevance (if any) of this issue, the Magistrate correctly ruled that the burden and expense associated with locating and producing the voluminous additional materials requested by Daniels is unwarranted.[4] See Archer Daniels Midland Co. v. Aon Risk Services, Inc., 187 F.R.D. 578, 589 (D. Minn. 1999) ("Even when dealing with requests for relevant information, the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved."); Fed. R. Civ. P. 26(b)(2)(i).

**3. The Magistrate correctly ruled that additional information concerning complaints about the Johnson and Wales Hotel is irrelevant.**

Interrogatory No. 18 asks for a description of "all complaints made by APC employees regarding the Johnson & Wales Hotel." Daniels claims that the Magistrate should have ordered APC to produce this information because it is relevant to one of APC's reasons for terminating his employment, i.e., his decision to book rooms at the Providence Marriott instead of a preferred hotel, such as the Johnson & Wales hotel. See Pl.'s Memo. at 3, 36.

[4] As one example of the scope of Daniels' requests and the burden associated with responding thereto, APC refers the Court to Request No. 16. This request seeks "*all* documents *sent* to and/or *received* from the Marriott Hotel in Providence Rhode Island, including, but not limited to all bills from the Marriott and payments made by APC to the Marriott Hotel in Providence Rhode Island since *1998*." (emphasis added). Daniels fails to justify this incredibly broad request.

Daniels should not be entitled to this discovery on the strength of his mischaracterization of APC's basis for terminating his employment. As discussed above, he was not terminated because he used a non-preferred hotel: he was terminated for receiving kickbacks from the Providence Marriott.

Daniels acknowledges, however, that his primary purpose in seeking this information is to find support for his argument that "the Johnson and Wales was not a satisfactory hotel." Pl.'s Memo. at 36. Under that theory, however, the only relevant complaints are those of which Daniels was aware during his employment with APC. Because APC already has produced all documents in its files that relate to such complaints, the Magistrate properly ruled that APC should not be required to undertake the burdensome task of providing information regarding other complaints (to the extent they even exist) that are not even remotely relevant to this case. Additionally, even if the Johnson and Wales hotel was unsatisfactory for Daniels' needs (APC contends it was satisfactory), the condition of that hotel and any need to change hotels did not justify or excuse the fact that Daniels engaged in self-dealing to the detriment of the Company.

**B. The Magistrate Properly Limited The Scope Of Daniels' Requests For Comparator Information**

Daniels next takes issue with the Magistrate's decision to limit his requests for information and documents regarding alleged comparators. In reaching his decisions, the Magistrate observed that Daniels' wide-ranging requests sought information regarding employees who plainly were not similarly situated to Daniels in all material respects. See, e.g., Order at p. 2. Therefore, the Magistrate's decision was neither clearly erroneous nor contrary to law, and Daniels has failed in his appeal to make such a showing. See, e.g., Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) ("for us to compare [plaintiff's] treatment with that of" other employees "in a meaningful way, [plaintiff] would have to show that she was similarly

situated to those [employees] in terms of performance, qualifications and conduct without such differentiating or mitigating circumstances that would distinguish" their situations) (internal quotation marks omitted).

**1. The information regarding other complaints of discrimination sought by Daniels is irrelevant to this case.**

The Magistrate limited the scope of Daniels' Request No. 4, ordering APC to produce documents relating only to "complaints of race discrimination and/or harassment and/or retaliation directed personally at" Bonzani, Kavanaugh, Gough, and/or Brian Kelly from January 1, 2000 to the present.[5] On appeal, Daniels argues that the Magistrate should have ordered APC to produce complaints made by all APC employees (a) "*working under* Bonzani and Kavanaugh," (b) "over whom Gough had human resources responsibility," and (c) over whom Kelly "had financial responsibility." Pl.'s Memo. at 15 (emphasis in original). Daniels claims that these complaints are relevant to this case because he may be able to use them to (a) show that APC investigated and/or responded to such complaints differently than to his alleged complaints of race discrimination, and/or (b) establish that a "discriminatory atmosphere and corporate state-of-mind" existed at APC. Id. at 15-16. These contentions are meritless.

