***Document Electronically Filed***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SETH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION,<br><br>Defendant. | Civil Action No: 05-00459-ML-LDA |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION TO TAKE FURTHER LIMITED DISCOVERY**

The discovery phase of this case ended over four months ago. Plaintiff Seth Daniels now seeks the Court's permission to take the depositions of defendant American Power Conversion Corporation's ("APC" or the "Company") former in-house counsel, a designee of APC pursuant to Federal Rule 30(b)(6), and Laurie Gaspar, a former APC employee. Daniels' motion is based on mischaracterizations of the record. Further, the issues he seeks to explore at deposition are irrelevant to this case. Therefore, the Court should deny his motion.

## I. BACKGROUND

Daniels filed his complaint on November 3, 2005. Eight months later, he served his first discovery requests. During the remaining four months of the discovery period, Daniels served, and APC responded to, 37 requests for production of documents and 25 interrogatories. He also took the depositions of six current or former APC employees. In addition, he served four subpoenas duces tecum on third party witnesses, and took the depositions of three of those individuals.

Discovery closed on November 9, 2006. Now, over four months later, Daniels seeks

leave of the Court to conduct three entirely new depositions.

## II. ARGUMENT

In support of his motion, Daniels states that he hopes to elicit deposition testimony regarding documents "belatedly produced" by APC which are relevant to his claims of employment discrimination and retaliation.[1] Further, he claims that these new depositions fall within the "spirit" of an agreement between counsel regarding the re-opening of previously-conducted depositions. Because these assertions are untrue, his motion should be denied.

### A. The Requested Depositions Fall Far Outside The Scope Of The Parties' Agreement

Daniels claims that he should be permitted to take three additional depositions because the parties' counsel agreed that he would be able to take further depositions if APC produced documents after the close of discovery. Daniels mischaracterizes the parties' agreement.

On October 3, 2006, Lori Kisch, Daniels' attorney, proposed the following agreement via email:

> With regard to Mr. Daniels' deposition, we will agree to an additional two hours if Defendant will agree that should I need to *continue* a deposition of a witness due to the belated production of discovery by APC, APC will not raise an objection.

See Kostakos Aff., Exh. A (emphasis added).[2] George Kostakos, APC's attorney, replied as follows on October 17th: "I would be willing to agree to 2 ½ hours, with an understanding regarding belated production of documents." Kostakos Aff., Exh. B.

On November 10, 2006, prior to Daniels' deposition, the parties entered their agreement

---

[1] Notably, Daniels' motion is not based on Federal Rule of Civil Procedure 56(f). The reason for his decision not to invoke Rule 56(f) is clear: Daniels cannot (a) demonstrate that he "was diligent in pursuing discovery" and (b) "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of" APC's pending summary judgment motion. C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 44 (1st Cir. 1998).

[2] Daniels raised this same argument in his Supplemental Motion to Compel, which Magistrate Judge Almond denied without prejudice. APC submitted the Affidavit of George P. Kostakos ("Kostakos Aff."), cited herein, in opposition to such motion.

into the record. Specifically, Kisch stated as follows:

> defendant has agreed that to the extent that defendant produces documents and we need to *call back* any witnesses to depose them with regard to those documents, defendant has agreed to make themselves available, as well as not opposing us calling a third-party witness.

Deposition of Seth Daniels at 311-12, attached as Exhibit C to Kostakos Aff.

As stated on the record at Daniels' deposition, APC agreed only to the re-opening of depositions so that Daniels could question witnesses regarding documents subsequently produced by APC in response to his exceptions. APC never agreed to allow Daniels to depose entirely new witnesses who had not previously been deposed in this case. As Daniels has not previously deposed attorney Jeffrey Giguere, APC's Rule 30(b)(6) designee, or Laurie Gaspar, such depositions are not encompassed by the agreement between counsel.

In the face of the clear language of the parties' agreement, Kisch states that the "spirit of the agreement was that Plaintiff should not be prejudiced by APC's late production of documents." See Memo. of Law in Supp. of Pl.'s Mot. To Take Further Limited Discovery ("Pl.'s Memo.") at 5. Kisch's *post hoc* attempt to rewrite the agreement is both disingenuous and unavailing.

In support of her position, Kisch states that Kostakos "admitted" that no agreement "was necessary between the parties to protect Plaintiff's right to take further depositions where APC belatedly produced documents." Id. at 6. During the course of negotiations with Kisch regarding the continuation of Daniels' deposition (and prior to Daniels' deposition), Kostakos merely discussed, if anything, the possibility that Daniels might have success if he moved to re-open depositions to question witnesses regarding documents subsequently produced by APC, and that APC would consider an agreement to allow Daniels to re-call previously deposed witnesses for that limited purpose. Kostakos Aff. ¶ 6. Thus, Kostakos' actual statements provide no

support for Daniels' motion.

