**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SETH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION<br><br>Defendant. | CIVIL NO: 05-00459-ML-LDA<br>Judge Mary Lisi |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL**

## I. INTRODUCTION

On February 15, 2007, the Magistrate Judge held that Plaintiff is entitled to discovery relating to the "grey marketing" and telephone sales call manipulation schemes. *See* Order of Feb. 15, 2007, at 4-5 [Dkt. No. 39]. The Magistrate Judge specifically ordered production of non-privileged documents responsive to Plaintiff's Request Nos. 13 and 14.

Additionally, in the privilege log of December 18, 2006, Defendant American Power Conversion ("APC") had previously claimed privilege related to certain documents responsive to Request Nos. 13 and 14. *See* Ex. 1. In the February 15th Order, the Magistrate Judge further ordered APC to supplement its privilege log to explain in greater detail its bases for claiming privilege as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure. In addition, the Magistrate Judge denied without prejudice Plaintiff's challenges to APC's claims of privilege and the privilege log produced by APC. *See* Order of Feb. 15, 2007, at 7 [Dkt. No. 39]. The

Magistrate Judge acknowledged that the Plaintiff might renew challenges to the withheld documents after receipt of the revised privilege log.

APC supplemented and updated its privilege log on March 7, 2007. Ex. 2. In its updated log, APC claimed privilege and protection under the work product doctrine regarding thirteen additional documents not previously identified,[1] bringing the total number of documents for which it claims privilege to twenty-nine. *See* Ex. 1; Ex. 2.

Plaintiff hereby renews its challenges to two sets of documents relating to APC's internal investigation of the grey marketing scheme for which APC claims attorney-client privilege and protection under the work product doctrine.

## II. FACTS

APC belatedly provided a privilege log on December 18, 2006, identifying certain documents it had withheld based upon attorney-client privilege and work product relating to the "grey-marketing scheme" after Plaintiff filed his Motion to Compel. Ex. 1. On January 11, 2007, Plaintiff's counsel requested that the documents identified on the privilege log be produced. Ex. 3. APC responded on January 16, 2007 refusing to do so. Ex. 4. The two individuals involved in the "grey marketing scheme" were Mr. Graham and Mr. Weigle, but neither filed a lawsuit against APC. Ex. 5, Gough Dep. at 139-43.

APC provided an updated privilege log on March 7, 2007, attached as Ex. 2. In this revised log, APC claims privilege regarding numerous additional documents, not previously identified on its December 18th privilege log, related to the "grey-marketing scheme." In

[1] APC previously represented to Plaintiff that no documents other than those identified on the first privilege log were withheld based on privilege. Ex. 4, E-mail from Kostakos to Kisch of Jan. 16, 2007.

particular, Plaintiff seeks production of the following two types of documents identified by APC as privileged:

1. May 22, 2003 **E-mail** from APC employee Brian Gough to Attorney Jeffrey Giguere "created at the request of Attorney Giguere and **in connection with his investigation** of and provision of legal advice regarding the grey marketing scheme, **providing a summary of R. Graham's employment history**; document contains a question handwritten by Attorney Giguere." Ex. 2, at 4 (emphasis added).

2. Undated **charts** (3) "prepared at the request of Attorney Giguere in connection with his **investigation** of and provision of legal advice regarding the grey marketing scheme, **showing the incentive and bonus compensation received by certain APC employees** (including R. Weigle) potentially involved in the grey marketing scheme." Ex. 2, at 12 (emphasis added).

These enumerated documents are responsive to Plaintiff's Request for Production No. 13, in which Plaintiff asked APC to:

> Produce all documents related to the termination of white employee executives who according to APC participated in a "gray marketing" scheme whereby the executives allowed a distributor of the Company's products to purchase large quantities of APC products at the price reserved for a particular Latin American country.

*See* Ex. 6, APC's Response to Plaintiff's Supp. Requests for Production at 4.

APC responded as follows:

> Defendant objects to Request No. 13 on the ground that it seeks information that is not relevant to the subject matter of this lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request to the extent it seeks documents that constitute attorney work product and/or are subject to the attorney-client privilege. Subject to and without waiving the foregoing specific objections, and the general objections set forth above, Defendant will produce documents sufficient to identify the executive(s) whom the company terminated or asked to resign because of their involvement int the "gray marketing" scheme referred to in Request No. 13.

*Id.*

## III. ARGUMENT

The party asserting the privilege bears the burden of demonstrating that they are entitled to its operation. *U.S. v. Bay State Ambulance and Hosp. Rental Service, Inc.*, 874 F.2d 20, 28 (1st. Cir. 1989).

