**Tarnowsky, Stephanie**

**From:** Kostakos, George P. [GKostakos@littler.com]

**Sent:** Tuesday, January 16, 2007 11:51 AM

**To:** Lori Kisch

**Cc:** Kaczmarek, Christopher B.

**Subject:** Daniels v. APC

I write in response to the three issues raised in your letter of January 11th. First, the subject of Carlson Wagonlit Travel's ("CWT") production of documents is not a proper subject of Mr. Daniels' reply brief given that it was not raised in his motion to compel. See Local Rule 7(b)(2). That said, APC was a client of Maritz Travel prior to CWT's acquisition of Maritz in May 2004 (as you have been advised directly by Carlson). It is my understanding that CWT did not receive any client data from Maritz for the time prior to this acquisition. As Plaintiff's employment with APC ended in March 2004, CWT did not receive any client data related to specifically to Plaintiff, or to APC prior to the acquisition. Further, this statement regarding CWT's acquisition should not be read to mean that it has any information responsive to your subpoenas after the date of acquisition. Rather, CWT maintains that it has no documents responsive to the subpoena. To the extent CWT has information regarding negotiated rates with hotels, it relates to rates negotiated between CWT and the hotels, and is not specific to APC. To the extent Plaintiff seeks APC's human resource or travel related policies, or information regarding direct billing authority, CWT does not maintain or control this information simply if its agents can access all or part of this information. This is information that can or should be obtained from APC.

Second, APC's privilege log identifies all of the potentially responsive documents that APC has refused to produce on the basis of privilege. Consistent with APC's general and specific objections to Mr. Daniels' Rule 34 requests, APC has not withheld any documents concerning Mr. Daniels' employment, or the termination of same, on the basis of privilege.

Third, APC disagrees with your contention that "most of the documents" identified on APC's privilege log should not have been withheld. All of the documents identified on the privilege log concern the "grey marketing scheme." As discussed at length in APC's opposition to Mr. Daniels' motion to compel, the grey marketing scheme is irrelevant to Mr. Daniels' claims. To the extent this issue is relevant, APC already has produced various documents regarding the grey marketing scheme, including (a) correspondence from the attorney who represented Robert Graham (one of the executives whom APC terminated following its investigation of the grey marketing scheme), (b) the final settlement agreement entered into by and between APC and Mr. Graham, and (c) documents concerning the termination of Rainer Weigle's employment. In addition, Mr. Daniels had the opportunity to depose Brian Gough at length regarding this matter.

Even assuming *arguendo* that the grey marketing scheme has some tangential relevance to Mr. Daniels' claims, the documents identified in APC's privilege log are protected from discovery by the attorney work-product and/or attorney-client privileges. As you apparently only question the designation of some, but not all, of the documents identified in the privilege log, I will reply in general terms. If there are specific documents that you believe do not qualify for such privileges, please let me know and I will attempt to respond with greater specificity.

As you know, the "grey marketing scheme" was a scheme whereby one of APC's distributors was allowed to purchase huge quantities of APC's products at a price reserved for sales to a particular Latin American country and then resell such products at a higher price. When the possible existence of this scheme came to light, its precise nature was unknown, but its potential legal ramifications were significant: it potentially implicated the civil and criminal laws of the United States and various Latin American and European countries. Accordingly, APC asked its in-house counsel, Attorney Giguere, to investigate the underlying facts and provide legal advice and services to the company regarding the situation. Given the stringent requirements applicable to the termination of employees under European law, APC also anticipated that Mr. Graham and others might bring suit to challenge any disciplinary action taken as a result of Attorney Giguere's investigation and analysis. Mr. Graham subsequently commenced litigation in Germany, as anticipated, and he and APC entered into a settlement agreement (which APC provided to Mr. Daniels during discovery).

**Exhibit 4**

Thus, the basic requirements of the attorney-client privilege are satisfied here: APC, as the client, sought legal advice, legal analysis, and related legal service from Attorney Giguere, in his capacity as a lawyer, and the documents identified on the privilege log relate to facts communicated to him for the purpose of providing such legal advice, analysis, and related legal services. Similarly, the requirements of the work product privilege are satisfied, as many of the documents identified on the privilege log were prepared by Attorney Giguere for APC, in his capacity as APC's in-house counsel, in anticipation of potential litigation, including without limitation potential litigation in response to disciplinary action taken by APC employees based in Europe (including Messrs. Graham and Weigle) in response to the investigation of the grey marketing scheme. Further, many of the identified documents contain Attorney Giguere's mental impressions, conclusions and opinions, which plainly are not subject to disclosure.

For the foregoing reasons, APC will not produce the documents identified on the privilege log. If you wish to discuss specific documents identified thereon, please let me know.

**George P. Kostakos**
Littler Mendelson, P.C.
gkostakos@littler.com
(401) 454-2910 Providence
(617) 378-6023 Boston

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to
postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com