*Document Electronically Filed*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SETH DANIELS,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POWER CONVERSION CORPORATION,<br><br>Defendant. | Civil Action No: 05-00459-ML-LDA |

**DEFENDANT'S REPLY TO THE PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OBJECTION TO DEFENDANT'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant American Power Conversion Corporation ("APC" or the "Company") submits this reply to plaintiff Seth Daniels' objection to APC's motion for summary judgment. As a threshold matter, Daniels' opposition suffers from a significant procedural flaw: he failed to provide evidence to support his objection in a manner consistent with Local Rule CV 56(a) and Federal Rule of Civil Procedure 56. Daniels' opposition also is flawed substantively because he failed to put forward evidence supporting his assertion that APC's actions toward him were motivated by discriminatory or retaliatory animus. Therefore, the Court should grant APC's motion for summary judgment.

## I. DANIELS FAILED TO PROVIDE A PROPER EVIDENTIARY BASIS FOR HIS OBJECTION TO APC'S SUMMARY JUDGMENT MOTION

### A. Daniels Failed To Comply With Local Rule CV 56(a)

Daniels failed to comply with Local Rule CV 56(a). "Under Local Rule CV 56(a), merely disputing an assertion in a motion filed pursuant to Fed. R. Civ. P. 56 does not suffice to introduce a material factual dispute. Rather, the nonmoving party must support a denied or

controverted fact with affidavit or other evidentiary material." Rhode Island Resource Recovery Corp. v. Rhode Island Dept. of Environmental Mgmt., No. CA 05-4151 ML, 2006 WL 2128904, at *1 n.1 (D.R.I. July 26, 2006) (Lisi, J.).

In a footnote, Daniels admits 33 statements of fact identified in APC's Statement of Undisputed Facts but disputes the remaining 75 such statements. See Pl.'s Memo. in Support of his Objection to Def.'s Mot. For Summ. J. ("Pl.'s Memo.") at 1 n.1. Daniels fails in this footnote, however, to provide any citations to the record, thereby forcing APC and the Court to wade through Daniels' 50 page brief to determine what evidentiary support, if any, he has for denying these facts.

Even a cursory review of Daniels' opposition, however, demonstrates that he has failed to support many of his denials with citations to evidence in the record. To cite but a few examples, Daniels offers no evidence to contradict the fact that:

- Paul Cavanaugh, who ultimately was one of the two APC employees who made the decision to terminate Daniels' employment, had interviewed him for the position just a few months earlier. See SUF ¶ 5.

- Many APC employees complained to members of the Company's human resources department, including Christine Hendrix and Brian Gough, about Daniels' inappropriate behavior. See SUF ¶¶ 13-14.

- Scott Barger, Director of Sales and Marketing for the Providence Marriott, informed Christine Bollman in March 2004 that the Providence Marriott had awarded Daniels over 100,000 points to his personal Marriott Rewards account as a result of his decision to book 296 hotel rooms there in January and February 2004. See SUF ¶¶ 62-64, 78-79.

- Bollman previously had advised Daniels that he should arrange for APC employees to stay at hotels on APC's list of preferred hotels when they were in Rhode Island for training sessions. See SUF ¶ 49.

- On March 12, 2004, Bollman informed Gough about Daniels' arrangement with the Providence Marriott. See SUF ¶ 93.

- Gough then relayed this information to Cavanaugh; and Gough and Cavanaugh decided to terminate Daniels' employment. See SUF ¶¶ 94-95.

Daniels' failure to comply with Local Rule CV 56(a) is magnified by the fact that, when he does attempt to contradict APC's statements of fact by citing to evidence in the record, he mischaracterizes such evidence in many instances. For example, Daniels, citing to his own deposition testimony, states that "Bonzani and Cavanaugh were aware of, and approved, the use of the [Providence] Marriott" by Daniels. Pl.'s Memo. at 6. The cited deposition testimony provides no support for Daniels' assertion that Cavanaugh approved his use of the Marriott. See Daniels Dep. at 284-85. To the contrary, the only reference to Cavanaugh therein is a conclusory statement, wholly lacking in foundation, that Cavanaugh "was aware" that Daniels was utilizing the Providence Marriott.[1]

In addition, Daniels attempts in many instances to controvert his own deposition testimony, without offering any legitimate evidentiary basis for doing so.[2] See, e.g., SUF ¶¶ 5, 11, 23, 49, 55, 56, 105, 107. Cf. Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006) (affirming district court's decision to disregard an affidavit because it conflicted with answers the affiant had given at her deposition). It is well established that a plaintiff cannot resist summary judgment by contradicting his own deposition testimony without providing "a satisfactory explanation of why the testimony is changed." Colantuoni v. Afred