First, any comparison by Daniels of APC's treatment of other complaints of race discrimination to its treatment of his alleged complaints must be based on circumstances that are substantially similar to his own situation. See, e.g., Smith, 40 F.3d at 17; Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) (holding that a plaintiff must compare herself to "persons situated similarly in all relevant aspects"). Daniels, however, seeks information

---

[5] APC previously had informed Daniels that it would produce any documents related to complaints of race-based discrimination, harassment or retaliation that (a) involved the same individuals who supervised Daniels and participated in the decision to terminate his employment, and (b) were raised by employees similarly situated to Daniels on or after January 1, 1999 through the end of Daniels' employment with APC. APC subsequently informed Daniels that it had no documents regarding any complaints of race-based discrimination, harassment, or retaliation regarding Gough, Bonzani, Kavanaugh, or Kelly.

regarding plainly dissimilar situations: e.g., complaints made against individuals other than Kelly (whom he alleges engaged in racial harassment) or Gough and Kavanaugh, who made the decision to terminate his employment. See, e.g., Cruse v. G&J USA Publishing, 96 F. Supp. 2d 320, 330 (S.D.N.Y. 2000) ("Most importantly, for other employees to be similarly situated, they must have reported to the same supervisor as plaintiff.").

Indeed, the overbreadth of Daniels' request is staggering. By seeking documents related to complaints made by all employees over whom Gough, APC's former director of human resources, "had human resources responsibility," and Kelly, APC's former Director of Finance, had "financial responsibility," he essentially seeks documents regarding virtually all of APC's thousands of employees based in the United States. By limiting the scope of Daniels' request to only those complaints made against the key decision makers relevant to this case, the Magistrate acted properly and in accordance with precedent. See, e.g., Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."); Griffiths v. Cigna Corp., 1992 WL 13016, at *2 (E.D. Pa. Jan. 23, 1992) (Van Artsdalen, J.) ("As plaintiff alleges that his managers made discriminatory remarks, prior claims against them would be relevant to [his] claims. Prior claims against other CIGNA employees would not be. This discovery, then, will be allowed only in respect to any [of] those individuals who [were] managers or supervisors of plaintiff").

Daniels attempts to justify his request by arguing that the Magistrate's decision "directly contradicts the First Circuit's ruling" in Cummings v. Standard Register Co., 265 F.3d 56 (1st Cir. 2001). See Pl.'s Memo. at 15-16. Contrary to Daniels' assertion, however, the First Circuit did not hold in Cummings that evidence of complaints involving employees other than the

plaintiff is discoverable. Instead, the First Circuit held that, in weighing whether to admit testimony regarding other complaints at trial, "the trial court must consider the evidence in light of the entire case and determine whether it provides a basis for reasonable inferences related to the plaintiff's claims." Cummings, 265 F.3d at 63. In applying that general principle to the case before it, the First Circuit concluded that the trial court had not abused its discretion in permitting such testimony because the employer "raised, as part of its defense, its national corporate practices of nondiscrimination, making evidence challenging those claims especially relevant." Id. at 64. In reaching this conclusion, the First Circuit observed that "the question is close *and exclusion of the evidence would not have been error*." Id. at 64 (emphasis added).

In reaching his decision, the Magistrate plainly engaged in the type of balancing analysis contemplated by Cummings. Because the Magistrate already ordered APC to produce documents concerning complaints of discrimination made against the key individuals in this case, and the information sought by Daniels regarding other complaints is wholly irrelevant, the Court should defer to the Magistrate's decision and deny Daniels' appeal. See, e.g., Medina-Munoz, 896 F.2d at 10.

**2. The confidential personnel files sought by Daniels in response to Request No. 6 are irrelevant to this case.**

Daniels asserts that the Magistrate erred by not ordering APC to produce the complete personnel files of: (1) two overseas executives who were terminated as part of an internal investigation into a suspected "grey marketing" scheme; and (2) nine sales employees who were terminated for artificially inflating the volume of their telephone calls. He claims that these personnel files are necessary "to help to establish that the individuals [implicated] in . . . these schemes are similarly situated to" him. Pl.'s Memo. at 18. This argument is unavailing because Daniels already has information (including hundreds of pages of documents and the deposition

testimony of Gough) establishing that these individuals were not similarly situated to him in all material respects.

First, the two individuals terminated in 2003 in connection with APC's grey marketing investigation were, unlike Daniels, (a) high-level executives, (b) based overseas, and (c) terminated for their involvement in a scheme whereby one of APC's distributors was allowed to purchase huge quantities of APC's products at a price reserved for sales to a particular Latin American country and then resell such products at a higher price. Further, these two executives did not directly report to Bonzani, Kavanaugh, Gough, or Kelly.

Second, the nine individuals terminated in 2001 in connection with the telephone manipulation scheme were, unlike Daniels, (a) sales employees, and (b) terminated for manipulating the Company's telephone system so as to make it appear as though they were making more sales calls than was actually the case, thereby artificially inflating their performance rankings vis-à-vis their peers. None of these employees directly reported to Bonzani, Kavanaugh, Gough, or Kelly.