Accordingly, the Court should reject Kisch's disingenuous attempt to rewrite the parties' agreement. If Kisch is allowed to rewrite an agreement that *she* proposed and *she* entered into the record, then no agreement between counsel will be safe from effectively being voided by an attorney who later realizes that she should have pursued a different litigation strategy. In any event, as discussed below, Daniels has not been prejudiced in any way by APC's production of the documents at issue. Further, these documents are not relevant to this case.

### B. Daniels Mischaracterizes APC's Attempt To Resolve The Parties' Discovery Dispute

Contrary to Daniels' allegations, APC neither acted in "bad faith" nor violated the Federal Rules of Civil Procedure when it produced certain documents after the close of discovery. See Pl.'s Memo. at 4. During discovery, Daniels propounded a number of vague, overly-broad requests that were susceptible to multiple interpretations. In response, APC set forth clear, legitimate objections and made a good faith effort to respond based on its reasonable interpretation of such requests. When Daniels questioned APC regarding the basis for these objections, the Company reiterated its positions and, where appropriate, provided additional information in support thereof (including citations to legal authority and evidence in the record). Further, in an attempt to end a needless discovery dispute and avoid further motion practice, APC produced the documents referred to by Daniels, even though the Company did not believe such documents were relevant or likely to lead to the discovery of admissible evidence.

For Daniels to argue that he was prejudiced by APC's allegedly late production of these documents is absurd: if the Company had waited for the Magistrate to rule on Daniels' motion to compel, APC likely would not have been required to produce the vast majority of these

documents.[3] Indeed, as discussed below in the context of the three depositions requested by Daniels, these documents are not even relevant to his claims.

**C. Daniels Has No Basis For Taking Attorney Giguere's Deposition**

Daniels seeks to take the deposition of attorney Jeffrey Giguere, APC's former in-house counsel, regarding documents "belatedly produced" by APC relating to (a) employees who were disciplined as part of the Company's investigations into "grey marketing and sales commission schemes," and (b) the Company's Code of Ethics and Business Conduct. See Pl.'s Memo. at 3. He claims that such documents "relate to possible comparators." Id. Daniels' motion should be denied.

First, contrary to Daniels' assertion, APC did not produce any documents regarding the telephone manipulation scheme after the close of discovery.[4] Further, Daniels offers no basis for his bald assertion that Attorney Giguere was involved in the investigation of, or the termination of the employees involved in, such scheme. In any event, the nine individuals terminated in 2001 in connection with the telephone manipulation scheme were, unlike Daniels, (a) sales employees, and (b) terminated for manipulating the Company's telephone system so as to make it appear as though they were making more sales calls than was actually the case, thereby artificially inflating their performance rankings vis-à-vis their peers. Thus, they plainly are not appropriate comparators. See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) (holding that a plaintiff must compare herself to "persons situated similarly in all relevant aspects").

Second, the two individuals terminated in 2003 in connection with the grey marketing

---

[3] In his Order, the Magistrate "conclude[d] that Plaintiff's discovery requests are largely overbroad and/or Plaintiff has not shown that the information is relevant to a claim or defense in this action."

[4] Prior to the close of discovery, APC produced all of the documents in its possession, custody, or control regarding the telephone manipulation scheme.

investigation were, unlike Daniels, (a) high-level executives, (b) based overseas, and (c) terminated for their involvement in a scheme whereby one of APC's distributors was allowed to purchase huge quantities of APC's products at a price reserved for sales to a particular Latin American country and then resell such products at a higher price. See Williams v. Frank, 757 F. Supp. 112, 119 (D. Mass. 1991) ("First and foremost, two employees are not similarly situated when the offense each is accused of is not the same.").

In addition to having been terminated for entirely different behavior than Daniels, none of the individuals who were implicated in these two schemes reported to the same supervisor as Daniels. See Cruse v. G&J USA Publishing, 96 F. Supp. 2d 320, 330 (S.D.N.Y. 2000) ("Most importantly, for other employees to be similarly situated, they must have reported to the same supervisor as plaintiff."). Thus, none of these individuals are appropriate comparators and deposition testimony regarding any of them would be irrelevant to this case.