APC has asserted here that attorney-client privilege and the work product doctrine allows it to withhold documents responsive to Plaintiff's discovery requests. Plaintiff addresses first the work product doctrine, then turns to APC's claim of attorney-client privilege.

### A. APC'S ASSERTION OF WORK-PRODUCT DOES NOT PROTECT DOCUMENTS RELATING TO APC'S INVESTIGATION INTO THE GREY MARKETING SCHEME

To withhold documents based on work product, APC bears the burden of demonstrating that the documents were prepared by, or at the direction of, an attorney and *in anticipation of litigation*. *See* Fed. R. Civ. P. 26(b)(3) (emphasis added); *see also Hickman v. Taylor*, 329 U.S. 495 (1947). "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *U.S. v. Nobles*, 422 U.S. at 238; *see also Hickman v. Taylor*, 329 U.S. at 510-11. However, not all documents prepared by, or at the direction of, an attorney, are automatically protected under the work product doctrine. "In determining what scope to give the work product doctrine, whether in the civil discovery context or elsewhere, courts must be careful to give no more protection than is necessary to preserve the values articulated in *Hickman*." *In Re: Grand Jury Subpoena*, 220 F.R.D. 130, 143 (D. Mass. 2004).

A mere speculation regarding the possibility of litigation does not suffice under this standard to protect the materials at issue:

> The inchoate possibility, or even the likely chance of litigation, does not give rise to work product. To justify work product protection, the threat of litigation must

> be "real and imminent." To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation.

*Williams v. Sprint/United Management Co.*, 2007 WL 846522 (D. Kan. 2007) (quoting *Marten v. Yellow Freight Sys., Inc.*, 1998 WL 13244, at *10 (D. Kan. 1998)) (citations omitted). Rather, the primary motivating purpose for creating the document must be "to assist in pending or impending litigation." *Marten*, 1998 WL 13244, at *11.

Documents are not protected if they are prepared in the ordinary course of business or would have been created in essentially similar form irrespective of the litigation, and this is true even if the documents aid in the preparation of litigation. *See, e.g., State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 67 (1st Cir. 2002). Also, the fact that litigation ultimately occurred is not dispositive of the question of whether a party reasonably anticipated that litigation would occur. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (citing *Binks Manufacturing v. National Presto Industries,* 709 F.2d 1118 (7th Cir. 1983)).

A party seeking protection of documents it asserts were created "in anticipation of litigation must state with some specificity which litigation was anticipated, and what nexus exists between the anticipated litigation and the contents of the materials in question." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004). The litigation that is anticipated must be identified with particularity in the privilege log, describing *by name* or by factual description the litigation at issue. *State of Maine*, 298 U.S. at 69 (citing *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 237 (1st Cir. 1994)).

**1. APC Has Not Established that the Summary of R. Graham's Employment History and Charts of Incentive and Bonus Compensation Were Prepared in Anticipation of Litigation**

***a. APC Has Failed to Comply with the Magistrate Judge's Order to Provide Sufficient Information in Its Privilege Log***

"[A]t a minimum, a [] [party] seeking to withhold a document . . . must identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to *all portions* of the document." *State of Maine*, 298 F.3d at 69-70 (emphasis added). As in *State of Maine*, APC has failed to articulate the precise nature of, or possible parties to, any litigation. It has not identified by name or by factual description the litigation for which it prepared the documents. Nor has APC explained how the documents relate to such litigation. Further, APC has not provided sufficient information about surrounding circumstances to support a conclusion that the communications at issue, if considered communications at all, were confidential. *Id.* at 72. APC has neither remedied its earlier failure to provide sufficient detail; to wit, it has now failed to identify the litigation to which the document relates — presumably because there is no such litigation.

***b. The Documents Were Not Created in Anticipation of Litigation***

The documents at issue here were not created in anticipation of litigation, but instead were created after APC learned of a possible "grey marketing scheme." As APC's counsel points out, "[w]hen the possible existence of this scheme came to light, its precise nature was unknown . . . . Accordingly, APC asked its in-house counsel, Attorney Giguere, to investigate the underlying facts and . . . provide services to the company regarding the situation." Ex. 4, E-mail from Kostakos to Kisch of Jan. 16. Thus, Attorney Giguere was not acting as an attorney, but as an investigator for the company. *Id.* APC has not presented any evidence that, at the time

the investigation was undertaken, litigation was imminent or anticipated. In fact, the evidence suggests that the investigation was undertaken for business reasons prior to the termination of Weigle and Graham, further supporting that litigation was not viewed as imminent. Ex. 5, Gough Dep. at 129-38. When the investigation began, APC did not even know if Graham and Weigle were involved. *Id.* at 135.