[1] Similarly, Daniels states that "Bollman knew, as of February 6, 2004, that Daniels had arranged for the use of the Marriott." Pl.'s Memo. at 6. To the contrary, the email cited by Daniels in support of this statement evidences the fact that Bollman actually was attempting to determine whether and to what extent Daniels was utilizing the Providence Marriott. Id., Exh. 15 ("I am trying to understand in what capacity you guys are using the Marriott in [Providence] and which one."). Daniels, who knew prior to booking rooms at the Providence Marriott that it was not one of APC's preferred hotels (see Daniels Dep. at 286-87), had been ignoring Bollman's inquiries into the situation. See Bollman Aff., Exh. D ("From past e-mails you know that I have been trying to find out what kind of events are taking place at the Marriott, unfortunately my emails were ignored."). It was not until Bollman actually spoke with Scott Barger from the Providence Marriott in March 2004 that the nature and scope of Daniels' relationship with that hotel became clear. See id. ¶¶ 10-12.

[2] The haphazard nature of Daniels' attempts to controvert the facts proffered by APC is exemplified by the fact that he disputes the contents of documents which are apparent and therefore not subject to genuine dispute, including federal Form W-2 (see SUF ¶¶ 16-18), APC's Code of Ethics and Business Conduct (see SUF ¶¶ 84, 86), and the very contract Daniels had entered into with the Providence Marriott (see SUF ¶ 79).

Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994).

Because Daniels failed to (a) comply with Local Rule CV 56(a), and (b) explain the basis for his attempts to contradict his own deposition testimony, the facts set forth in APC's Statement of Undisputed Facts should be deemed admitted. Accordingly, the Court should grant the Company's motion for summary judgment.

**B. Portions Of Daniels' Declaration Should Be Stricken Or Disregarded Because They Do Not Contain Admissible Evidence**

Federal Rule of Civil Procedure 56(e) provides that any affidavit submitted in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Because portions of Daniels' declaration fail to satisfy these requirements, they should be stricken or disregarded by the Court.

First, in paragraph 5 of his declaration, Daniels states that "[i]t is my understanding that Cavanaugh received points when he used his credit card to pay for . . . meals" for himself and other APC employees. Daniels offers no facts suggesting that he has personal knowledge of whether Cavanaugh actually received such points. See Perez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001) ("[P]ersonal knowledge is the touchstone" for determining whether an affidavit complies with the requirements of Rule 56). Because this statement is based purely on speculation and conjecture, it should be stricken and/or disregarded by the Court. See id. at 316 ("[T]he requisite personal knowledge must concern facts, as opposed to conclusions, assumptions, or surmise.").

Similarly, in paragraph 14 of his declaration, Daniels states that he is "aware" that some APC employees received Marriott Rewards points for staying at the Providence Marriott. He offers no basis for this assertion, other than the fact that he is aware that one employee filled out

an application for the Marriott Rewards program. Based on this fact, Daniels states that "I believe" this employee received Marriott Rewards points. Because Daniels offers no facts to substantiate his belief, the Court should strike and/or disregard paragraph 14 of his declaration.[3] See Perez, 247 F.3d at 315-16; see also, e.g., Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 282 (3d Cir. 1988) (affiant cannot demonstrate personal knowledge when he or she prefaces the statement with the phrase "I believe").

## II. DANIELS CANNOT PREVAIL ON HIS RACIAL HARASSMENT CLAIM

Daniels' racial harassment claim is based almost exclusively on alleged actions by Brian Kelly, APC's former Director of Finance.[4] See Complaint ¶¶ 12-15, 17. Because (a) there is no evidence that any of Kelly's actions toward Daniels were motivated by race, and (b) it is undisputed that APC employees of all colors regarded Kelly as having a difficult personality (see SUF ¶¶ 98-100), Daniels now seeks to expand his harassment claim to include a comment allegedly made by Paul Cavanaugh. Specifically, Daniels testified that a few months or weeks prior to his termination Cavanaugh asked him "[w]hy can't you just be a good Irish and not get in trouble?" See Daniels Dep. at 388.

Even assuming *arguendo* that Cavanaugh actually made this remark, Daniels' allegations – when viewed as a whole – fall far short of establishing that his working environment was "permeated with discriminatory intimidation, ridicule, and insult," so as to rise to the level of being hostile or abusive. Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003) (quoting

---

[3] Similarly, Daniels offers no basis for his self-serving statement that Cavanaugh "knew that the [Providence] Marriott was being used by" APC's field service engineers. See Declaration of Seth Daniels ¶ 17.