Thus, none of these individuals are appropriate comparators for Daniels. See, e.g., Cruse, 96 F. Supp. 2d at 330 ("Most importantly, for other employees to be similarly situated, they must have reported to the same supervisor as plaintiff."); Williams v. Frank, 757 F. Supp. 112, 119 (D. Mass. 1991) ("First and foremost, two employees are not similarly situated when the offense each is accused of is not the same."). Further, APC already produced the relevant portions of their personnel files, including documents regarding their respective terminations. Accordingly, and in light of the privacy interests implicated by the disclosure of these individuals' entire personnel files, the Magistrate properly denied Daniels' motion with regard to Request No. 6. See Gavenda v. Orleans County, 182 F.R.D. 17, 29 (W.D.N.Y. 1997) (holding that mere "bald

assertion[s]" of disparate treatment do not "entitle a plaintiff to disclosure of confidential personnel information").

**3. The Magistrate properly limited the scope of Daniels' requests for discipline-related documents and information.**

In Request Nos. 7 and 15, and Interrogatory No. 5, Daniels sought documents and information concerning a wide range of disciplinary decisions made by APC. Daniels now claims that the Magistrate erred by not requiring APC to produce all documents: (1) related to the discipline of employees over whom Gough "had human resources responsibility;" (2) contained in "two file drawers" maintained by APC; and (3) concerning instances where APC employees who "worked under the supervision of Bonzani, Kavanaugh, and/or over whom Gough had human resources responsibility" engaged in dishonest or unethical behavior but were not terminated. See Pl.'s Memo. at 21-22, and 26. He also claims that the Magistrate erred in not requiring APC to identify and "describe fully", in response to Interrogatory No. 5, every termination decision made by APC "from 1998 to the present" for any employee over whom Gough "has had human resources responsibility, and/or who worked under the supervision" of Bonzani and/or Kavanaugh. See id. at 29-30. The Magistrate properly concluded that these discovery requests are overly broad.

First, as discussed above, the scope of Daniels' requests for documents and information concerning discipline imposed on employees over whom Gough had human resources responsibility is exceedingly broad. By virtue of Gough's role as director of human resources, he essentially had human resources responsibility over thousands of employees. Further, Daniels does not attempt to limit his demand to documents regarding the discipline of employees who were similarly situated to himself. Notably, despite the fact that Daniels deposed Gough, he is unable to identify any particular disciplinary decisions that might arguably be relevant to this

case. Therefore, the Magistrate properly limited his requests to those disciplinary decisions made in whole or material part by Bonzani or Kavanaugh.

Second, although Daniels repeatedly refers to documents contained in two file drawers maintained by APC, he makes no attempt to argue that these documents contain relevant information. The mere fact that these documents might be conveniently located does not make them relevant or discoverable. Accordingly, the Magistrate did not err when he rejected Daniels' argument that these materials must be produced.

Lastly, Daniels' requests for documents and information concerning discipline imposed on employees "who worked under the supervision of John Bonzani and/or Paul Kavanaugh" are patently overbroad. The Magistrate already ordered APC to produce documents concerning disciplinary decisions made in whole or material part by Bonzani or Kavanaugh. Because employees who were disciplined by other managers – regardless of whether those managers reported up to Bonzani or Kavanaugh – are not similarly situated to Daniels, the Magistrate properly denied Daniels' request for these materials. See, e.g., Cruse, 96 F. Supp. 2d at 330 ("Most importantly, for other employees to be similarly situated, they must have reported to the same supervisor as plaintiff.").

## IV. CONCLUSION

For the foregoing reasons, APC respectfully requests that the Court deny Daniels' appeal in its entirety and affirm the decision of Magistrate Judge Almond.

Respectfully submitted,

AMERICAN POWER CONVERSION CORPORATION,

By its attorneys,

/s/ George P. Kostakos
George P. Kostakos (6971)
Christopher B. Kaczmarek (*pro hac vice*)
Littler Mendelson, P.C.
10 Weybosset Street, Suite 404
Providence, RI 02903
(401) 454-2903 (tel.)
(401) 454-2969 (fax)
gkostakos@littler.com

Dated: March 16, 2007

## CERTIFICATE OF SERVICE

I, George P. Kostakos, hereby certify that on this 16th day of March 2007 the foregoing **Memorandum Of Law in Support Of Defendant's Opposition to Plaintiff's Appeal of the Magistrate Judge's Order** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ George P. Kostakos
George P. Kostakos