Lastly, despite having deposed six current or former APC employees (including his former supervisor and two members of the human resources department), Daniels is unable to identify any potential comparators who violated the Company's Code of Ethics and Business Conduct. Thus, he offers no basis for deposing Attorney Giguere regarding these documents. The Court should not countenance his fishing expedition and should instead deny his motion.

**D. The Information Sought From APC's Rule 30(b)(6) Designee Is Irrelevant**

Daniels also seeks to take the deposition of APC's Rule 30(b)(6) designee regarding documents related to the use of various hotels by APC employees.[5] See Pl.'s Memo., Exh. 2. Daniels claims that such testimony may help him establish that he "did not cost APC any money

---

[5] During discovery, APC produced numerous documents regarding the hotels utilized by APC employees. Daniels, however, claims that APC acted improperly by not producing the two hotel-related spreadsheets referenced in his motion until after the close of discovery. To the contrary, APC's production of those spreadsheets demonstrates its good faith. In an attempt to resolve the parties' discovery dispute, and without any obligation to do so, APC requested that Carlson Wagonlit, the Company's third-party travel agent, produce the spreadsheets in question to APC so that it could then produce these documents to Daniels.

by booking hotel rooms at the [Providence] Marriott, one of the reasons he was allegedly fired." Id. at p. 4.

Contrary to Daniels' assertion, APC did not terminate his employment because the rooms at the Providence Marriott were more expensive than rooms elsewhere. Rather, as discussed in the Company's summary judgment papers, APC terminated Daniels because of his self-dealing: he received kickbacks from the Providence Marriott, in the form of over 100,000 valuable Marriott Rewards points, in exchange for booking almost 300 rooms there in January and February 2004. Thus, the information regarding hotel rates sought by Daniels is irrelevant. Indeed, the Magistrate Judge denied Daniels' motion to compel the production of additional documents regarding this same issue.[6]

**E. The Employee Terminated By Gaspar Is Not An Appropriate Comparator**

Lastly, Daniels seeks to take the deposition of Laurie Gaspar, whom he describes as "the manager of a white comparator who was disciplined rather than terminated for unethical conduct." Pl.'s Memo. at 5. The Court should deny Daniels' request to depose Gaspar because Julie Kelly, the alleged comparator to whom he refers, was not similarly situated to him in all material respects.

First, as the document referred to by Daniels makes clear, Kelly reported to, and was disciplined by, Gaspar. See Performance Corrective Action Plan, dated January 25, 1991, a copy of which is attached as Exhibit A hereto.[7] Daniels, in contrast, reported to John Bonzani and was terminated by Paul Kavanaugh and Brian Gough.

Second, Gaspar disciplined Kelly for performance problems that are wholly unlike the

---

[6] In any event, Daniels' request is moot because APC already has agreed to permit him to re-open the deposition of Christine Bollman, the Company's corporate travel manager, and question her regarding the two spreadsheets referenced in his motion.

[7] APC produced this document in response to the Magistrate Judge's Order regarding Daniels' motion to compel.

self-dealing that caused APC to terminate Daniels' employment. Specifically, Gaspar cited Kelly for, among other performance problems: (1) playing video games at work; (2) making too many personal telephone calls; (3) failing to follow through on customers' requests; (4) exhibiting a negative attitude; and (5) requesting an accommodation to her schedule to spend more time with her ill father and then "using the new schedule to go out and socialize . . . instead of spending time caring for her father." See Exhibit A hereto. These well-documented performance problems are not similar in any respect to the self-serving and unethical conduct engaged in by Daniels.

Because Kelly plainly was not similarly situated to Daniels in all material respects, she is not an appropriate comparator for purposes of his employment discrimination and retaliation claims. Therefore, any deposition testimony by Gaspar regarding Kelly would be irrelevant to this case. Accordingly, the Court should deny Daniels' motion.

## III. CONCLUSION

For the reasons set forth above, the Court should deny Daniels' motion.

Respectfully submitted,

AMERICAN POWER CONVERSION CORPORATION,

By its attorneys,

/s/ George P. Kostakos

George P. Kostakos (6971)
Christopher B. Kaczmarek (admitted *pro hac vice)*
Littler Mendelson, P.C.
10 Weybosset Street, Suite 404
Providence, RI 02903
(401) 454-2903 (tel.)
(401) 454-2969 (fax)
gkostakos@littler.com

Dated: April 2, 2007

## CERTIFICATE OF SERVICE

I, George P. Kostakos, hereby certify that on this 2nd day of April 2007 the foregoing **Defendant's Memorandum In Support Of Its Opposition to Plaintiff's Motion To Take Further Limited Discovery** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ George P. Kostakos
George P. Kostakos