Additionally, courts have ruled that, even if certain documents are considered privileged or protected under the work product doctrine, such privilege and/or protection does not extend to other unrelated litigation. *See, e.g., United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 154 (S.D.N.Y 1974), and *Honeywell, Inc. v. Piper Aircraft Corp.*, 50 F.R.D. 117 (M.D. Pa. 1970). Even if APC expected litigation with regard to the termination and/or resignations of individuals involved in the grey marketing scheme, work product would not thereby be conferred onto the transcripts with regard to this unrelated litigation.

APC should be ordered to produce the summary of R. Graham's employment history and the charts showing "the incentive and bonus compensation for certain APC employees potentially involved in the grey marketing scheme." Ex. 2, at 12.

**2. Necessity Justifies Disclosure of the Documents Associated with APC's Investigation into the Grey Marketing Scheme**

In the alternative, if this Court finds that the documents Daniels seeks were prepared "in anticipation of litigation," Daniels can demonstrate that necessity and undue burden justify production of the documents related to APC's investigation into the grey marketing scheme.

"Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible

in evidence or give clues as to the existence or location of relevant facts." *Hickman*, 329 U.S. at 511. Rule 26(b)(3) of the Federal Rules of Civil Procedure distinguishes between work product that is core, "opinion" work product and "ordinary" work product. Fed. R. Civ. P. 23(b)(3); *see also In Re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1014 (1st Cir. 1988). "Opinion" work product includes materials that capture the mental impressions, conclusions, opinions, or legal theories of an attorney *concerning litigation*. *Id.* Materials that are outside this core work product are discoverable if a party can show (1) "substantial need" of the materials in the preparation of the party's case, and (2) that the party will suffer undue hardship to obtain the substantial equivalent of the materials by other means. *Id.*

Daniels is in substantial need of the summary of R. Graham's employment history because it may help to determine whether he and Daniels are similarly situated. Graham and Daniels both were investigated for alleged ethics violations. Graham's employment history is relevant to the question of whether they are similarly situated for purposes of demonstrating Daniels' *prima facie* case of discrimination. Therefore Daniels has a substantial need for information regarding Graham's employment history. Furthermore, Daniels has substantial need for the bonus and compensation charts in order to prove pretext. Two of APC's stated justifications for terminating Daniels' employment are that he cost the company money by selecting one hotel over another and that he personally profited from the use of the Marriott. The charts, which reveal the incentives and bonus compensation of other employees who engaged in self-dealing, demonstrate the costs to the company of the grey marketing scheme in terms of the bonuses received by those involved in the scheme, as well as the amount of profit obtained by those involved in the scheme.

Further, it would be an undue burden for Plaintiff to obtain this information from any other source because the documents, with perhaps a few exceptions, presumably exist nowhere but at APC. Additionally, obtaining Graham's employment history directly from him might require travel abroad for a deposition in Germany. Regarding the costs to APC of the grey marketing scheme, Plaintiff has already deposed Human Resources Director Brian Gough inquiring about the bonuses and costs to APC. Gough could recall no particulars, *see generally* Ex. 5 at 141-45, and was only able to approximate that the amount of cost to APC was "in the hundreds of thousands of dollars." Ex. 5 at 149-50. Thus, the summary of Graham's work history and charts of compensation are necessary for Daniels to litigate his case and Plaintiff would suffer an undue burden in attempting to obtain the documents through an alternate source.

Regarding Attorney Giguere's handwritten question that appears on the summary of R. Graham's employment history, Plaintiff concedes that if these notes reveal the mental impressions of the attorney regarding imminent litigation, that note would not ordinarily need to be produced. However, because APC has not provided a privilege log with sufficient detail, the entire document should be produced. However, even if this Court ruled that the handwritten note need not be produced, the note should not, in itself, prevent production of the employment history summary. If this Court considers this handwritten question to be protected under the work product doctrine, it should order production of the document with such notes redacted. Simply because the summary may have an attorney's notes scribbled in a margin, such a note does not thereby confer protection to the document itself.

### B. Documents Relating to APC's Investigation into the Grey Marketing Scheme Are Not Attorney-Client Communications

In order to assert the attorney-client privilege, the party asserting the privilege is required to make four showings: (1) that he was or sought to be a client of; (2) that the attorney in connection with the document acted as a lawyer; (3) that the document relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) that the privilege has not been waived. *United States v. Wilson*, 798 F.2d 509, 512 (1st Cir. 1986). APC bears the burden of proving the existence of the privilege. *Id.* at 512-13.

Importantly, "[a]bsent an expectation of confidentiality, none accrues." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1016 n.6 (1st Cir.1988). Furthermore, the party asserting the privilege bears the burden of demonstrating that the client reasonably understood the communications to be confidential. *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1984). "A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear." *Winchester Capital Management Co. v. Manufacturers Hanover Trust Co.*, 144 F.R.D. 170, 174 (D. Mass. 1992).