[4] Daniels also alleged that Christine Hendrix asked him to accompany her to the train station, where she intended to inform an individual that his job offer had been rescinded. See Complaint ¶ 16. Although Daniels alleges that Hendrix made this request because Daniels was "big and black" and therefore would scare the individual in question, the undisputed fact is that Daniels never even had to go to the train station because the individual in question missed his train. See SUF ¶ 101; Daniels Dep. at 375. In any event, even if Daniels' allegation is true, this isolated incident hardly gives rise to an actionable claim of racial harassment. Moreover, it bears noting that Hendrix did not make the decision to terminate Daniels' employment. See SUF ¶ 94-95.

Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). If anything, Cavanaugh's query reflects the fact that, in just a few short months, Daniels' inappropriate and rude behavior had drawn the ire of many of his fellow employees. See SUF ¶¶ 13-14; Pl.'s Memo, Exh. 22 (in which Kelly states that "I'm glad it is not just me that had difficulty with him (Bonnie, Chris B., Mary T) as far as evasiveness, nonrespons[iveness]."). Indeed, during that time, Daniels had, among other things, (a) submitted a Form W-4 claiming to be exempt from federal income tax despite having no apparent basis for doing so, (b) left his Company-provided laptop computer in plain sight in the back seat of his rental car, resulting in its theft, and (c) attempted to obtain reimbursement for a host of questionable expenses.[5] See SUF ¶¶ 15, 20-26.

Despite protestations to the contrary, Daniels' opposition illustrates that his race harassment claim remains squarely focused on alleged actions by Kelly. See, e.g., Pl.'s Memo. at 21-23. He complains about Kelly's "tone and demeanor." See id. at 21. Daniels also claims that Kelly's treatment of him was "different than his treatment of others." See id. at 22. Daniels fails, however, to proffer any credible evidence of how Kelly treated him differently than other APC employees. Instead, he offers only his own self-serving affidavit regarding his interactions with Kelly and his mischaracterization of the testimony of John Bonzani regarding interactions with Kelly that were "out of the ordinary." See id. at 22. These interactions, however, do not support Daniels' contention that Kelly's treatment of him was motivated by race.[6] Indeed, Bonzani specifically testified that Kelly's treatment of Daniels was not motivated by race. See Pl.'s Memo., Exh. 11 at 175. Further, Daniels offers no evidence linking Kelly's actions, which

---

[5] Among other things, Daniels sought reimbursement for everyday lunches with his colleagues; Kelly had to remind him that this was not appropriate. See Pl.'s Memo., Exh. 25, APC 225 ("Your personal lunches (as are mine and everyone else at APC) while not traveling on APC business are personal and not business related.").

[6] Daniels cites to Bonzani's deposition testimony to support his argument that Kelly treated Daniels differently than other employees. Bonzani's testimony, however, consists largely of speculation regarding, and his opinion about, events in which he was not involved. See, e.g., Bonzani Dep. at 102 ("I've never been involved in something like that."), 126 ("I have no knowledge of that.").

plainly are race-neutral on their face, to any overt act or comment by Kelly suggesting that Kelly actually was motivated by discriminatory animus.

Because Daniels can offer no credible evidence to support his claim that the actions of Kelly were based on his race or that his working environment was so objectively hostile as to give rise to an actionable claim, Daniels' race harassment claim should be dismissed.

## III. DANIELS FAILS TO OFFER EVIDENCE SUGGESTING THAT APC'S REASON FOR TERMINATING HIS EMPLOYMENT WAS A PRETEXT FOR DISCRIMINATION OR RETALIATION

### A. APC's Ethics Policy Was In Effect During Daniels' Tenure

Daniels asserts that "[t]here is no record evidence that APC had implemented and/or distributed the ethics policy during the time [he] was employed at APC." Pl.'s Memo. at 33. To the contrary, Gough testified that APC adopted its Code of Ethics in November 2003 – four months prior to Daniels' termination – and made it available to employees on the Company's intranet shortly thereafter. Gough Aff. ¶¶ 9-10.

In any event, although Daniels now claims to have been unaware of the Code of Ethics, he does not seriously dispute that APC had the right to terminate an employee if the Company believed such employee had engaged in self-dealing or received a kickback. As APC stated in the supplement to its EEOC position statement: "Fraudulent conduct, theft, self-dealing or unethical behavior do not become permissible simply because the Company has not reduced to writing the common sense proposition that such conduct is not tolerable."

### B. Daniels Cannot Establish Pretext

In an attempt to establish that APC's articulated reason for terminating Daniels' employment – namely, his self-dealing arrangement with the Providence Marriott – was a pretext for race discrimination, Daniels now asserts that: (1) he was treated more harshly than similarly-situated white employees; and (2) APC's articulated reason for terminating his employment is

implausible and has changed over time. Each assertion is addressed in turn.