Furthermore, the communication must be made "primarily for legal advice." *Sneider v. Kimberly-Clark Corp.* 91. F.R.D. 1, 4 (N.D. Ill. 1980) (cited by *Pacamor Bearings, Inc., v. Minebea Co., Ltd.*, 918 F. Supp. 491, 510-11 (D.N.H. 1996)).

#### 1. The Attorney in This Case Was Acting as an Investigator, Not a Lawyer

APC argues that the documents that are the subject of this Motion to Compel are protected by the attorney-client privilege. *See* Ex. 2 (March 7 privilege log). "For the attorney-client privilege to attach to a communication, it must have been made in confidence and for the

purpose of securing legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22-23 (1st Cir. 2003).

> [T]he privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals. . . . In other words, the attorney-client privilege must be narrowly construed because it comes with substantial cost and stands as an obstacle of sorts to the search for truth. . . . For the attorney-client privilege to attach to a communication, it must have been made in confidence and for the purpose of securing or conveying legal advice. . . . The privilege evaporates the moment that confidentiality ceases to exist. . . . [T]he presence of third parties is sufficient to undermine the needed confidentiality.

*Id.*

Where an attorney functions in another capacity, his communications are not privileged. *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). Giguere was not functioning as an attorney giving legal advice, but was acting as an investigator for the company. The stated reason for the communication was to investigate the underlying facts and provide services for the company regarding the grey marketing scheme. Ex. 1; Ex. 2. Because Giguere was acting as an investigator, the communications made in this context are not protected by the attorney-client privilege.

Furthermore, APC has not established that the purpose of the communications was predominantly to obtain legal advice: "the privilege does not apply where legal advice does not predominate the communication or where legal advice is merely incidental to business advice." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 625809, at *6 (D. Kan. 2007) (citing *In re Universal Serv. Fund Tel. Billing Practices*, 232 F.R.D. 669, 674 (D. Kan. 2005)).

Because APC has not established that the communications were made primarily for the purpose of obtaining legal advice, they are not privileged, and APC should be ordered to produce them.

**2. APC Had No Justifiable Expectation that Facts Contained in the Employment History Summary and Charts of Incentive and Bonus Compensation Would Remain Confidential**

APC cannot credibly argue that the summary of R. Graham's employment or the charts of APC employees' incentive and bonus compensation communications were intended to be confidential. First, the summary of R. Graham's employment is not a communication at all, but rather a set of facts not subject to the attorney-client privilege. "[T]he protection of privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. . . . [T]he courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer." *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). Therefore, APC should be ordered to produce this summary.

In any event, the employment history summary, if considered a communication, is not confidential. *See State of Maine*, 298 F.3d at 72. In *State of Maine*, the First Circuit discussed the standard of confidentiality, observing that an intention to keep facts confidential is an "essential element of the privilege." *Id.* This summary exhibits no indicia of an intention to keep this communication confidential, and APC has not met its burden in demonstrating that it intended to keep it confidential. Therefore, the summary of R. Graham's employment history should be produced.

Like the employment history documents, there is not evidence that APC intended to maintain as confidential the bonus and compensation documents. There is also no evidence that had there been an expectation of privilege with regard to such information, that the employees themselves did not waive the privilege by revealing the information to spouses, accountants, and presumably the IRS. Daniels acknowledges that compensation information is traditionally considered "business confidential," but the fact that APC might consider them confidential for

business purposes does not confer the attorney-client communication privilege. Rather, because this information is likely used in many aspects of APC's business operations, the charts bear no indicia that they were intended to be confidential pursuant to the attorney-client privilege. Therefore, the attorney-client privilege does not attach, and production should be ordered.

## IV. CONCLUSION

For the foregoing reason, Daniels' Motion to Compel regarding documents identified *supra* at 3 should be granted.

Respectfully submitted this 13th day of April, 2007,

/s/ Noelle Clapham
Noelle K. Clapham (R.I. Bar #5338)
Law Office of Noelle Clapham
24 Salt Pond Road
Suite A-8
South Kingston, RI 02879
claphamlaw@verizon.net
(401) 783-3600

Lori B. Kisch (MD Fed Bar # 25781)
Wiggins, Childs, Quinn & Pantazis PLLC
2031 Florida Avenue, NW
Washington, DC 20009
lkisch@wcqp.com

***ATTORNEYS FOR THE PLAINTIFFS***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Motion to Compel, Memorandum in Support thereof, and exhibits were served this 13th day of April, 2007 via operation of this Court's electronic filing system.

_________/s/ Noelle Clapham____