First, Daniels compares himself to Julie Kelly. Kelly reported to, and was disciplined by, Laurie Gaspar. Daniels, in contrast, reported to John Bonzani and was terminated by Paul Cavanaugh and Brian Gough. See Cruse v. G&J USA Publishing, 96 F. Supp. 2d 320, 330 (S.D.N.Y. 2000) ("Most importantly, for other employees to be similarly situated, they must have reported to the same supervisor as plaintiff."). Moreover, Gaspar disciplined Kelly for performance problems that are wholly unlike the self-dealing that caused APC to terminate Daniels' employment. Specifically, Gaspar cited Kelly for, among other performance problems: (1) playing video games at work; (2) making too many personal telephone calls; (3) failing to follow through on customers' requests; (4) exhibiting a negative attitude; and (5) requesting an accommodation to her schedule to spend more time with her ill father and then "using the new schedule to go out and socialize . . . instead of spending time caring for her father." These well-documented performance problems are not similar in any respect to the self-serving and unethical conduct engaged in by Daniels. See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) (holding that a plaintiff must compare herself to "persons situated similarly in all relevant aspects"); Williams v. Frank, 757 F. Supp. 112, 119 (D. Mass. 1991) ("First and foremost, two employees are not similarly situated when the offense each is accused of is not the same.").

In addition, Daniels asserts that "both Cavanaugh and Bonzani received reward points when they paid for travel expenses for other individuals" and were not disciplined by APC. Daniels does not appear to have any evidentiary basis for his assertion with regard to Cavanaugh. See Daniels Dep. at 370-73. In any event, Daniels was not terminated simply for receiving rewards points based on the hotel stays of other employees, he was terminated for self-dealing;

and there is no indication whatsoever that either Bonzani or Cavanaugh ever were accused of, or committed, any similar misconduct. Thus, any comparison between either of these individuals and Daniels is inapt. See, e.g., Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002) (holding that plaintiff was not similarly situated to other employees where she, unlike her would-be comparators, "benefited financially" from her misconduct and displayed a "lack of candor" when questioned about it).

Second, Daniels asserts that APC's rationale for terminating his employment is implausible and has changed during the course of this litigation. This assertion is belied by the record: In Bollman's original email to Gough, see SUF ¶¶ 93-96, APC's submissions to the EEOC, and in this litigation, APC consistently has asserted that Daniels' receipt of Marriott Rewards points from the Providence Marriott in exchange for booking rooms there constituted self-dealing that warranted his termination. See, e.g., Pl.'s Mem., Exh. 7, Exh. 8 at APC 474. Regardless of whether his behavior is classified as a violation of APC's Code of Ethics, a violation of the Company's travel policy, or a violation of basic common sense (or all three), APC plainly had the right to terminate Daniels based on its good faith belief that his arrangement with the Providence Marriott constituted self-dealing to the detriment of the Company.

Further, in an attempt to cast doubt on the legitimacy of APC's decision, Daniels focuses on a host of irrelevant topics, such as the cost of rooms at the Providence Marriott as compared to other Rhode Island hotels and the extent to which he and other APC employees utilized such hotels. In short, Daniels argues that the Company's decision was based on erroneous information. The relevant inquiry, however, is not whether APC's proffered reason was wise, fair, or correct, but whether Gough and Cavanaugh – the individuals who made the decision to terminate Daniels' employment – reasonably believed that Daniels had engaged in self-dealing.

Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 41 (1st Cir. 2001) (holding that the focus must be upon whether the decisionmakers reasonably believed that the plaintiff committed the offense in question, not whether plaintiff actually did so); see Webber v. International Paper Co., 417 F.3d 229, 238 (1st Cir. 2005) ("pursuant to the 'business judgment' rule an employer is free to terminate an employee for any nondiscriminatory reason, even if its business judgment seems subjectively unwise"); Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir. 1993) ("Title VII is not violated by the exercise of erroneous or even illogical business judgment."). Because Daniels offers no basis for questioning Gough and Cavanaugh's belief, he cannot establish pretext, and, therefore, his claims should be dismissed.

## IV. CONCLUSION

Accordingly, APC respectfully requests that the Court enter summary judgment on each of Daniels' claims against it.

Respectfully submitted,

AMERICAN POWER CONVERSION CORPORATION,

By its attorneys,

/s/ George P. Kostakos
George P. Kostakos (6971)
Christopher B. Kaczmarek (*pro hac vice*)
Littler Mendelson, P.C.
10 Weybosset Street, Suite 404
Providence, RI 02903
(401) 454-2903 (tel.)
(401) 454-2969 (fax)
gkostakos@littler.com

Dated: April 16, 2007

**CERTIFICATE OF SERVICE**

I, George P. Kostakos, hereby certify that on this 16th day of April 2007 the foregoing Defendant's Reply to the Plaintiff's Memorandum in Support of His Objection to Defendant's Motion for Summary Judgment was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing.

/s/ George P. Kostakos
George P. Kostakos